*Form L246* (3/23)–doc 12 − 9

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: Midnight Madness Distilling LLC | ) | Case No. 21−11750−mdc |
| Debtor(s) | ) | Chapter 7 |
| | ) | |
| Bonnie B. Finkel, Ch. 7 Trustee | ) | |
| Plaintiff | ) | |
| | ) | Adversary No. 23−00047−mdc |
| v. | ) | |
| | ) | Civil Case Number. |
| Casey Parzych, et al. | ) | |
| Defendant | ) | |

## MOTION FOR WITHDRAWAL OF REFERENCE WAS FILED ON ADVERSARY DOCKET 23-00047 DATED AND ENTERED SEPTEMBER 5, 2023 ON THE DOCKET

    I, Timothy B. McGrath, Clerk of the United States Bankruptcy Court, Eastern District of Pennsylvania, herewith electronically transmit the Motion for Withdrawal of Reference filed on September 5, 2023.

Date: September 12, 2023

For The Court

Parties/Counsel of Record:

Timothy B. McGrath
Clerk of Court

Stephen M. Packman
Mariam Khoudari
Archer & Greiner, P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
Counsel for Moving Defendants

Andrew J. Belli
Coren & Ress, PC
2001 Market Street
Suite 3900
Philadelphia, PA 19103
Counsel for Plaintiff's

Steven M. Coren
Kaufman, Coren & Ress, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103−2713
Counsel for Plaintiff's

**United States Trustee**
**Office of the United States Trustee**

**Robert NC Nix, Sr.**
**Federal Building**
**900 Market Street, Suite 320**
**Philadelphia, PA 19107**

# U.S. Bankruptcy Court
## Eastern District of Pennsylvania (Philadelphia)
## Adversary Proceeding #: 23−00047−mdc

*Assigned to:* Chief Judge Magdeline D. Coleman                    *Date Filed:* 06/15/23
*Lead BK Case:* 21−11750
*Lead BK Title:* Midnight Madness Distilling LLC
*Lead BK Chapter:* 7
*Demand:*
   *Nature[s] of Suit:*  02 Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)
                   11 Recovery of money/property − 542 turnover of property
                   12 Recovery of money/property − 547 preference
                   13 Recovery of money/property − 548 fraudulent transfer
                   91 Declaratory judgment

### Plaintiff
————————————————

**Bonnie B. Finkel, Ch. 7 Trustee**                    represented by **ANDREW J. BELLI**
P.O. Box 1710                                                                Coren & Ress, PC
Cherry Hill, NJ 08034                                                  2001 Market Street
                                                      Suite 3900
                                                      Philadelphia, PA 19103
                                                      215−735−8700
                                                      Fax : 215−735−5170
                                                     Email: abelli@kcr−law.com

                                                   **STEVEN M. COREN**
                                                   Kaufman, Coren & Ress, P.C.
                                                   TWO COMMERCE SQUARE
                                                   SUITE 3900
                                                   2001 MARKET STREET
                                                   Philadelphia, PA 19103−2713
                                                   (215) 735−8700
                                                   Fax : 215−735−5170
                                                   Email: scoren@kcr−law.com

V.

### Defendant
————————————————

**Casey Parzych**                    represented by **MARIAM KHOUDARI**
                                                   Archer & Greiner, P.C.
                                                   Three Logan Square
                                                   1717 Arch Street
                                                   Ste 3500
                                                   Philadelphia, PA 19103
                                                   610−704−1773
                                                   Fax : 215−963−9999
                                                   Email: mkhoudari@archerlaw.com

                                                   **STEPHEN M. PACKMAN**
                                                   Archer and Greiner
                                                   Three Logan Square
                                                   1717 Arch Street
                                                   Suite 3500
                                                   Philadelphia, PA 19103

215−963−3300
Fax : 215−963−9999
Email: spackman@archerlaw.com

*Defendant*
_____

**Shawn Sheehan**

represented by **MARIAM KHOUDARI**
(See above for address)

**STEPHEN M. PACKMAN**
(See above for address)

*Defendant*
_____

**Angus Rittenburg**

represented by **MARIAM KHOUDARI**
(See above for address)

**STEPHEN M. PACKMAN**
(See above for address)

*Defendant*
_____

**Kelly Festa**

represented by **MARIAM KHOUDARI**
(See above for address)

**STEPHEN M. PACKMAN**
(See above for address)

*Defendant*
_____

**Ashleigh Baldwin**

represented by **MARIAM KHOUDARI**
(See above for address)

**STEPHEN M. PACKMAN**
(See above for address)

*Defendant*
_____

**Michael Boyer**

represented by **MARIAM KHOUDARI**
(See above for address)

**STEPHEN M. PACKMAN**
(See above for address)

*Defendant*
_____

**R.F. Culbertson**

represented by **MARIAM KHOUDARI**
(See above for address)

**STEPHEN M. PACKMAN**
(See above for address)

*Defendant*
_____

**Gary Parzych**                          represented by **JEFFREY KURTZMAN**
                                                         Kurtzman Steady LLC
                                                         555 City Avenue
                                                         Ste 480
                                                         Bala Cynwyd, PA 19004
                                                         215−839−1222
                                                         Email: Kurtzman@kurtzmansteady.com

*Defendant*
────────────────────────

**Ryan Uszenski**                         represented by **JEFFREY KURTZMAN**
                                                         (See above for address)

*Defendant*
────────────────────────

**Polebridge, LLC**                       represented by **MARIAM KHOUDARI**
                                                         (See above for address)

                                                         **STEPHEN M. PACKMAN**
                                                         (See above for address)

*Defendant*
────────────────────────

**Good Design, Inc.**                     represented by **MARIAM KHOUDARI**
                                                         (See above for address)

                                                         **STEPHEN M. PACKMAN**
                                                         (See above for address)

*Defendant*
────────────────────────

**AgTech PA LLC**                         represented by **MARIAM KHOUDARI**
                                                         (See above for address)

                                                         **STEPHEN M. PACKMAN**
                                                         (See above for address)

*Defendant*
────────────────────────

**AgTech VI, LLC**                        represented by **MARIAM KHOUDARI**
                                                         (See above for address)

                                                         **STEPHEN M. PACKMAN**
                                                         (See above for address)

*Defendant*
────────────────────────

**XO Energy Worldwide, LLLP**             represented by **MARIAM KHOUDARI**
                                                         (See above for address)

                                                         **STEPHEN M. PACKMAN**
                                                         (See above for address)

*Defendant*

——————————————————
**XO EW, LLC**                          represented by **MARIAM KHOUDARI**
                                                       (See above for address)

                                                       **STEPHEN M. PACKMAN**
                                                       (See above for address)


*Defendant*
——————————————————
**Can Man LLC**                         represented by **JEFFREY KURTZMAN**
                                                       (See above for address)


*Defendant*
——————————————————
**Best Bev LLC**                        represented by **MARIAM KHOUDARI**
                                                       (See above for address)

                                                       **STEPHEN M. PACKMAN**
                                                       (See above for address)


*Defendant*
——————————————————
**EtOH Worldwide LLC**                  represented by **MARIAM KHOUDARI**
                                                       (See above for address)

                                                       **STEPHEN M. PACKMAN**
                                                       (See above for address)


*Defendant*
——————————————————
**Canvas 340, LLC**                     represented by **MARIAM KHOUDARI**
                                                       (See above for address)

                                                       **STEPHEN M. PACKMAN**
                                                       (See above for address)


*Defendant*
——————————————————
**Finland Leasing Co., Inc.**           represented by **JEFFREY KURTZMAN**
                                                       (See above for address)


*Defendant*
——————————————————
**Eugene T. Parzych, Inc.**             represented by **JEFFREY KURTZMAN**
                                                       (See above for address)

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 06/15/2023 | | 1 | Adversary case 23−00047. Complaint by ANDREW J. BELLI, STEVEN M. COREN on behalf of Bonnie B. Finkel, Ch. 7 Trustee against Casey Parzych, Shawn Sheehan, Angus Rittenburg, Kelly Festa, Ashleigh Baldwin, Michael Boyer, R.F. Culbertson, Gary Parzych, Ryan Uszenski, Polebridge, LLC, Good Design, Inc., AgTech PA LLC, AgTech VI, LLC, |

4

| | | | |
|---|---|---|---|
| | | | XO Energy Worldwide, LLLP, XO EW, LLC, Can Man LLC, Best Bev LLC, EtOH Worldwide LLC, Canvas 340, LLC, Finland Leasing Co., Inc., Eugene T. Parzych, Inc.. Fee Amount $350 . (02 (Other actions that would have been brought in state court if unrelated to bankruptcy)),(11 (Recovery of money/property − 542 turnover of property)),(12 (Recovery of money/property − 547 preference)),(13 (Recovery of money/property − 548 fraudulent transfer)),(91 (Declaratory judgment) (COREN, STEVEN) (Entered: 06/15/2023) |
| 06/15/2023 | | | Receipt of Complaint( 23−00047−mdc) [cmp,cmp] ( 350.00) Filing Fee. Receipt number A24986194. Fee Amount $ 350.00. (re: Doc# 1) (U.S. Treasury) (Entered: 06/15/2023) |
| 06/16/2023 | | 2 | 21 Summons Issued to Plaintiff(s) to be served upon Defendant(s) AgTech PA LLC Date Issued 6/16/2023, Answer Due 7/17/2023; AgTech VI, LLC Date Issued 6/16/2023, Answer Due 7/17/2023; Ashleigh Baldwin Date Issued 6/16/2023, Answer Due 7/17/2023; Best Bev LLC Date Issued 6/16/2023, Answer Due 7/17/2023; Michael Boyer Date Issued 6/16/2023, Answer Due 7/17/2023; Can Man LLC Date Issued 6/16/2023, Answer Due 7/17/2023; Canvas 340, LLC Date Issued 6/16/2023, Answer Due 7/17/2023; R.F. Culbertson Date Issued 6/16/2023, Answer Due 7/17/2023; EtOH Worldwide LLC Date Issued 6/16/2023, Answer Due 7/17/2023; Eugene T. Parzych, Inc. Date Issued 6/16/2023, Answer Due 7/17/2023; Kelly Festa Date Issued 6/16/2023, Answer Due 7/17/2023; Finland Leasing Co., Inc. Date Issued 6/16/2023, Answer Due 7/17/2023; Good Design, Inc. Date Issued 6/16/2023, Answer Due 7/17/2023; Casey Parzych Date Issued 6/16/2023, Answer Due 7/17/2023; Gary Parzych Date Issued 6/16/2023, Answer Due 7/17/2023; Polebridge, LLC Date Issued 6/16/2023, Answer Due 7/17/2023; Angus Rittenburg Date Issued 6/16/2023, Answer Due 7/17/2023; Shawn Sheehan Date Issued 6/16/2023, Answer Due 7/17/2023; Ryan Uszenski Date Issued 6/16/2023, Answer Due 7/17/2023; XO EW, LLC Date Issued 6/16/2023, Answer Due 7/17/2023; XO Energy Worldwide, LLLP Date Issued 6/16/2023, Answer Due 7/17/2023. (G., Jeanette) (Entered: 06/16/2023) |
| 06/28/2023 | | 3 | Summons Service Executed on AgTech PA LLC 6/16/2023; AgTech VI, LLC 6/16/2023; Ashleigh Baldwin 6/16/2023; Best Bev LLC 6/16/2023; Michael Boyer 6/16/2023; Can Man LLC 6/16/2023; Canvas 340, LLC 6/16/2023; R.F. Culbertson 6/16/2023; EtOH Worldwide LLC 6/16/2023; Eugene T. Parzych, Inc. 6/16/2023; Kelly Festa 6/16/2023; Finland Leasing Co., Inc. 6/16/2023; Good Design, Inc. 6/16/2023; Casey Parzych 6/16/2023; Gary Parzych 6/16/2023; Polebridge, LLC 6/16/2023; Angus Rittenburg 6/16/2023; Shawn Sheehan 6/16/2023; Ryan Uszenski 6/16/2023; XO EW, LLC 6/16/2023; XO Energy Worldwide, LLLP 6/16/2023 . (BELLI, ANDREW) (Entered: 06/28/2023) |
| 08/14/2023 | | 4 | Notice of Appearance and Request for Notice by JEFFREY KURTZMAN Filed by JEFFREY KURTZMAN on behalf of Eugene T. Parzych, Inc., Finland Leasing Co., Inc., Can Man LLC, Ryan Uszenski, Gary Parzych. (KURTZMAN, JEFFREY) (Entered: 08/14/2023) |
| 09/05/2023 | | 5 | Motion for Withdrawal of Reference . Fee Amount $188.00 Filed by AgTech PA LLC, AgTech VI, LLC, Ashleigh Baldwin, Best Bev LLC, Michael Boyer, Canvas 340, LLC, R.F. Culbertson, EtOH Worldwide LLC, Kelly Festa, Good Design, Inc., Casey Parzych, Polebridge, LLC, Angus Rittenburg, Shawn Sheehan, XO EW, LLC, XO Energy Worldwide, LLLP Represented by MARIAM KHOUDARI (Counsel). (Attachments: # 1 Memorandum of Law # 2 Exhibit 1 − Adversary Complaint # 3 Exhibit 2 − Email # 4 Proposed Order # 5 Certificate of Service) (KHOUDARI, MARIAM) (Entered: 09/05/2023) |

| | | | |
|---|---|---|---|
| 09/05/2023 | | 6 | Emergency Motion To Stay (related documents Motion for Withdrawal of Reference) −− *Emergency Motion of Moving Defendants for an Order to Stay Proceedings and/or Other Related Relief* −− Filed by AgTech PA LLC, AgTech VI, LLC, Ashleigh Baldwin, Best Bev LLC, Michael Boyer, Canvas 340, LLC, R.F. Culbertson, EtOH Worldwide LLC, Kelly Festa, Good Design, Inc., Casey Parzych, Polebridge, LLC, Angus Rittenburg, Shawn Sheehan, XO EW, LLC, XO Energy Worldwide, LLLP Represented by MARIAM KHOUDARI (Counsel) (related document(s)5). (Attachments: # 1 Exhibit 1 − Motion for Withdrawal of Reference # 2 Proposed Order # 3 Certificate of Service) (KHOUDARI, MARIAM) (Entered: 09/05/2023) |
| 09/05/2023 | | 7 | Motion to Expedite Hearing (related documents Motion to Stay) −− *Application of Moving Defendants for an Order Scheduling Expedited Hearing Pursuant to Local Bankruptcy Rule 5070−1 on MOving Defendants' Emergency Motion for an Order Staying Proceedings and/or for Other Related Relief* −− Filed by AgTech PA LLC, AgTech VI, LLC, Ashleigh Baldwin, Best Bev LLC, Michael Boyer, Canvas 340, LLC, R.F. Culbertson, EtOH Worldwide LLC, Kelly Festa, Good Design, Inc., Casey Parzych, Polebridge, LLC, Angus Rittenburg, Shawn Sheehan, XO EW, LLC, XO Energy Worldwide, LLLP Represented by MARIAM KHOUDARI (Counsel) (related document(s)6). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (KHOUDARI, MARIAM) (Entered: 09/05/2023) |
| 09/06/2023 | | | Receipt of Motion for Withdrawal of Reference( 23−00047−mdc) [motion,mwdref]( 188.00) Filing Fee. Receipt number A25169389. Fee Amount $ 188.00. (re: Doc# 5) (U.S. Treasury) (Entered: 09/06/2023) |
| 09/06/2023 | | 8 | Objection to Motion to Expedite Hearing filed by Defendant Casey Parzych, Defendant Shawn Sheehan, Defendant Angus Rittenburg, Defendant Kelly Festa, Defendant Ashleigh Baldwin, Defendant Michael Boyer, Defendant R.F. Culbertson, Defendant Polebridge, LLC, Defendant Good Design, Inc., Defendant AgTech PA LLC, Defendant AgTech VI, LLC, Defendant XO Energy Worldwide, LLLP, Defendant XO EW, LLC, Defendant Best Bev LLC, Defendant EtOH Worldwide LLC, Defendant Canvas 340, LLC *with Certificate of Service* Filed by Bonnie B. Finkel, Ch. 7 Trustee (related document(s)7). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (BELLI, ANDREW) (Entered: 09/06/2023) |
| 09/06/2023 | | 9 | Order Denying 7 Motion for Expedited Hearing on Emergency Motion to Stay Proceedings and/or Other Related Relief. Upon consideration of the application, and the Objection of the Chapter 7 Trustee, it is Ordered that this application is denied. (B., John) (Entered: 09/06/2023) |
| 09/07/2023 | | 10 | Notice of Appearance and Request for Notice by STEPHEN M. PACKMAN Filed by STEPHEN M. PACKMAN on behalf of AgTech PA LLC, AgTech VI, LLC, Ashleigh Baldwin, Best Bev LLC, Michael Boyer, Canvas 340, LLC, R.F. Culbertson, EtOH Worldwide LLC, Kelly Festa, Good Design, Inc., Casey Parzych, Polebridge, LLC, Angus Rittenburg, Shawn Sheehan, XO EW, LLC, XO Energy Worldwide, LLLP. (PACKMAN, STEPHEN) (Entered: 09/07/2023) |
| 09/07/2023 | | 11 | Notice of (related document(s): 6 Emergency Motion To Stay (related documents Motion for Withdrawal of Reference) −− *Emergency Motion of Moving Defendants for an Order to Stay Proceedings and/or Other Related Relief* −−) Filed by AgTech PA LLC, AgTech VI, LLC, Ashleigh Baldwin, Best Bev LLC, Michael Boyer, Canvas 340, LLC, R.F. Culbertson, EtOH Worldwide LLC, Kelly Festa, Good Design, Inc., Casey Parzych, Polebridge, LLC, Angus Rittenburg, Shawn Sheehan, XO EW, |

6

| | | | |
|---|---|---|---|
| | | | LLC, XO Energy Worldwide, LLLP. Hearing scheduled 10/4/2023 at 11:00 AM at Courtroom #2. (Attachments: # 1 Certificate of Service)(PACKMAN, STEPHEN) (Entered: 09/07/2023) |
| 09/08/2023 | | 12 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 9)). No. of Notices: 7. Notice Date 09/08/2023. (Admin.) (Entered: 09/09/2023) |

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Miscellaneous Matter No._____

| | |
|---|---|
| **In re:** | |
| **MIDNIGHT MADNESS DISTILLING LLC,** | **CHAPTER 7** |
| Debtor. | **Case No. 21-11750-MDC** |
| | |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,** | **Adv. No. 23-00047-MDC** |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,** | |
| Defendants. | |

## MOVING DEFENDANTS' MOTION FOR WITHDRAWAL OF REFERENCE

For the reasons set out in their accompanying <u>memorandum of law</u>, Moving Defendants,[1]

by their undersigned attorneys, hereby move this Honorable Court for entry of an Order

---

[1] The Moving Defendants are Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly A. Festa; Ashleigh Baldwin; Michael Boyer; R.F. Culbertson; Polebridge, LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; Etoh Worldwide, LLC; and Canvas 340, LLC.

227695611 v1

8

withdrawing the reference and transferring this action to the United States District Court for the

Eastern District of Pennsylvania.

Dated: September 5, 2023                /s/ Mariam Khoudari_____
                                        STEPHEN M. PACKMAN
                                        MARIAM KHOUDARI
                                        **ARCHER & GREINER, P.C.**
                                        Three Logan Square
                                        1717 Arch Street, Suite 3500
                                        Philadelphia, PA 19103
                                        Tel: (215) 963-3300
                                        Fax: (215) 963-9999
                                        spackman@archerlaw.com
                                        mkhoudari@archerlaw.com

                                        *Counsel for Moving Defendants*

227695611 v1

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Miscellaneous Matter No._____

| | |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>Debtor. | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>Defendants. | **Adv. No. 23-00047-MDC**<br><br><br>**JURY TRIAL DEMANDED** |

## MEMORANDUM OF LAW OF MOVING DEFENDANTS IN SUPPORT OF
## MOTION FOR WITHDRAWAL OF REFERENCE

Moving Defendants, Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly A. Festa;

Ashleigh Baldwin; Michael Boyer; R.F. Culbertson; Polebridge, LLC; Good Design, Inc.;

AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev,

LLC; Etoh Worldwide, LLC; and Canvas 340, LLC (the "**Moving Defendants**"), respectfully

submit this memorandum of law in support of their motion for withdrawal of the reference (the

"**Motion**") of the above-captioned adversary proceeding (the "**Adversary Proceeding**") from

the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy**

**Court**"), pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy

Procedure  and Local Bankruptcy Rule 5011-1 (the "**Bankruptcy Rules**").

**PRELIMINARY STATEMENT**

The Court should withdraw the reference of the Adversary Proceeding for various

reasons, including that the Moving Defendants and the Chapter 7 Trustee **("Plaintiff")** do not

consent to the Bankruptcy Court conducting a jury trial. Moreover, there is cause for a

permissive withdrawal of the reference as (1) at least nine of the fourteen claims asserted by

Plaintiff are non-core; (2) the Motion was filed at the first reasonable opportunity after Moving

Defendants had notice of grounds for removal and it would permit the District Court to preside

over the case from its inception; (3) it would promote judicial economy, avoiding redundant

review of proceedings and legal work; (4) it would foster uniformity in bankruptcy

administration and would reduce forum shopping and confusion; and (5) it would have no effect

on bankruptcy administration, as the claims being asserted herein by the Plaintiff are severable

from the Bankruptcy Case.

The Plaintiff has joined twenty-one defendants in the Adversary Proceeding. The

Complaint contains 56 pages of alleged "facts."  To the extent Moving Defendants' motion to

dismiss is not fully granted, it is anticipated that discovery conducted will be substantial, time-

intensive, and subject to disputes.

227695611 v1

11

**STATEMENT OF FACTS**

Midnight Madness Distilling LLC f/k/a Theobald and Oppenheimer, LLC d/b/a Faber Distilling (the "**Debtor**") filed a voluntary petition for relief under Chapter 11 in the Bankruptcy Court on June 21, 2021 (the "**Petition Date**"). [Dkt No. 1]. The Debtor's case, now converted to Chapter 7, is currently pending under Bankruptcy Case No. 21-11750-MDC. On May 10, 2022, the Plaintiff was appointed as Chapter 7 Trustee of the Debtor's estate.

Plaintiff filed the Adversary Proceeding by "Complaint" against, *inter alia*, the Moving Defendants, on June 15, 2023. A copy of the Complaint is filed herewith as Exhibit 1. The Plaintiff agreed to extend Moving Defendants' time to respond to the Complaint to September 15, 2023.

The Complaint mainly asserts non-core, common law claims against the defendants. These common law claims include claims for (1) breach of fiduciary duty; (2) aiding and abetting breach of fiduciary duty; (3) corporate waste; (4) declaratory relief (alter ego, piercing the corporate veil and/or successor liability); (5) unjust enrichment; (6) an accounting; (7) constructive trust; (8) breach of contract (against certain Moving Defendants); and (9) breach of contract (against defendant Finland Leasing Co., Inc.). The Complaint additionally asserts more traditional, core "bankruptcy" claims for (10) equitable subordination; (11) turnover pursuant to 11 U.S.C. § 542 (a hybrid common law and "bankruptcy" claim); (12) avoidance and recovery of post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550; (13) avoidance and recovery of preferential transfers pursuant to 11 U.S.C. §§ 547(b) and 550; (14) avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 548 and 550.

3

## ARGUMENT IN SUPPORT OF REQUEST FOR RELIEF

### A. There is Cause for a Permissive Withdrawal of the Reference

28 U.S.C. § 157(d) provides that:

> The district court may withdraw, in whole or in part, any case or
> proceeding referred under this section, on its own motion or on
> timely motion of any party, for cause shown. The district court
> shall, on timely motion of a party, so withdraw a proceeding if the
> court determines that resolution of the proceeding requires
> consideration of both title 11 and other laws of the United States
> regulating organizations or activities affecting interstate
> commerce.

There is no statutory definition of what constitutes "cause shown" under 28 U.S.C. §
157(d). *See In re Eagle Enterprises, Inc,* 259 B.R. 83, 87 (Bankr. E.D. Pa. 2001). However, the
Third Circuit has set out five factors the District Court should consider in deciding whether
permissive withdrawal is warranted. These factors include: (1) "promoting uniformity in
bankruptcy administration"; (2) "reducing forum shopping and confusion"; (3) "fostering the
economical use of the debtors' and creditors' resources"; (4) "expediting the bankruptcy
process"; and (5) the timing of the withdrawal petition. *In re Pruitt,* 910 F.2d 1160, 1168 (3d Cir.
1990).

Two additional considerations guide the exercise of discretionary withdrawal: "whether
(i) the underlying proceeding involves 'core' or 'non-core' claims, and (ii) any party has asserted
a right to a jury trial to which it is constitutionally entitled." *In re Forks Specialty Metals Inc.,*
2020 WL 2098099, at *2 (E.D. Pa. May 1, 2020) (quoting *In re Earth Pride Organics, LLC,* 602
B.R. 1, 12 (E.D. Pa. May 23, 2019)); *In re Pruitt,* 910 F.2d at 1168.

227695611 v1

1. Withdrawal of the Reference Would Promote Uniformity in Bankruptcy Administration and Reduce Forum Shopping and Confusion.

Withdrawal of the reference would promote uniformity in bankruptcy administration here as the vast majority of the claims in the Adversary Proceeding are non-core. Adjudicating non-core claims in the Bankruptcy Court does not foster efficient use of judicial resources. In *Pelullo*, this Court granted permissive withdrawal of the reference as "the bankruptcy court may not enter a final order or judgment in a non-core proceeding without the consent of the parties, keeping the proceeding in the bankruptcy court wastes judicial resources because the district court must review the bankruptcy court's proposed findings of fact and conclusions of law de novo." *In re Pelullo*, 1997 WL 535155, at *2.

Withdrawal is warranted as well where the District Court is better equipped to make determinations under non-bankruptcy laws since it hears the types of claims the Plaintiff has asserted much more frequently than the bankruptcy court does. *See in re Pelullo*, 1997 WL 535155, at *2 ("[S]tate law claims are not the type of claims typically heard in the bankruptcy court and could require extensive discovery and instructions to the jury on the law of Pennsylvania or possibly another state.").

2. Withdrawal of the Reference Would Promote the Economical Use of the Parties' and Judicial Resources.

Absent consent of the parties, the Bankruptcy Court cannot preside over a jury trial of the non-core claims. Thus, "it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issue presented in this litigation" given that a district judge "must eventually preside over the jury trial." *In re Gruppo Antico,* 2005 U.S. Dist, LEXIS 38904, *3-5, 2005 WL 3654215 (D.Del. July 1, 2005); *see also In re Pelullo,* 1997 WL 535155, at *2.

227695611 v1

It would plainly be inefficient to have two different courts considering interrelated parts of this lawsuit when this Court has the power to administer and decide the entire case and both parties are requesting that this Court ultimately do so. Withdrawal of the reference would avoid this Court's redundant review of proceedings and legal work, including but not limited to pleadings, dispositive motions and accompanying briefs, and other pre-trial matters. *In re Pelullo,* WL 535155, at *2 ("[P]ermitting [a] case to proceed in the bankruptcy court, even for pre-trial matters, would require duplication of the bankruptcy court's efforts, since defendants have not consented to entry of final judgment by the bankruptcy court. Under such circumstances, [the] [c]ourt would have to review the bankruptcy court's orders de novo and conduct a jury trial without the benefit of having overseen pre-trial matters.").

    3.   <u>Trying this Case in the District Court Would Neither Expedite Nor Delay the Bankruptcy Process.</u>

Having this action tried in the District Court will have no effect on bankruptcy administration as the claims being asserted are severable from the Bankruptcy Case because they do not affect the claims allowance process but only affect the amount of any recovery for the bankruptcy estate of the Debtor. Likewise, having the Adversary Proceeding tried in the District Court will not affect the timing of the Bankruptcy Case. Since the case was converted to Chapter 7, the Bankruptcy Case does not involve any complicated Chapter 11 restructuring, administration or claims issues. Moving Defendants submit that litigating the underlying matters asserted in this Court would be both more efficient and economical and should move the Bankruptcy Case to closure much sooner than a piecemeal litigation of the matter in both Courts.

227695611 v1

4.  <u>The Timing of the Motion Favors Withdrawal.</u>

A motion to withdraw bankruptcy court reference is timely if it is filed at the first

reasonable opportunity after movant has notice of grounds for removal, taking into consideration

circumstances of the proceeding. *In re Schlein,* <u>188 B.R. 13</u> (E.D. Pa. 1995). Here, the Moving

Defendants bring this Motion as their initial pleading. No response to the Complaint has yet been

filed by the defendants in the Adversary Proceeding. Moreover, the timing of this request favors

withdrawal as it allows for the District Court to preside over the case from the very beginning,

where both parties agree that the District Court would be the tribunal for any jury trial

conducted. *In re Pelullo,* <u>1997 WL 535155</u>, at *2 (withdrawal is warranted when the court

"would have to review the bankruptcy court's orders de novo and conduct a jury trial without the

benefit of having overseen pre-trial matters.").

5.  <u>This Court Should Withdraw the Reference as the Vast Majority of Claims Asserted
    by the Trustee are Non-Core.</u>

The Complaint consists of fourteen counts against twenty-one defendants, nine counts of

which are non-core, one count which asserts a hybrid core and non-core claim, and four counts

which allege core bankruptcy claims. A proceeding is core if it "invokes a substantive right

provided by title 11 or if it is a proceeding, that by its nature, could arise only in the context of a

bankruptcy case." *Torkelsen v. Maggio (In re the Guild and Gallery Plus, Inc.),* <u>72 F.3d 1171,</u>

<u>1178</u> (3d Cir,1996); *accord In re Winstar Communications, Inc.,* <u>554 F.3d 382, 405</u> (3d

Cir.2009); *see also* <u>28 U.S.C. § 157(b)(2)</u>.

The first claim asserted by the Trustee is that of breach of fiduciary duty, which is a

"non-core, related proceeding*." In re Jamuna Real Est., LLC,* <u>357 B.R. 324, 336</u> (Bankr. E.D.

Pa. 2006); *see also McDermott v. Party City Corp.,* <u>11 F.Supp.2d 612, 626</u> n. 18 (E.D.Pa.1998).

The second claim asserted by the Trustee is that of aiding and abetting a breach of fiduciary duty,

7

which is also a non-core claim because it arises under state law and "cannot be said to invoke a substantive right provided by title 11 or to arise only in the context of a bankruptcy." *In re Jamuna,* 357 B.R. at 336.

The third claim of corporate waste is also non-core because it is a traditional state law claim that does not involve substantive rights provided by Title 11 and can be brought outside of the context of a bankruptcy case. *See Phar–Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228, 1234 (3d Cir.1994); *see also Times Mirror Mags., Inc. v. Las Vegas Sports News, L.L.C.,* No. CIV. A. 98-CV-5768, 1999 WL 179749, at *1 (E.D. Pa. Mar. 17, 1999). The fourth claim of declaratory relief (alter ego, piercing the corporate veil and/or successor liability) is also non-core as held by the Third Circuit. *In re Phar–Mor, Inc.,* 22 F.3d at 1239. The fifth claim, unjust enrichment is non-core because it is a Pennsylvania common law claim. *In re Pa. Gear Corp.,* Adv. Nos. 03-940, 03-942, 2008 WL 2370169, at *5 (Bankr. E.D. Pa. Apr. 22, 2008) (describing unjust enrichment as a "clear non-core" proceeding).

The sixth claim for an accounting (equitable remedy) is non-core because it arises under Pa.R.Civ.P 1021(a). *See Buczek v. First National Bank of Mifflintown,* 366 Pa.Super. 551, 531 A.2d 1122, 1123 (Pa.Super.1987). The seventh claim of constructive trust is non-core because courts have consistently held that a constructive trust claim made by a debtor or bankruptcy trustee, based upon the defendant's prepetition conduct, is a state law claim that falls outside the scope of a core proceeding. *In re Drauschak,* 481 B.R. 330, 340–42 (Bankr. E.D. Pa. 2012); *XL Sports, Ltd. v. Lawler,* 49 Fed.Appx. 13, 20 (6th Cir.2002); *see, e.g., Schafer v. Nextiraone Federal, LLC,* 2012 WL 2281828 (M.D.N.C. June 18, 2012); *In re Taub,* 413 B.R. 81 (Bankr.E.D.N.Y.2009).

227695611 v1

The eighth and ninth claims of breach of contract are also non-core. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co. (In re Northern Pipeline Construction Co),* 458 U.S. 50, 71 (1982) ("[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case."); *Civic Ctr. Cleaning Co. v. Reginella Corp.,* 140 B.R. 374 (W.D. Pa. 1992) (finding that an adversary proceeding brought by debtor to recover amounts allegedly owing under prepetition contract was "non-core"); *In re AstroPower Liquidating Trust,* 335 B.R. 309, 323 (Bankr.D.De1.2005) (holding that unjust enrichment claims and breach of contract claims are generally non-core).

The tenth claim asserted by Plaintiff is equitable subordination. An equitable subordination claim may be a core proceeding pursuant to sections 11 U.S.C. § 510(c) and 157(b)(2). *In re M. Paolella & Sons, Inc.,* 161 B.R. 107, 116 (E.D. Pa. 1993), aff'd, 37 F.3d 1487 (3d Cir. 1994).

The eleventh claim of turnover is a hybrid claim with core and non-core allegations. Turnover is a core proceeding when the plaintiff's objective is the collection rather than the creation, recognition, or liquidation of a matured debt. *In re Drauschak,* 481 B.R. 330, 340–42 (Bankr. E.D. Pa. 2012); *In re Asousa P'ship,* 264 B.R. 376, 384 (Bankr. E.D. Pa. 2001) ("Turnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate."). However, turnover is classified as a non-core matter when it involves disputed property or property clearly not within the bankruptcy estate. *In re Jamuna Real Est., LLC,* 357 B.R. 324, 333 (Bankr. E.D. Pa. 2006) (Holding that turnover is not proper where a bona fide dispute regarding the title of the property exists); *see also, e.g., U.S. v. Inslaw, Inc.,* 932 F.2d 1467, 1472 (D.C.Cir.1991) ("It is settled law that the

227695611 v1

debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.").

The twelfth claim of avoidance and recovery of post-petition transfers is a core claim because it arises under 11 U.S.C. §§ 549 and 550. The thirteenth claim of avoidance and recovery of preferential transfers is a core claim pursuant to 11 U.S.C. §§ 547(b) and 550. The fourteenth claim of avoidance and recovery of fraudulent transfers is also a core claim pursuant to the Bankruptcy Code, 11 U.S.C. § 548.

The majority (at least nine out of fourteen) of the claims asserted by the Trustee are non-core and, without consent of the parties, must be tried to a jury in this Court. This Court is better equipped to handle the discovery proceedings and adjudicating the non-core claims asserted by the Plaintiff.

6.    The Parties Assert Their Right to a Jury Trial.

A court's exercise of discretion to withdraw is guided by whether "any party has  asserted a right to a jury trial to which it is constitutionally entitled." *In re Earth Pride Organics, LLC*, 602 B.R. 1, 12-13 (E.D. Pa. 2019) (quoting *In re Portnoy*, No. 17-38, 2017 WL 3141186, at *2 (E.D. Pa. July 24, 2017)). Here, the vast majority of the claims the Trustee asserts in the Complaint are non-core claims against Moving Defendants. Plaintiff has included a jury demand in the Complaint, and Moving Defendants are entitled to a jury trial as the Seventh Amendment to the United States Constitution guarantees the right to a jury trial in suits at common law. *In re Transcon. Refrigerated Lines, Inc.*, 494 B.R. 816, 820 (Bankr. M.D. Pa. 2013). [2]

---

[2] Counsel for the Plaintiff seemingly recognizes this as well. In response to defense counsel's inquiry regarding withdrawal of the reference, Plaintiff's counsel wrote: "[w]e have considered the venue issue and wish to keep the matter in the bankruptcy court until it is ready for a jury trial, *which of course will take place in the District Court*." *See* Exhibit 2 filed herewith (emphasis added).

227695611 v1

**B. This Court Should Withdraw the Reference Because this Action May Involve Extensive Discovery Disputes.**

Although the Moving Defendants intend to move for dismissal of the Complaint, should any portion of the Adversary Proceeding remain following that adjudication, referral of this case for discovery to a magistrate judge would promote judicial economy by efficiently moving the case forward (due to the case being extensively factually involved) because they "are not the type of claims typically heard in the bankruptcy court and could require extensive discovery and instructions to the jury on the law of Pennsylvania." *In re Pelullo,* WL 535155, at *2 (citing *Judge v. Ridley & Schweigert (In re Leedy Mortgage Co., Inc.),* 62 B.R. 303, 306 (E.D.Pa.1986)). In *Leedy Mortgage*, the court observed:

> Unlike the matters concerning the bankruptcy matter, this case could require extensive discovery. The parties in this action will have to study many volumes of written material and depose many individuals, including, at least, the thirteen individual defendants. In addition, the parties will have to hire experts to testify as to the standard of care to be employed by a reasonable accountant in Birmingham, Alabama, at the pertinent times. The trial will be lengthy and complex. It will last from two to four weeks, far longer than most proceedings in bankruptcy court. Also, unlike most bankruptcy proceedings, it will require a jury and extensive examination of documents and witnesses. At the conclusion of the evidence, the court will have to instruct the jury on the law of contract and negligence as governed by the State of Alabama. All of this contrasts with that which typically occurs before the bankruptcy court. The court believes that it is well within the mark when it says that bankruptcy courts do not commonly hear lengthy trials involving the law of contracts or negligence based on the law of a state foreign to the forum where extensive discovery and pretrial proceedings are necessary and inevitable.

*In re Leedy Mortgage*, 62 B.R. at 306.

Here, while the case may not involve a law of a state foreign to the Bankruptcy Court, it will inevitably be complex and lengthy due to the sheer number of defendants (twenty-one) and claims asserted (fourteen). Accordingly, because of the discovery complexity, length, and

disputes that may arise, Moving Defendants respectfully submit that this matter should be adjudicated by this Court.

**<u>CONCLUSION</u>**

For the foregoing reasons, Moving Defendants request that the Court enter an order (i) granting the Motion and (ii) granting such other and further relief as is just and proper.


Dated: September 5, 2023                  */s/ Mariam Khoudari*
                                               STEPHEN M. PACKMAN
                                                 MARIAM KHOUDARI
                                                 **ARCHER & GREINER, P.C.**
                                                 Three Logan Square
                                                 1717 Arch Street, Suite 3500
                                                 Philadelphia, PA 19103
                                                 Tel: (215) 963-3300
                                                 Fax: (215) 963-9999
                                                 spackman@archerlaw.com
                                                 mkhoudari@archerlaw.com

                                                 *Counsel for Moving Defendants*

**EXHIBIT 1**
**Adversary Complaint - Bankruptcy Case No. 21-11750-MDC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:**<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>Debtor. | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>Defendants. | **Adv. No. _____**<br><br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

## <u>COMPLAINT</u>

### I.    INTRODUCTION

1.    Plaintiff, Bonnie B. Finkel (the "Trustee"), in her capacity as Chapter 7 Trustee for

Midnight Madness Distilling LLC f/k/a Theobald and Oppenheimer, LLC d/b/a Faber Distilling

(the "Debtor"), by and through her undersigned counsel, brings this action to recover, *inter alia*,

more than $10 million for damages inflicted upon the Debtor—a successful distillery that was

1

looted and destroyed by the Debtor's former insiders (the "Insider Defendants") and their profiteering enablers—all Defendants herein.

2.      In a brazen scheme to loot the Debtor, Defendants formed shadow entities—a number of which were "offshore"—to which Debtor opportunities, property and profits were diverted (the "Pilfering Entities") with the purpose, intent, and effect of enriching Defendants at the expense of the Debtor and its non-insider creditors.

3.      To cover their tracks, the Insider Defendants intentionally deleted, wiped, and stole the Debtor's electronic data and cloud computing drives after the Debtor filed for bankruptcy. Debtor emails, internal documents, sales records, customer lists, invoices, and marketing strategies (but for a few which remained in system files and metadata uncovered by the Trustee) were purposefully destroyed or transferred to the Pilfering Entities.

## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1334, since the litigation arises under Title 11 of the United States Code (the "Bankruptcy Code"), or in or related to cases under the Bankruptcy Code.

5.      The Trustee demands a jury trial before an Article III judge in connection with all claims asserted herein that are triable to a jury under the Constitution and applicable law, and the Trustee does not consent to the entry of final judgment or adjudication by a bankruptcy judge.

6.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1409(a).

## III.      PARTIES

### A.      The Plaintiff

7.      On June 21, 2021 (the "Petition Date"), Midnight Madness Distilling LLC, a Pennsylvania limited liability company, filed a voluntary petition for relief under Chapter 11 of

the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania under the caption *In re Midnight Madness LLC*, Bankr. E.D. Pa., Case No. 21-11750-MDC.

8.      On October 13, 2021, this Court entered an order converting the Debtor's Chapter 11 bankruptcy case (the "Chapter 11 Case") to a case under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Case").

9.      On October 14, 2021, Plaintiff Bonnie B. Finkel was appointed as Chapter 7 Trustee of Debtor's bankruptcy estate—a position which she currently holds.

**B.      The Defendants**

**The Insider Defendants**

10.     Defendant Casey Parzych is an individual with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073.  At times material hereto, Casey Parzych was: (a) the Manager and majority member of the Debtor; (b) the Debtor's President and Treasurer from 2012 until 2020 (when he was replaced as Treasurer by Defendant Rittenburg); (c) a Member and President of Defendant AgTech PA LLC (hereinafter identified), one of the Defendant Wynk Entities (hereinafter defined); and (d) an agent for the Pilfering Entities (hereinafter defined).

11.     Defendant Angus Rittenburg is an individual with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073.  At times material hereto, Defendant Rittenburg was: (a) an officer and member of the Debtor; (b) an officer and member/shareholder of Defendants Polebridge, LLC and Good Design, Inc.; and (c) Chief Operations/Technology Officer of Defendant Best Bev Entities (hereinafter identified) and Defendant Wynk Entities (of which he is a co-founder).

12.     Defendant Kelly Festa is an individual with a place of business at 2512 Quakertown

3

Road, Pennsburg, PA 18073.  At times material hereto, Defendant Festa was: (a) the Chief Financial Officer of the Debtor; (b) the Director of Sales and Operations of the Best Bev Entities; and (c) an agent of the Polebridge Entities (hereinafter defined) and the Wynk Entities.

13.     Defendant Ashleigh Baldwin—Defendant Casey Parzych's wife—is an individual with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073. At times material hereto, Defendant Baldwin was: (a) Debtor spokesperson and agent; (b) an officer and member/shareholder of Polebridge, LLC and Good Design, Inc.; and (c) an agent of the Wynk Entities and the Best Bev Entities.

14.     Defendant Michael Boyer is an individual residing at 4406 Lowell Road, Wilmington, DE 19802 and with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073.  At times material hereto, Defendant Boyer was an attorney serving in the dual and conflicting roles of general counsel to the Debtor and counsel to the Polebridge Entities and the Wynk Entities.

15.     Defendant R.F. Culbertson is an individual residing at 17 Churchill Road, Pittsburgh, PA 15235 and with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073.  At times material hereto, Defendant Culbertson was: (a) Chief Operating Officer and member of the Debtor; and (b) an agent of the Polebridge Entities, the Wynk Entities, and the Best Bev Entities.

16.     Defendants Casey Parzych, Rittenburg, Festa, Baldwin, Boyer, and Culbertson are referred to collectively in this Complaint as the "Insider Defendants."

### The Polebridge Entities

17.      Defendant Polebridge, LLC ("Polebridge") is a Pennsylvania limited liability company with its registered office at 118 North Main Street, Trumbauersville, PA 18970.

18.     Defendant Good Design, Inc. ("Good Design") is a British Columbia corporation with a registered office at Suite 1400, 777 Densmuir Street, Vancouver, British Columbia, Canada, V7Y 1K4.  Good Design is owned by Defendant Baldwin, Defendant Rittenburg, and Thomas Rittenburg, who, upon information and belief, has a familial relationship with Defendant Rittenburg.

19.     Defendants Polebridge and Good Design operated as alter egos, and are referred to collectively in this Complaint as the "Polebridge Entities."

20.     As described in detail herein, the Polebridge Entities, with the substantial assistance of the Insider Defendants, misappropriated Debtor resources, property, and personnel to generate sales and profits from CBDelight and Faber Hand Sanitizer products, which rightfully belonged to the Debtor but were misappropriated by and diverted to the Polebridge Entities.

### The Wynk Entities

21.      Defendant AgTech PA LLC f/k/a American Cannabis LLC ("AgTech PA") is a Pennsylvania limited liability company with its principal business office at 2512 Quakertown Road, Pennsburg, PA 18073.

22.     Defendant Shawn Sheehan is an individual with a place of business at 6501 Red Hook Plaza, Suite 201, Charlotte Amalie, United States Virgin Islands, 00802.  Defendant Sheehan is sole manager and member of XO EW, LLC and Canvas 340, LLC, and Director and President of XO Energy MA, Inc.

23.     Defendant AgTech VI, LLC ("AgTech VI") is a United States Virgin Islands limited liability company with operations at 2512 Quakertown Road, Pennsburg, PA 18073.

24.     Defendant AgTech VI is formally owned and operated by a complex web of entities which are ultimately owned and controlled by Defendant Sheehan, as follows:

5

27

      a.     Defendant XO Energy Worldwide, LLLP is a United States Virgin Islands limited liability limited partnership with its principal office at East End Plaza, Suite 120, 6115 Smith Bay, Charlotte Amalie, United States Virgin Islands, 00802.  Defendant XO Energy Worldwide, LLLP is the sole member and manager of Defendant AgTech VI;

      b.     Defendant XO EW, LLC is a United States Virgin Islands limited liability company with its principal office at 5093 Dronningens Gade, Ste. 1, Charlotte Amalie, United States Virgin Islands, 00802.  Defendant XO EW, LLC is the general partner of Defendant XO Energy Worldwide, LLLP; and

      c.     Defendant Sheehan is the sole member and manager of Defendant XO EW, LLC.  He is also its Chief Executive Officer.

25.     Defendant Canvas 340, LLC is a United States Virgin Islands limited liability company with its principal office at East End Plaza, Suite 120, 6115 Smith Bay, Charlotte Amalie, United States Virgin Islands, 00802.  The members of Canvas 340, LLC are Defendant Sheehan and the Shawn P. Sheehan Revocable Trust.

26.     Upon information and belief, Defendants AgTech PA, AgTech VI, XO Energy Worldwide, LLLP, XO EW, LLC, and Canvas 340, LLC – along with the now-dissolved Sheehan-controlled entities AgTech VI, LLLP and AgTVI, LLC – operated under the control of Defendants Sheehan and Casey Parzych as if they were a unified entity, or alter egos, and are referred to collectively in this Complaint as the "Wynk Entities."

27.     As described in detail herein, Defendants caused the Wynk Entities to, *inter alia*, utilize the resources, property, and personnel of the Debtor to produce, market and sell the Wynk Seltzer product, for which the profits flowed not to the Debtor, but instead to the Wynk Entities.

**The Best Bev Entities**

28.     Defendant Ryan Uszenski is an individual residing at 8-40 Estate Nazareth, Charlotte Amalie, United States Virgin Islands, 00802, with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073.  Defendant Uszenski is a Manager of Defendants Can Man, LLC and Best Bev, LLC.

29.     Defendant Can Man LLC d/b/a Best Bev ("Can Man") is a Pennsylvania limited liability company with its registered office at 2512 Quakertown Road, Pennsburg, PA 18073.

30.     Defendant Best Bev, LLC is a United States Virgin Islands limited liability company with operations at 2512 Quakertown Road, Pennsburg, PA 18073.

31.     Defendant Best Bev, LLC is owned and operated by a complex web of entities which are owned and controlled by Defendant Sheehan, as follows:

a.     Defendant EtOH Worldwide, LLC is a United States Virgin Islands limited liability company with its principal office at East End Plaza, Suite 120, 6115 Smith Bay, Charlotte Amalie, United States Virgin Islands, 00802.  Defendant EtOH Worldwide, LLC is the sole member and a co-Manager of Defendant Best Bev, LLC;

b.     Defendant XO Energy Worldwide, LLLP is the sole member and manager of Defendant EtOH Worldwide, LLC;

c.     Defendant XO EW, LLC is the general partner of Defendant XO Energy Worldwide, LLLP; and

d.     Defendant Sheehan is the sole member and manager of Defendant XO EW, LLC.

32.     Upon information and belief, Defendants Can Man, Best Bev, LLC, EtOH Worldwide, LLC, XO Energy Worldwide, LLLP, and XO EW, LLC operated as if they were a

7

unified entity, or alter egos, and will hereinafter be collectively referred to as the "Best Bev Entities."

33.    As described in detail herein, the Defendants caused the Best Bev Entities to, *inter alia*, utilize resources, property, and personnel of the Debtor to generate beverage sales and beverage packaging sales for which the profits flowed not to the Debtor, but instead to the Best Bev Entities.

### The Gary Parzych Entities

34.    Defendant Gary Parzych is an individual residing at 138 N. Main Street, Trumbauersville, PA, with a place of business at 2300 Trumbauersville Road, Trumbauersville, PA 18970.  Gary Parzych is the father of Defendant Casey Parzych and the President and Owner of Defendants Finland Leasing Co., Inc. and Eugene T. Parzych, Inc.

35.    Defendant Finland Leasing Co., Inc. ("Finland Leasing") is a Pennsylvania corporation with its registered office at 2300 Trumbauersville Road, Trumbauersville, PA 18970. Finland Leasing is Debtor's former landlord.

36.    Defendant Eugene T. Parzych, Inc. ("ETP") is a Pennsylvania corporation with its registered office at 2300 Trumbauersville Road, Trumbauersville, PA 18970.

37.    At all times material hereto, the individual Defendants acted in their own right, and as agents for and on behalf of the entity Defendants.

38.    The Polebridge Entities, the Wynk Entities, and the Best Bev Entities will be referred to collectively herein as the "Pilfering Entities."

IV.    **FACTS**

39.    The Debtor, also known as Theobald & Oppenheimer and Faber Distilling Co., was co-founded by Defendant Casey Parzych and Anthony Lorubbio in or around 2012 while the two

were enrolled in Defendant Culbertson's Intro to Entrepreneurship class at Carnegie Mellon University.

40.    In the years leading up to its bankruptcy filing, the Debtor experienced rapid growth—from almost nothing to $10 million in annual sales—developing, manufacturing, marketing and selling thirty+ distilled spirit products, with its most prominent products bearing the Faber brand.

41.    A February 21, 2018 Philadelphia Business Journal article reported on the Debtor's expansion:

> The Bucks County spirits company that produces the Faber line of liquors has rebranded and moved to a larger headquarters facility. The moves signal changes at the company, pivoting to become a 'curator of a collection of brands' – setting it up for more expansion. Theobald & Oppenheimer began as an entrepreneurship class project at Carnegie Mellon University in Pittsburgh, forming in 2012 under the name Midnight Madness Distilling.
>
> The company purchased, renovated and this year moved into the historic and once-dormant Theobald & Oppenheimer Co. cigar building at 118 N. Main St., Trumbauersville in Bucks County.
>
> Theobald & Oppenheimer moved from 500 square feet in its old facility to about 12,000 square feet in its new headquarters just down the road, which has office space, storage and a bottling system on four floors. . . .
>
> "We rebranded not as a craft distillery but as a curator of a collection of brands," co-founder Anthony Lorubbio told the Philadelphia Business Journal. . . . "Faber is our consumer-facing line, but if we wanted to get into another one, then we need this umbrella-branded entity that houses those brands . . . . Aside from products we have now, we have a few things under the hood we look to launch soon[.]"

**The Insider Defendants Form Good Design, Polebridge, and the Wynk Entities
To Funnel Money Out of the Debtor in Collusion with Defendant Sheehan**

42.    On April 19, 2019, the Debtor entered into a Loan Agreement and a Security Agreement with PNC pursuant to which it ultimately borrowed approximately $2.5 million.  To

9

secure the loan, PNC received a first lien on all personal property of the Debtor and a second mortgage on the Debtor's headquarters at 118 North Main St., Trumbauersville in Bucks County ("118 North Main").

43.    To circumvent PNC's security interest, the Insider Defendants conspired with themselves and the other Defendants to form shadow entities—in the same lines of business as the Debtor—which were then used to misappropriate Debtor resources and loot the Debtor for the benefit of the Defendants.

44.    The unlawful scheme involved sham profit sharing arrangements and sham loan agreements between the Debtor and Sheehan's collection of wholly-owned Virgin Islands based entities – namely, Defendant AgTech VI, LLC, Defendant XO Energy Worldwide, LLLP, Defendant XO EW, LLC, Defendant EtOH Worldwide, LLC, AgTech VI LLLP, and AGTVI LLC (collectively, the "Sheehan Entities") – through which Debtor resources were misappropriated and Debtor profits were siphoned out, and the ill-gotten gains were shared among the Defendants.

45.    The profit sharing agreements themselves have not been provided and are unavailable to the Trustee due to Defendants' destruction/theft of Debtor records and Defendants' failure to cooperate with the Trustee's Rule 2004 requests (discussed *infra*).

### The Polebridge Entities

46.    Effective April 19, 2019 – the same date that the Debtor executed the PNC Loan Agreement – Defendant Baldwin formed Defendant Polebridge as a Pennsylvania limited liability company, listing its registered office as the Debtor's headquarters at 118 North Main.  Using Debtor computers, Defendant Festa provided administrative support for the filing of Polebridge's registration documents.

47.    On May 23, 2019, Defendants Baldwin and Rittenburg formed Defendant Good

Design as a British Columbia corporation, listing the Debtor's headquarters as the incorporators'
address.  Using Debtor computers, Defendant Festa provided administrative support for the filing
of Good Design's registration documents.

48.    On February 4, 2020, Defendant Baldwin caused Polebridge to register "Good
Design" as a fictitious name with the Pennsylvania Department of State, listing "canning" as the
"nature of the business or other activity to be carried on under or through the fictitious name."

## CBDelight Seltzer

49.    The Polebridge Entities' first project was CBDelight seltzer, a carbonated beverage
containing cannabis derivatives.

50.    CBDelight was manufactured, packaged, and marketed using Debtor resources,
labor, and material, including but not limited to: office and warehouse space for operations, the
purchase of additional canning/bottling equipment utilized for the purposes of Good
Design/Polebridge, sales services and incentives, marketing services, graphic design services,
digital marketing and advertising services, legal services, intellectual property, and bottling
services.  The following facts establish the point.

51.    While described to the public as a Good Design product, "C B Delight" was in fact
a trademark filed by the Debtor on April 17, 2019.

52.    On August 1, 2019, Defendants issued a press release stating that "Cbdelight (a
division of Good Design Inc.) announced that it has partnered with Pennsylvania-based distributor
Nittany Beverage to expand the brand's footprint in Pennsylvania. . . . Ashleigh Baldwin, CEO of
Good Design Inc., remarked: 'With Chad Merriweather and Kelli Scozzaro working with Nittany's
seasoned team, we're going to hit it out of the park.'"  At the time of the press release, Kelli
Scozzaro and Chad Merriweather were full time employees of the Debtor.

11

53.     Defendant Culbertson's LinkedIn page states that he has been employed in sales and marketing for Good Design since January 2019 and further states that "[o]ur cbDelight product is one of the top selling products in the tri-state area. . . . Our new Siphon device allows anyone to carbonate any drink with CBD – anywhere – at a far reduced price point."  The "Siphon device" referenced by Defendant Culbertson constituted or utilized the Debtor's intellectual property.

54.     The Debtor utilized Defendant Culbertson's Polebridge Entities' email address (rf@gooddesigninc.com) on its application for a Paycheck Protection Program loan.

55.     While employed full-time as the Debtor's CFO, Defendant Festa utilized a Polebridge Entities email address (kellyfesta@gooddesigninc.com), which she accessed using the Debtor's computer equipment.

56.     On numerous occasions, Defendant Casey Parzych conducted Debtor business, including communications with Debtor's outside counsel, using his Polebridge Entities email address (casey@gooddesigninc.com).

57.     Many other full-time Debtor employees utilized the Polebridge Entities' email addresses, accessed through Debtor computers, to further the business interests of the Polebridge Entities, including Defendant Rittenburg (angus@gooddesigninc.com), Debtor customer service representative Casey Coughlin (ccoughlin@gooddesigninc.com), and Debtor production manager John Pitts (john@gooddesigninc.com).

58.     CBDelight's Facebook page lists its telephone number as (215) 268-6071, a telephone number owned, paid for, and utilized by the Debtor, and staffed by Debtor employees.

59.     The LinkedIn page of John Aguilar—a Debtor account manager from November 2019 through November 2020—emphasizes that, while employed full-time by the Debtor, he "[d]eveloped, maintained and grew a target account list within Philadelphia market that drove

volume & brand recognition for . . . CBDelight," and which resulted in a 40% increase in brand

growth for CBDelight.

      60.    An August 23, 2019 presentation approved by Defendant Parzych to train Debtor

sales representatives announced new Debtor product CBDelight as Debtor's top "mission critical"

priority:



61.     A Debtor marketing presentation entitled "Theobald & Oppenheimer Leadership Brands Presentation" features numerous CBDelight slides emphasizing that the Debtor makes, cans, and delivers the CBDelight product:



**Faber Hand Sanitizer**

62.     In March 2020, after the WHO declared COVID-19 a global pandemic and bars throughout the United States shut down due to government orders, the Insider Defendants caused the Debtor to manufacture, bottle, and sell hand sanitizer under the Faber brand ("Faber Hand Sanitizer"), which had been trademarked by the Debtor in 2016.

63.     As they did with CBDelight, Defendants diverted the proceeds and profits from

the massively lucrative Faber Hand Sanitizer out of the hands of the Debtor where they rightfully belonged and into the pockets of Defendants—funneled through the Polebridge Entities.

64.    Faber Hand Sanitizer was manufactured, packaged, and marketed with Debtor resources, including labor, material, office and warehouse space for operations, the purchase of additional canning/bottling equipment, sales services and incentives, marketing services, graphic design services, digital marketing and advertising services, legal services, intellectual property, and bottling services.  The following facts establish the point.

65.    Good Design's LinkedIn profile describes its business as "[m]anufacturing," specifically "[m]aking beverages and FDA-approved hand sanitizer for hospitals, grocery stores, employees and everyday Americans."

66.    Defendant Baldwin's LinkedIn profile lists her former employment as CEO of Good Design, which she states "makes consumer goods including spirits, sodas and hand sanitizer. We are registered with the FDA and are currently supplying hand sanitizer to several of the largest healthcare systems in the U.S."  Defendant Baldwin's profile further states that Good Design "is a good kind of consumer goods company.  We invent and make delightful spirits, sodas and other consumer products in our own factory in rural Pennsylvania."

67.    These descriptions are false—the Polebridge Entities had no manufacturing capability, facilities, or personnel whatsoever, except for that pilfered from the Debtor.

68. Good Design's LinkedIn profile depicts bottles of Faber Distilling Co. hand

sanitizer in its background:



69. Beginning on March 26, 2020, the Debtor's Faber Liquors Instagram page was

dominated by posts advertising Faber Hand Sanitizer.

70. A Philadelphia Inquirer article dated April 6, 2020 highlights the Debtor, with no

mention of Polebridge or Good Design:

> Bucks County's Theobald & Oppenheimer[, i.e., the Debtor,] is on
> the opposite end of the spectrum [from a smaller distillery]: The
> second-largest distillery in the state, it made $2 million worth of
> alcohol last year between its two brands, Faber Liquors and Singe
> Prop Rum.  Like its smaller peers, Theobald has pivoted to hand
> sanitizer – also using its own bottles – but it can churn it out by the
> pallet.
>
> "We bought ethanol at 200 [proof] and we get a tanker in a day,"
> said T&O chief financial officer Kelly Festa.  "We mix it with
> hydrogen peroxide and glycerin, and then we run it through the
> bottling lines."

16

The Trumbauersville company has increased the number of production shifts and employees. "We're running three shifts a day, seven days a week, trying to get as much out the door as possible," Festa said. "We're getting orders left and right, from hospitals, the U.S. Postal Service, huge supermarket chains, you name it."

By the end of March, T&O had filled 167,300 one-liter glass bottles with hand sanitizer branded with the Faber Liquors label. . . . At the moment, hand sanitizer is all T&O is making.

71. Confirming the theft of payments due the Debtors from sales of Faber Hand Sanitizer, by email dated April 9, 2020, Defendant Baldwin instructed the Debtor's sales team to divert payments from Debtor's Square point of sale system to Polebridge's Square account:



72.    As the Debtor's April 17, 2020 press release made clear:

> [The Debtor] has shifted production of its high-quality vodkas, gin, and rum to the manufacture of hand sanitizer (Faber Hand Sanitizer). While many distillers have made similar adjustments, Faber has scaled the production of its hand sanitizer to supply consumers as well as medical professionals and first responders. . .

> So many people are having trouble securing sanitizer right now. We knew we could help by producing an abundant supply, despite disruptions in the supply chain," said Ashleigh Baldwin, Faber's spokesperson. "When people get their sanitizer from us, they are protecting themselves and supporting efforts to help those heroes on the frontlines of the COVID-19 pandemic. . . .

> Faber Hand Sanitizer is available in the same one-liter bottles that the company has traditionally used to store the spirits that it has produced for more than 8 years. The hand sanitizer has less viscosity, allowing it to be utilized in spray bottles or with towels to help disinfect surfaces.

73.    Similarly, Faber Hand Sanitizer's Facebook page stated: "we – the team at FABER Liquors – have shifted our usual operations to produce much-needed hand sanitizer" and lists the telephone number of Faber Hand Sanitizer as (215) 268-6071, a telephone number owned by, paid for, utilized, and staffed by the Debtor.

74.    On April 17, 2020, Defendant Sheehan made a post to his LinkedIn page advertising Faber Hand Sanitizer.  Upon information and belief, Defendant Sheehan and the Sheehan Entities had an agreement with the Insider Defendants to share in the ill-gotten profits from the sale of CBDelight and Faber Hand Sanitizer.

75.    An April 21, 2020 email from Defendant Festa's Polebridge Entities email account (kellyfesta@gooddesigninc.com) to the Debtor's sales managers—via their Debtor email accounts (@theoandopp.com)—instructed the Debtor's sales managers to ensure that the Debtor's customers made payments by electronic transfer, i.e., ACH or wire, into Polebridge's

18

bank account, and not the account of the Debtor, for sales of Faber Hand Sanitizer:

> From: **Kelly Festa**
> <kellyfesta@gooddesigninc.com>
> Date: Tue, Apr 21, 2020 at 3:55 PM
> Subject: New bank account wiring
> instructions
> To: Ian Kobos <ian@theoandopp.com>,
> Kelli Scozzaro
> <kscozzaro@theoandopp.com>
>
> Hello,
>
> Can you please send this along to your
> sales team? We have a new bank account
> for wires and ACH's to go into. ACH info
> below and wire instructions attached.
>
> Thank you!
>
> Account name: Polebridge LLC
>
> Account type: Checking
>
> Bank name: Raymond James- UMB Bank
>
> Account: ▓▓▓▓▓▓
> Routing: ▓▓▓▓▓▓

76.    An April 29, 2020 press release issued by the Debtor, reports that the Debtor:

is increasing its production of hand sanitizer (Faber Hand Sanitizer)
to meet growing demand . . . .

The Faber team has been supplying hospitals, truck drivers, and first
responders since it first made the switch from producing its high-
quality vodkas, gin, and rum.  The company has also made its 80
percent alcohol antiseptic hand sanitizer available directly to
consumers too.

"It is no secret that essential businesses and services need hand
sanitizer to maintain operations. However, as more businesses make
plans to re-open, many are experiencing difficulties and frustrations
sourcing much-needed hand sanitizer," said Faber spokesperson
Ashleigh Baldwin. "We are producing abundant supplies of high-
quality sanitizer to relieve the anxieties of businesses preparing to
safely conduct business again.

19

77.    A May 12, 2020 email from the Debtor's outside counsel to a representative of the United States Alcohol & Tobacco Tax & Trade Bureau confirms that the Debtor "has converted to hand sanitizer production and [is] supplying large hospital centers."

78.    The Debtor's sales representatives also accepted tens of thousands, if not hundreds of thousands, of dollars in cash payments for Faber Hand Sanitizer, which were diverted from the Debtor for the benefit of the Polebridge Entities.

79.    A June 11, 2020 presentation approved by Defendant Parzych to train the Debtor's sales representatives lists four "Mission Critical" products for emphasis to the Debtor's customers. Faber Hand Sanitizer shared the top spot with Faber liquor (with CBDelight demoted to third place):



80.    Another Debtor marketing presentation—entitled "Theobald & Oppenheimer Leadership Brands Presentation"—featured numerous slides touting Faber Hand Sanitizer and the massive success of this Debtor product:






81.    Numerous individuals utilized email addresses associated with Faber Hand Sanitizer, which they accessed using Debtor computer equipment, to further the business interests of the Polebridge Entities, including: Defendant Baldwin (ashleigh@fabersanitizer.com), Defendant Culbertson (rf@fabersanitizer.com), and Debtor customer service representative Casey Coughlin (ccoughlin@fabersanitizer.com).

21

82.     Faber Hand Sanitizer exploited the Debtor's marketing staff and resources, and
utilized advertising mirroring that for Debtor's liquor products:



83.     Kelli Sheehan (who, upon information and belief, has a familial relationship with
Defendant Sheehan), while a full-time employee and agent of the Sheehan Entities, utilized the
Debtor's computers to conduct business relating to the Faber Hand Sanitizer product
(kelli@fabersanitizer.com).

84. Despite being manufactured, marketed, and sold using the Debtor's resources and personnel, profits from Faber Hand Sanitizer were diverted to the Polebridge Entities, and ultimately to the Defendants.

85. The Trustee's preliminary analysis confirms that a minimum of $8.8 million of profits attributable to the sale of Faber Hand Sanitizer and CBDelight were stolen from the Debtor and diverted to Defendants.  The actual amount diverted is likely much higher, as there was no proper accounting for cash transactions.

### Wynk Seltzer

86. In the fall of 2020, Defendants Casey Parzych, Rittenburg and Sheehan used Debtor resources and personnel to create a cannabis infused beverage known as Wynk seltzer ("Wynk Seltzer").

87. On September 1, 2020, Defendant Sheehan caused Defendant AgTech VI to file Articles of Organization as a United States Virgin Islands ("USVI") limited liability company for the purposes of diverting the profits from the sale of Wynk Seltzer away from the Debtor.

88. On November 25, 2020, Defendant Casey Parzych, as organizer, registered American Cannabis LLC as a Pennsylvania limited liability company for the purposes of diverting the profits from Wynk Seltzer away from the Debtor.

89. On April 26, 2021, American Cannabis LLC filed a document with the Pennsylvania Department of State to change its name to AgTech PA LLC.  The document was signed by Defendant Casey Parzych as President and indicates that it should be returned to Defendant Festa via the email address kellyfesta@drinkwynk.com.

90. The Wynk Seltzer business was facilitated using Debtor resources, including labor, material, office and warehouse space for operations, the purchase of additional canning/bottling

equipment utilized for the purposes of Wynk Seltzer, sales services and incentives, marketing services, graphic design services, digital marketing and advertising services, legal services, intellectual property, and canning services.  The following facts establish the point.

91.    While Defendants conspired to delete or steal all data on the Debtor's physical computers and cloud storage services (as described in greater detail below), forensic analysis of system files on a Debtor hard drive reveals that, as with CBDelight and Faber Hand Sanitizer, substantial Debtor resources were diverted for the ultimate benefit of the Wynk Entities.

92.    Debtor computers were used to access email addresses associated with Wynk Seltzer, including those belonging to Defendant Casey Parzych (casey@drinkwynk.com and casey@drinkcannabisusa.com), Defendant Rittenburg (angus@drinkwynk.com), Defendant Festa (kellyfesta@drinkwynk.com), Defendant Culbertson (rf@drinkwynk.com and rf@drinkcannabisusa.com), Sheehan Entities' employee Kelli Sheehan (kellisheehan@drinkwynk.com), and Debtor customer service representative Casey Coughlin (ccoughlin@drinkwynk.com).

93.    The Wynk Entities regularly used a copier and scanner belonging to the Debtor.

94.    On April 19, 2022[1], current Wynk Seltzer Brand Manager Casey Coughlin posted the following to her LinkedIn page, indicating that, on April 19, 2021 (while still a full-time

---

[1]    Historical LinkedIn posts do not publicly display the exact date on which a post was made, instead giving an approximation based off the date the post was viewed (in the case of this post, approximately "1 yr" from the June 6, 2023 date on which the screenshot was taken).  The exact posting date, however, is available within computer code used to display the LinkedIn website and a publicly available internet tool (https://ollie-boyd.github.io/Linkedin-post-timestamp-extractor/) can use the URL of a given LinkedIn post to display the exact date the post was made.  Utilizing this tool, the Trustee's special counsel determined that the LinkedIn post was made on April 19, 2022.

employee of the Debtor), she was "[w]rapping up Wynk's 1st mobile production run in Ohio":



95.    Debtor credit card records establish that the Debtor—not the Wynk Entities—paid

for Ms. Coughlin's travel to Ohio, including:

    a.    On April 18, 2021, a $200.45 charge at the Hampton Inn in Gallipolis, Ohio;

    b.    On April 18, 2021, an $18.46 charge to the United Dairy Farmers

convenience store in Columbus, Ohio;

    c.    On April 18, 2021, a $15.78 charge to a Bob Evans restaurant in Jackson,

Ohio;

    d.    On April 18, 2021, a $30.52 charge to a Target in Columbus, Ohio;

      e.       On April 19, 2021, a $2.95 charge to a Starbucks in Columbus, Ohio;

      f.       On April 20, 2021, a $23.00 charge to Jolly Pirate Donuts in Newark, Ohio;

      g.       On April 20, 2021, a $96.80 charge to Destination Donuts in Columbus, Ohio;

      h.       On April 23, 2021, a total of $41.43 in charges to a BP gas station in Columbus, Ohio;

      i.       On April 23, 2021, a $973.01 charge to Budget Rent-A-Car in Columbus Ohio for a vehicle which was rented from 4/19/21 until 4/23/21;

      j.       On April 23, 2021, a $719.10 charge to the Canopy by Hilton hotel in Columbus, Ohio;

      k.       On April 23, 2021, a $26.44 charge to Duck Donuts in Mason, Ohio; and

      l.       On April 23, 2021, a $313.40 charge to American Airlines for travel from Columbus, Ohio to Philadelphia.

96.    Upon information and belief, the Debtor paid for many other purchases for the sole benefit of the Wynk Entities and the Wynk Seltzer product.

97.    On May 11, 2021, the Wynk Entities arranged for the shipment of industrial equipment to 2600 Milford Square Pike, Quakertown PA 18591 ("2600 Milford"), a location which was paid for by the Debtor but which, upon information and belief, was used solely by the Pilfering Entities.

98.    In the Summer of 2021, numerous other invoices were billed to the Debtor yet either explicitly stated that they were for purposes related to Wynk Seltzer or called for deliveries to 2512 Quakertown Road, Pennsburg, Pennsylvania ("2512 Quakertown Road"), an address never disclosed by the Debtor as part of its operations and which was used solely for the purposes of the

Polebridge Entities, the Wynk Entities, and the Best Bev Entities.

99.     The website of the Cannabis Beverage Association features a member page for "WYNK ;)", listing its address as 2512 Quakertown Road and its telephone number as (215) 565-5845, a phone number which is listed as belonging to the Debtor on vendor invoices.

100.     The Wynk Entities regularly ordered supplies for Wynk Seltzer using the Debtor's computers, telephone lines, and vendor accounts.

101.     Numerous individuals used their Wynk Entities email accounts in communications concerning the Debtor and its bankruptcy, many of which would have been otherwise privileged communications with the Debtor's attorneys, including: Defendant Casey Parzych (casey@drinkwynk.com and casey@drinkcannabisusa.com), Defendant Rittenburg (angus@drinkwynk.com), Defendant Festa (kellyfesta@drinkwynk.com), Defendant Culbertson (rf@drinkwynk.com and rf@drinkcannabisusa.com), and Defendant Sheehan (shawn@drinkwynk.com).

102.     In an email dated June 15, 2021, a representative of Classic Staffing Services, Inc. – a temp agency paid for by the Debtor – stated that she "was instructed to reach out for all matters related to Faber to Jack Blobe from Drink Wynk.  I was told he would be the contact going forward and that Drink Wynk, Theo and Opp, and Faber were one and the same."  Mr. Blobe's LinkedIn profile states that he was a full-time employee of the Debtor from May 2020 through September 2021, a full-time employee of the Wynk Entities from May 2021 through February 2022, and a full-time employee of the Best Bev Entities from May 2022 through May 2023.

103.     Despite being manufactured, marketed, and sold using the Debtor's resources and personnel, all revenues from Wynk Seltzer flowed to the Wynk Entities, and ultimately the

Defendants.

**Defendants Conspire to Utilize the Bankruptcy Process to Defraud the Debtor's Creditors**

104.    Defendants attempted to mask their wrongdoing by creating invoices, tax forms, and other documents to feign an arm's length relationship between Debtor, the Polebridge Entities, and the Wynk Entities.  The documents were phony and a sham—as they failed to fully and accurately describe and account for Debtor resources being devoted to the sole benefit of the Polebridge Entities, the Wynk Entities, and, ultimately, the individual Defendants.

105.    Defendants' scheme was designed to hide the fact that they were extracting millions of dollars of value out of the Debtor, to place it beyond the reach of Debtor's creditors.

106.    Due to Defendants' diversion of Debtor resources and profits to the Polebridge Entities, the Wynk Entities, and their principals and affiliates, the Debtor was unable to pay its debts and, on February 28, 2021, defaulted on the PNC loan.

107.    Under scrutiny but not wanting to abandon their profitable scheme, Defendants conspired to have Defendant Sheehan utilize his complex network of wholly-owned USVI entities to further defraud the Debtor and its creditors.

108.    Kelli Sheehan and Sheehan Entities CFO John Charette, despite being full-time employees of the Sheehan Entities, maintained accounts on the Debtor's computer system and had full access to the books, records, and online accounts belonging to the Debtor.

109.    Defendants first attempted to have certain of the Sheehan Entities either purchase PNC's debt or purchase the Debtor's business assets outside of bankruptcy.

110.    The contemplated transactions were not arm's length and were closely coordinated among the Defendants, with Defendants Casey Parzych and Sheehan leading the scheme.

111.    The coordination between the Debtor and the Sheehan Entities was so egregious

that the Debtor's outside counsel admonished Defendants Casey Parzych, Culbertson, Boyer, and

Festa in a January 18, 2021 email:

> [I]t's very unusual and inadvisable to be including [Sheehan
> Entities' attorney] Carey Drangula and [the Sheehan Entities
> referred to as] X/O on all of these emails [concerning the Sheehan
> Entities acquiring the Debtor or its assets].  There is no privilege.
> She and X/O are an adverse party in these negotiations, particularly
> now that another party . . . is in the mix.  You again must treat this
> as an arm's length transaction for the ultimate maximum benefit of
> the Company between two equal suitors or you are going to get
> yourselves in trouble.   I would not advise continuing to seek her
> legal counsel or X/O's approval on anything. I would also keep
> confidential communications within this team unless or until a deal
> is made.  Any indication that you have favored X/O or have been
> providing them access or information that you have not provided to
> [the other potential purchaser] or other suitors has the potential to
> become fodder for litigation.   X/O and [the other potential
> purchaser] are competitors and we must treat them as such.

112.    Defendants Casey Parzych, Culbertson, Boyer, and Festa did not follow counsel's

advice.  They continued to present the Debtor to other potential purchasers as unfavorable in the

hope of steering the business to the Sheehan Entities at less than fair value.

113.    That plan failed and Defendants pivoted to a bankruptcy alternative, which included

an effort to sell the business cheap to the Sheehan Entities through a Section 363 sale or, if that

failed – via a web of entities doing business as "Best Bev" and/or "Can Man" and referred to herein

as the "Best Bev Entities" – through outright theft of the Debtor's property and resources.

114.    Attorney time entries filed with this Court in support of certain of the Sheehan

Entities' attorneys' application for allowance of a purported "expense reimbursement" establish

the essential role of the Sheehan Entities in the scheme, indicating that, as of at least April 8, 2021,

the Sheehan Entities were conspiring with the Debtor Defendants to formulate the Debtor's

bankruptcy strategy.

115.    Indeed, Defendant Sheehan (using his Sheehan Entities email address,

sssheehan@xo-energy.com, and his Wynk Entities email address, shawn@drinkwynk.com) and

Sheehan Entities CFO John Charette (using his Wynk Entities email address,

johncharette@drinkwynk.com) were copied on otherwise privileged emails between the Debtor,

its bankruptcy counsel, and/or its accountants concerning the Debtor's bankruptcy strategy.

116.    Defendants Sheehan and Casey Parzych jointly retained Washington D.C.-based

public relations firm kglobal to direct marketing strategies in light of Debtor's bankruptcy and

Sheehan's anticipated takeover of Debtor's assets.

### The Debtor Diverted Assets to the Best Bev Entities

117.    On May 3, 2021, Can Man, LLC ("Can Man") was formed as a Pennsylvania

limited liability company with Debtor's outside counsel acting as organizer.  Can Man's registered

office was originally listed as 2600 Milford, but changed on September 30, 2021 to 2512

Quakertown Road, the same address used by the Wynk Entities.

118.    Upon information and belief, all activity taking place at 2600 Milford, 2512

Quakertown Road, and 300 Commerce Drive, Quakertown, PA ("300 Commerce") was for the

benefit of Can Man, the other Best Bev Entities, and the other Pilfering Entities.

119.    Upon information and belief, in May 2021, Defendants caused the Debtor to

transfer a Hamrick Recaser machine with an estimated value of $145,000 to 2512 Quakertown

Road for use by the Pilfering Entities.

120.    On May 6, 2021, Casey Coughlin – who identifies herself on her LinkedIn page as

an employee of the Debtor and Wynk – posted the following to her facebook page: "Hiring spree!

Beverage production in Quakertown (don't sleep on it) at Faber Distilling. . . . Signing bonus,

referral bonus, bonus for breathing.  Name your bonus."

121.    Upon information and belief, Ms. Coughlin's hiring efforts – while ostensibly made

on behalf of the Debtor – were intended to benefit the Pilfering Entities, as a company on the verge of a bankruptcy filing would likely not make such extraordinary hiring expenditures.

122.    On June 1, 2021, despite knowing that the Debtor's bankruptcy filing was imminent, Defendant Casey Parzych, acting on behalf of the Debtor, executed a Consulting Services Agreement with DPG Management, LLC ("DPG") under which DPG was to provide human resources consulting services more fully described in a proposal dated May 20, 2021.

123.    The May 20, 2021 DPG proposal, while addressed to the Debtor, is entitled "Wynk – Proposal," and provides for comprehensive human resources programs and assessments which would be of no use to a company about to file for bankruptcy.  Upon information and belief, the services provided by DPG, although contracted and paid for by the Debtor, were used by Defendants to benefit the Pilfering Entities.

124.    On June 14, 2021, Defendants Festa and Uszenski utilized the Debtor's computer equipment and email system to create and edit a Word document titled "Can Man Shadow Structure," which depicted a corporate structure under which Can Man would own Faber and all the Debtor's other brands and operate out of a headquarters located 2512 Quakertown Road.

125.    On June 13, 2022, Best Bev, LLC was formed as a United States Virgin Islands limited liability company.  Upon information and belief, Best Bev LLC is either the successor in interest to Can Man or was created by Defendants to avoid liability for misconduct on the part of Can Man, which at all times relevant hereto operated using the name "Best Bev."

126.    On June 24, 2022, Maho, LLC filed papers with the Pennsylvania Department of State to utilize "Best Bev" as a fictitious name.  The document was signed by John Pitts, the Best Bev Entities' Processing & Compliance Manager (and the Debtor's former production manager) and indicates that it should be returned to Defendant Festa at 2512 Quakertown Road.

31

## **Defendants Interfered with the Debtor's Section 363 Sale**

127.    On June 3, 2021, Defendants Casey Parzych and Rittenburg signed a Joint Resolution of the Managers and Majority In Interest of Members of the Debtor declaring that the Debtor was insolvent and unable to pay its debts as they mature and authorizing the filing of a voluntary petition under chapter 11 of the Bankruptcy Code.

128.    On June 1, 2021, immediately before execution of the joint resolution, the Debtor, on the one hand, and EtOH Worldwide, LLC and AgTech VI, LLC, on the other, executed Equipment Lease Agreements.

129.    The Equipment Lease Agreements were sham documents designed to create false administrative claims that would accrue during the Chapter 11 Case but would never be paid. Indeed, based on the lease payments that were accruing, the Debtor over a two-year term would pay well more than double the original cost of the equipment.

130.    In a letter dated June 10, 2021, Defendant Sheehan, writing as President of Defendant EtOH Worldwide, LLC, sent a letter (the "Sheehan Letter") to coerce PNC into cooperating with a Section 363 sale of the Debtor's assets to the Best Bev Entities at a low-ball price. While signed only by Defendant Sheehan, the letter was drafted by Sheehan, counsel for Sheehan and the Best Bev Entities, and the Debtor's bankruptcy counsel. It states in pertinent part:

> EtOH has evaluated MMD, [i.e., the Debtor,] including the collateral pledged to PNC, and concluded that the remaining value of its business, however slight, is as an ongoing concern. As soon as MMD is reduced to its assets, the value of the business will plummet. The equipment that was pledged to PNC has significantly diminished in value and is almost inextricably integrated into the building in which it has housed. . . . EtOH's acquisition of MMD's assets will be the only viable path forward, and this path will require PNC to reset its expectations for several reasons.

* * *

32

> Without EtOH as a counterparty, MMD will shutter its operations in Trumbauersville, leaving 80 employees jobless in a small rural town in Pennsylvania. PNC will be left with virtually unsaleable equipment, and, in the face of Casey Parzych's personal bankruptcy, a meaningless guaranty. EtOH is aware of certain additional complicating factors that will only frustrate PNC's attempts to recoup value from MMD's assets . . . .

> \* \* \*

> The landlord of the leased premises[, i.e., 2300 Trumbauersville Road, which was leased by Defendant Finland Leasing to the Debtor,] is the father of MMD's majority Unit Holder; it is solely because of this relationship that the landlord has not pursued a default claim for nonpayment of rent under the lease. . . . [T]he landlord is unwilling to relet the premises to an unknown third party (including PNC or its eventual assignee) and nothing could compel him to do so. Without a lease at these premises, the distilled spirits production permits . . . will be immediately revoked.

131.    On the Petition Date, the Debtor filed a motion seeking approval of a sale under Section 363 of the Bankruptcy Code (the "Sale Motion"). The Sale Motion proposed to sell the Debtor's assets to Sheehan Entity EtOH Worldwide, LLC, and failed to disclose the extent of the relationship between the Sheehan Entities and Debtor insiders.

132.    In the run up to the Section 363 sale, Defendant Gary Parzych advised potential buyers that he would not allow anyone other than the Sheehan Entities to lease the 2300 Trumbauersville Road property, nor would he permit a transition period for a buyer to find a new location for the operations in that building. Gary Parzych further stated that he was only willing to allow the Sheehan Entities to occupy the building because his son, Defendant Casey Parzych, was part of their organization.

133.    On July 22, 2021, the Debtor caused a document to be posted to the Section 363 sale data room which stated that the 2300 Trumbauersville Road "lease is expired. All batching and bottling equipment that is currently stored in this building needs to be immediately removed

33

from the premises upon completion of the sale.  New distilled spirits plant license [sic] will then

have to be obtained as all current licenses are tied to 2300 Trumbauersville Road."

134.    The chilling impact of this sudden revelation was well-summarized in a July 22,

2021 email from PNC's counsel to the Debtor's bankruptcy counsel:

> This lease is identified in the Stalking Horse APA for assumption
> and assignment, so the sudden revelation that it is not available to
> other bidders is problematic.  The landlord – Finland Leasing – is
> owned by Casey's father.
>
> If the Stalking Horse is getting favored (undisclosed) treatment for
> this lease by virtue of this property being owned by Casey's father
> – and other potential bidders will not be afforded similar treatment
> or even told they can negotiate with Finland – this is highly
> inappropriate.  None of this has been disclosed but for a random
> paragraph uploaded for the first time today (that seems well
> designed to scare off potential bidders).  This document should be
> removed from the data room immediately since it is highly
> prejudicial.
>
> It's looking more and more like MMD is designing this sale to
> overwhelmingly favor ETOH (in a sale that no doubt will benefit
> Casey personally) – a clear violation of MMD's fiduciary
> obligations.

135.    On the same day, counsel for PNC expressed further concerns to counsel for the

United States Trustee, and highlighted how Defendants were depressing the value of the

Debtor's assets at the anticipated Section 363 sale:

> I am very concerned about the due diligence materials being
> presented to potential bidders and management's favoritism to
> ETOH (that an affiliate holds Casey and his wife's personal
> guaranty over their heads is a major red flag – I don't care what was
> proffered yesterday).  PNC got access to the data room yesterday
> and discovered that only 2020/2021 financials were uploaded (only
> COVID operations, nothing historic).  PNC requested that historical
> financials for the past 3 years be updated (and was told by [the
> Debtor's auctioneer] that they would be).  It just seems like
> management is doing everything it can to make this business look
> unattractive to third parties.  BET Investments has already dropped
> out – Kurtzman told me today.

34

136. Other bidders informed PNC's counsel that they were dropping out because it was obvious that the Insider Defendants were attempting to rig the sale in favor of the Sheehan Entities.

137. A July 23, 2021 email from PNC's counsel further describes the impact of the Debtor's failure to provide full disclosure as to the relationship between the Debtor, its principals, Finland Leasing, and the Sheehan Entities:

> What information was provided to PNC pre-petition has little bearing on the information being provided to third party bidders by MMD/Comly – nor is posturing by ETOH in connection with pre-petition sale negotiations pertinent to whether or not MMD is meeting its fiduciary obligations now that it is in bankruptcy. At best the information provided to third party bidders regarding this lease has been misleading and contradictory (with this lease reported as unexpired in the Schedules and disclosure schedules to the APA when allegedly it is not). At worst, the bidders are being given late information that is both inaccurate and designed to discourage participation. It's fair to alert bidders that the lease is expired and cannot be assumed or assigned under Section 365 (if that is the case). But it's another thing entirely for MMD to pre-emptively tell bidders that they will have no access to that building post-closing under any circumstances (which is the message sent by the document uploaded yesterday).
>
> Casey's father and his company, Finland Leasing, are statutory insiders of the Debtor. *See* Section 101(31)(B)(vi) and (E). If there is a side-agreement or any sort of understanding (even informal) between Finland Leasing and ETOH, it should have been disclosed at Wednesday's hearing (where it was reported that there are no agreements/understandings at all between ETOH and its affiliates/insiders and MMD and its affiliates/insiders other than the vague reference in the APA to possible retention of employees). The fact that the APA provides for assumption and assignment of this expired lease strongly suggests there is such a side-agreement. This should be disclosed in the notice you are preparing to interested parties.
>
> Most importantly, however, Casey and his father (both insiders of MMD) cannot collude with each other and ETOH to favor ETOH over other bidders. That is what this is if Finland would only agree to enter into a new lease with ETOH and no other potential buyers. It's deliberately and purposefully putting the other bidders at a

disadvantage to throw the auction to ETOH. That ETOH was aware of this advantage and previewed it for PNC is all the more troubling and suggestive of the collusion. But ETOH's posturing does not excuse MMD and Casey from meeting their fiduciary obligations to conduct a fair sale process designed to maximize the value of the assets. A fix in favor of ETOH hardly does that.

This can be corrected by MMD/Comly advising potential bidders that they too are free to reach out to Finland Leasing to negotiate terms of a new lease (or a short-term accommodation if they don't want to use that building). But any attempt by Finland Leasing (a debtor insider) to pre-emptively foreclose those discussions is a significant problem and clear violation of MMD's fiduciary obligations. All bidders need to be on equal footing with respect to potential negotiations with Finland (except for normal market issues such as ability to perform, etc.) – and that should be communicated clearly to the interested bidders.

138.    On July 26, 2021, counsel to the United States Trustee held a Section 341 meeting at which Defendant Casey Parzych testified under penalty of perjury, *inter alia*, that the Debtor had no relationship with Wynk Seltzer. This testimony was willfully false.

139.    That same day, a creditor which participated in the meeting emailed counsel for the United States Trustee. The creditor forwarded an email from a representative of Classic Staffing Services, Inc. (stating that a Debtor representative told her that "Drink Wynk, Theo and Opp, and Faber were one and the same"), and pointed out that it establishes the "opposite of what [Defendant Casey Parzych] testified [to] on today's call re: DrinkWynk's relationship to Midnight Madness."

140.    PNC's counsel confirmed that numerous Debtor employees were simultaneously working for the Wynk Entities:

A little shocking that MMD internally isn't even trying to hide it[, i.e., the fact that Debtor employees, vendors, and customers were being told that the Debtor and the Wynk Entities were one and the same].

I wonder if they would give you ownership/governance information for Wynk, ETOH, AgTech and XO Energy? [Millstone Spirits Group, LLC ("Millstone") principal] Robert Cassell thought Casey

36

had an ownership interest in one of the XO affiliates, but I was not able to find any governance information (these are Virgin Island entities).  Even if Casey doesn't have an ownership interest in Wynk, I bet Angus Rittenburg does – and he's also a director of MMD.  I would think at some point Harry/Bill would be a little concerned with how honest their client contact is being with them.  My litany of e-mails to them is not just me crying wolf at this point.  There are serious issues here.

I'm told by Cassell that Faber is a $10 million brand, so there's real value here (and that's just one of the several brands).  The failed transaction with XO Energy that the other shareholder blew up pre-petition was for a purchase price of more than $2.5 million.  Creditors are now at risk of ETOH taking the company for $1.5 million ($1,025,000 cash plus assumption of $450,000 in secured debt) and Casey getting the benefit of whatever side deals he's negotiated and this co-venture with Wynk.  If you assume $2.5 million is the floor, fulsome marketing and a fair auction (overseen by a true fiduciary) could get unsecured creditors paid.

At one point pre-petition, PNC floated to Casey the idea of PNC funding a small DIP loan to allow for fulsome marketing and to neutralize the stalking horse bid.  He wouldn't even discuss it with us.  Not sure if PNC would be interested in that in connection with a trustee, but let me know if you want to discuss.

141.    On August 6, 2021, in response to questioning from counsel from the United

States Trustee, the Debtor represented that:

The debtor does not now and never has provided services to any companies for the purpose of unlawfully manufacturing, storing, distribution, or using a controlled substance as defined under federal law.

The debtor has no knowledge of a company called DrinkWynk. Wynk seltzer is a product.

Casey Parzych is the sole member of AgTech PA LLC ("AgTech"). Agtech contracts with different cannabis processors to produce Wynk seltzer.  None of the debtor's assets (including but not limited to the collateral of the PNC Loans) are currently used by or in the business operations of AgTech nor have they ever been used by or in the business operations [sic] AgTech.  AgTech lawfully provides services to cannabis companies using assets that are not and never were owned by the debtor.

37

142.    This statement, like Defendant Casey Parzych's testimony at the Section 341 meeting, is demonstrably false given the numerous instances described in this Complaint of the Wynk Entities using the Debtor's equipment, facilities, and employees.

143.    In an email string dated August 16 & 17, 2021, counsel for PNC complained to the Debtor's bankruptcy counsel that:

> Counsel for New Liberty[, a division of Millstone,] reached out to advise that she spoke with Casey's father (principal of the landlord for 2300 Trumbauersville Road) and was told in no uncertain terms that he will not accommodate anyone other than ETOH with respect to either a new lease or even transition time for a new buyer to find a new location for the operations in that building.  He told her that he is only willing to allow ETOH occupy the building because his son is going to be involved with them going forward.  All he will offer a new buyer is 30 days, which New Liberty's counsel tells me is not enough time to transition; they need at least 90 days.  At the same time, he is offering ETOH (as the stalking horse) much more than that – because he knows that Casey will be involved with that enterprise.
>
> Needless to say, this is concerning and contrary to representations made by Casey and ETOH (including representations made by Casey under oath).  Casey's recent declaration said that his father was willing to discuss arrangements with other bidders and that there is no formal or informal agreement between ETOH and Finland regarding the premises.  Casey has also sworn (and your firm has represented) that there is no agreement – informal or otherwise – between Casey and ETOH regarding his ongoing involvement with the business.  It's very obvious to anyone paying attention that that simply isn't true.  Casey's father pretty much confirmed it today with New Liberty's counsel.
>
> This also reeks of continuing collusion among Casey, ETOH and his father.  As estate fiduciaries, both Casey and your firm should welcome the participation of New Liberty.  We therefore implore you and Harry to address this immediately with Casey and his father.  Casey's father – as a debtor insider – cannot favor ETOH over other potential bidders because of his son's business relationship with ETOH (current or future).  That is the very reason why relatives of debtor insiders are themselves considered debtor insiders.

38

* * *

> Casey has been less than forthcoming with everyone (including your
> firm) about the extent of his and his family's relationships with the
> stalking horse – disclosing things only when they're called out by
> others.  Given these prior issues, questions need to be asked and
> information verified – and it is not my practice to blindside opposing
> counsel by simply raising issues at a hearing.
>
> All PNC wants is a fair auction process that puts bidders on
> somewhat equal footing and does not give ETOH an inside
> advantage because of Shaun Sheehan's other business relationships
> with Casey.

144.    On or about August 25, 2021, Millstone placed a winning bid at the Section 363 auction for an approximate price of $1.4 million and agreements to assume certain contracts, and pay certain administrative expenses.

145.    Due to the Defendants' misconduct as alleged herein, the price paid by Millstone for the Debtor's assets was less than it would have been had the Section 363 sale been conducted on a level playing field.

146.    On September 17, 2021, this Court approved the sale of substantially all of the Debtor's assets to Millstone.

147.    Documents filed with this Court by Millstone for the purposes of objecting to the Sheehan Entities' requests for allowance of expense reimbursement aptly summarize the chilling effect of the Defendants' misconduct on the bidding at the Section 363 auction and the inextricable intertwinement of the Debtor, the Sheehan Entities, and the Wynk Entities:

> [t]he Stalking Horse bid[, i.e., the Sheehan Entities' collusive initial
> bid for the Debtor's assets,] did not serve as a catalyst for additional
> bids.  The mere fact that the Stalking Horse bidder was an insider of
> the Debtor with intimate and preexisting knowledge of the assets to
> be sold, and that Finland Leasing (the Debtor's landlord for 2300
> Trumbauersville Road and Casey Parzych's father) made clear he
> would only lease to [Sheehan Entity] ETOH, certainly dissuaded
> true third party purchasers.  Millstone was the only bidder at the

39

auction other than ETOH and PNC, and even then, the Debtor
attempted to prevent Millstone from bidding by announcing, at the
auction with no advance warning, that the Debtor would not
consider the bids apples-to-apples unless Millstone agreed to pay
ETOH's administrative expense claim.  If ETOH's insider status
wasn't . . . enough to chill bidding, the Debtor's overwhelming
support of the Stalking Horse surely did. . . . ETOH had unfettered
access to information regarding the valuation of the Debtor's assets
and its business operations for months, if not longer, before the
bankruptcy was filed.

\* \* \*

The [Sheehan Entities'] and the Debtor's businesses and
management have been inextricably [i]ntertwined since well before
this bankruptcy case was filed[.] . . . The [Sheehan Entities] are
insiders of the Debtor, . . . [and] the transactions resulting in the
[Sheehan Entities'] request for an administrative claim were not
arms-length[.] . . . Millstone submits that the invoices for many of
the parts associated with [equipment which is the subject of the
aforementioned sham lease agreements between the Sheehan
Entities and the Debtor] demonstrates the [Sheehan Entities'] insider
relationship.  For example, several of the invoices that appear to be
for pieces of the Leased Equipment were billed to "Kelly Festa, Etoh
Worldwide." . . . Ms. Festa was, at all relevant times, the Debtor's
chief operating officer.  Other invoices reflect equipment that was
billed and shipped to a company called "American Cannabis"
located at the Debtor's business address and "ordered by Kelly
Festa." . . . While the Debtor was never in the business of cannabis
production, the venture formed by Debtor's members, Casey
Parzych and Angus Rittenburg, with the indirect owner of the
[Sheehan Entities], Shawn Sheehan, were in that business, through
their "Wynk" business.  Yet other invoices [pertaining to equipment
used by the Wynk Entities] were billed directly to "Theobald &
Oppenheimer," the dba used by the Debtor.

### Defendants Operated the Debtor in Possession As An Extension of
### the Pilfering Entities, And Continued to Do So After the Section 363 Sale

148.    While operating the Debtor in Possession (the "DIP"), Defendants caused the DIP

to make numerous transfers and incur debts from which the Debtor derived no benefit and which

went to the sole benefit of the Best Bev Entities and the other Pilfering Entities.

40

149.    Upon information and belief, Defendant Casey Parzych made the Debtor's bankruptcy counsel aware of his plan to steal Debtor assets and divert business to the Best Bev Entities, prompting counsel to send him the following email on August 31, 2021:

> Casey, as a follow up to our conversation, I want to reiterate that our strong advice is for you and MMD to at all times act in good faith to take all actions to preserve and protect the assets, business, customers, contracts, relationships, etc of MMD and to deliver to the winning bidder at the auction--- Millstone--- the assets that they contracted to purchase so that their expectations for the transaction that they bargained for will be consummated at the closing.  Doing anything less, would contradict our advice could subject you (and maybe others) to significant legal issues and concerns.   One particular issue of note is that you could be found personally liable for failure to uphold your fiduciary duty to MMD and its creditors and such personal liability could be deemed non-dischargeable (even if you filed a Chapter 7) see, for example Section 523(a)(4) of the Bankruptcy Code.

150.    While the Trustee's effort to construct a full accounting of transfers made by the Debtor for the benefit of Best Bev has been hampered by Defendants' intentional destruction of Debtor records, such transfers include the following (the "Post Petition Best Bev Transfers"):

a.    On or about July 6, 2021, Defendants caused an industrial shrink wrapper machine (PMI Shrink Wrapper with Heat Tunnel, SI-TW30, Serial No. 02498) belonging to the Debtor to be delivered to 2512 Quakertown Road for use by Best Bev.  Defendant Festa later falsely informed Millstone that the machine was broken and scrapped before closing;

b.    On or about July 14, 2021, Defendants used the Debtor's account to order $700.40 worth of carbon dioxide from Roberts Oxygen Company, Inc., with the carbon dioxide delivered to Best Bev at 2512 Quakertown Road;

c.    On or about July 14, 2021, Defendants used the Debtor's account to order 25,872 750 ML glass bottles and 2,688 1.75 L glass bottles from O-I Packaging Solutions LLC at

a cost of $22,198.03, which were delivered to Best Bev at 2512 Quakertown Road, and which were paid for by check drawn on the Debtor's DIP account and signed by Defendant Festa;

d.      On or about July 19, 2021, Defendants used the Debtor's account to order 25,872 750 ML glass bottles, 1,344 1.75L glass bottles, and 3,072 750 ML tequila bottles from O-I Packaging Solutions LLC at a cost of $22,919.06, which were delivered to Best Bev at 2512 Quakertown Road, and which were paid for by check drawn on the Debtor's DIP account and signed by Defendant Festa;

e.      On or about August 5, 2021, a $400.00 check to Milford Township (in which 2512 Quakertown Road sits) for a "Fire Inspection" was drawn on the Debtor's DIP bank account and signed by Defendant Festa;

f.      On or about August 10, 2021, Defendants used the Debtor's account to arrange for SunTeck Transport Co., LLC to deliver a 2,000 LB shipment from Eastgate Graphics in Lebanon, OH to Best Bev at 2512 Quakertown Road at a cost of $2,795.00;

g.      On or about August 11, 2021, Defendants used the Debtor's account to order $1,244.30 worth of packaging material from Century Packing, Inc., for shipment to Best Bev at 2512 Quakertown Road;

h.      On or about August 12, 2021, Defendants used the Debtor's account to order 24,024 1L glass bottles from O-I Packaging Solutions LLC at a cost of $17,125.14, which were delivered to Best Bev at 2512 Quakertown Road;

i.      On or about August 18 and 19, 2021, Defendants used the Debtor's account to order a total of $1,236.64 worth of carbon dioxide from Roberts Oxygen Company, Inc., which was delivered to Best Bev at 2512 Quakertown Road;

j.      On or about August 31, 2021, Defendants used the Debtor's account to order and ship 181,984 aluminum cans from Zuckerman Honickman at a total cost of $41,037.12, which were delivered to Best Bev at 2512 Quakertown Road;

k.      On or about September 13, 2021, Defendants used the Debtor's account to order 722,000 aluminum can ends from Zuckerman Honickman at a cost of $23,465.00, which were delivered to Best Bev at 2512 Quakertown Road; and

l.      A September 29, 2021 email from Millstone's counsel to Debtor's bankruptcy counsel reported that Defendants removed the following items from Debtor's facility (upon information and belief, for the benefit of the Best Bev Entities): a case shrink sealer, a nitrogen doser, and a bulk carbon dioxide system.

151.    Upon information and belief, the above represents a small fraction of the goods and services which were paid for by the Debtor, but which were used for the sole benefit of Best Bev or the other Pilfering Entities.

152.    Defendants have intentionally sabotaged the Trustee's efforts to determine the full extent of goods and services paid for by the Debtor but used for the sole benefit of Best Bev or the other Pilfering Entities.  For example, Defendant Festa instructed vendors to falsely state that Debtor orders were being delivered to the Debtor's facilities when they were actually being delivered to Best Bev at 2512 Quakertown Road.

153.    Shortly before the Millstone acquisition was set to close, the Insider Defendants falsely informed Debtor employees that they would be meeting with Millstone representatives, but instead arranged a meeting with agents of the Best Bev entities, who requested that Debtor employees sign a document stating their intention to work for Best Bev.  The employees were then told to take the week off, which allowed Defendants to remove several pieces of large equipment

43

from the Debtor for the benefit of the Best Bev entities.

154.    On or about September 21, 2021, prior to the Millstone deal closing, the Insider Defendants intentionally deleted, wiped, or stole all the Debtor's electronic data and cloud computing drives, both to hinder Millstone from competing with Defendants' Best Bev enterprise and to hinder any investigation into Defendants' misconduct.

155.    While Defendant Festa testified at a Section 341 meeting that she inadvertently deleted the Debtor's data while trying to transfer it to Millstone, this testimony is contradicted by numerous facts, including: a) due to standardized safeguards and warnings issued by the Debtor's cloud provider prior to mass deletion of data, and a thirty day hold period during which deleted data can be recovered, it is highly improbable that all of the Debtor's email and electronic data could be inadvertently destroyed; b) in addition to data stored on cloud services, the Debtor's computers were wiped of meaningful data prior to their transfer to Millstone; c) a forensic analysis conducted by Millstone indicated that the data was not destroyed, but instead transferred; and d) in discussions which occurred after the supposed deletion of data, Defendant Festa was able to retrieve specifically requested electronic documents belonging to the Debtor, but only after reporting that she had to ask for permission to do so.  Upon information and belief, Defendant Festa sought "permission" from Defendants Casey Parzych and Sheehan, who ordered the deletion/transfer of the Debtor's data in the first instance.

156.    On September 27, 2021, Millstone's counsel reported to the Debtor's counsel that Defendant Parzych told Debtor employees not to come to work, that the Debtor had not been fulfilling customer orders, that "Faber products are out of stock in basically every store," and that there was no backlog of inventory or glass bottles at the Debtor's premises.  Upon information and belief, this was because Defendants: a) encouraged the Debtor's former employees to work for the

Best Bev Entities instead of Millstone; b) were fulfilling the Debtor's customer orders for the

benefit of the Best Bev Entities instead of the Debtor; and c) were using the Debtor's inventory

and equipment to produce large amounts of product for use by Best Bev.

157.    The Debtor's large raw materials purchases and hiring spree in the months

preceding the Millstone closing also support the inference that millions of dollars' worth of DIP

property was improperly diverted to the Best Bev Entities.

158.    Defendants lied about the true nature of their supposedly new enterprise, informing

customers that Best Bev was simply a continuation of the Debtor.

159.    For example an October 7, 2021 text message from Defendant Culbertson to a

former customer of the Debtor stated that the Defendants had "re-formed" the Debtor "and

quickly started [manufacturing] & co-packing 500,000 cans/bottles per day."

160.    Culbertson's text message further offered to "save you at least 14% OFF your

current prices," with the "current prices" being a reference to the Debtor's prices, and with the

discount made possible only because Defendants had been stealing the Debtor's personnel,

equipment, and inventory for use by Best Bev.

161.    Upon information and belief, Defendants sent similar text messages to hundreds of

the Debtor's former customers, using customer lists which Defendants stole from the Debtor.

162.    An October 11, 2021 email from counsel to Millstone to Debtor's bankruptcy

attorneys reports:

> [b]ased on . . . conversations our sales guys are having with [former
> Debtor] customers, [Defendant] Casey [Parzych] and [Defendant]
> RF [Culbertson] are holding themselves out to customers as "Faber"
> and saying the[y] "re-formed" the business.
>
> I am also getting invoices from other [Debtor] vendors who say they
> haven't been paid in months, and that [Defendant] Kelly [Festa]
> recently asked them to make edits to invoices before they sent them

45

> to us to make it look like the goods were shipping to [the Debtor] at
> 118 N. main Street (when the original invoice says they were
> shipping to CanMan at 2512 Quakertown Road).

163.     On October 12, 2021, Defendants made their first post to the wellrebellion Instagram account.  Well Rebellion was the new name for the liquor product Defendants manufactured and bottled using Debtor resources and employees.

164.     Defendants subsequently began manufacturing, marketing, and selling the Well Rebellion product using stolen Debtor equipment as well as the Debtor's supposedly deleted internal data.

165.     Certain of the Defendants, including Defendants Festa and Culbertson, utilized custom Well Rebellion flyers which included their cell phone numbers to market the product for the benefit of Best Bev.  Upon information and belief, the flyers were created using the Debtor's marketing files, but with the Faber brand name replaced with the Well Rebellion name.

166.     Prior to and after the closing of the sale of the Debtor's assets to Millstone, the Defendants utilized the Debtor's phone.com account for the benefit of Best Bev, returning calls to Debtor customers who placed orders for Faber products, and instead selling them the corresponding Best Bev products.

167.     On October 18, 2021, Drifter Spirits emailed Millstone concerning a meeting that Drifter Spirits had that day with "Midnight Madness," the Debtor; in reality, the Defendants had set up a meeting between Drifter Spirits and Best Bev under the guise that Best Bev was a mere continuation of the Debtor.

168.     In an October 20, 2021 report, a Millstone sales manager complained that Defendants were using the Faber brand name in communications with the Debtor's former customers and were causing the customers to think that Best Bev was simply a continuation of the

46

Debtor:

> All of our customers are still very confused and getting daily
> constant texts/calls/emails from BestBev claiming to be us and
> asking for their 'Faber well order'. . . . They hired a team of reps +
> call center with 5 people non stop calling our customers working
> phones + email off our old customer lists.  Many of our customer
> are telling me they call them, text them, and email them multiple
> times a day after they told them to please please stop.

169.    On November 1, 2021, a Millstone sales manager reported that the Best Bev

Entities "are continuing to spam all of our customers direct cell phones with texts and calls" and

that the customers were confused as to whether the Debtor and Best Bev were separate entities.

170.    In the fall of 2022, Defendants caused Best Bev to join the Upper Perkiomen Valley

Chamber of Commerce, stating that, "[a]fter years of dreaming up, canning and distributing our

own beverages, we have expanded our universe . . . [and] have the space to do it all at our new

100,000+ sf facility centrally located just outside Philadelphia," i.e., 2512 Quakertown Road.  The

reference to "years of dreaming up, canning and distributing our own beverages" is an obvious

reference to the Debtor, and yet another indication that Defendants treated the Debtor and Best

Bev as one and the same.

171.    To this day, Defendants and the Best Bev Entities benefit from their theft of Debtor

resources.  Accordingly, all profits and assets of the Best Bev Entities should be returned to the

Debtor's estate for the benefit of those creditors whose debts Defendants sought to avoid.

### The Insider Defendants' Utter Failure To Maintain Internal Controls

172.    At all times material hereto, the Insider Defendants caused the Debtor to fail to

comply with the most basic principles of corporate governance and internal controls.

173.    This failure was intentional, particularly with respect to the Debtor's accounting,

as it allowed Defendants to freely pilfer the Debtor for the benefit of the Pilfering Entities, with

substantial ill-gotten gains flowing to the individual Defendants.

174.    A May 10, 2021 letter from the Debtor's outside accounting firm addressed to the

Debtor's Board of Directors and Members of the Debtor and its related entities reported the

complete failure of the Debtor's accounting function:

> In planning and performing our review of the consolidated
> financial statements of [the Debtor] and related entities . . .
> as of and for the year ended December 2020 in accordance
> with Statements on Standards for Accounting and Review
> Services promulgated by the Accounting and Review
> Services Committee of the American Institute of Certified
> Public Accountants (AICPA) we considered the Company's
> internal control over financial reporting together with certain
> administrative and procedural aspects which the Company
> employs.
>
> During the course of the review engagement we encountered
> numerous issues that we believe need to be addressed.  These
> matters lead to a prior period adjustment, numerous
> adjusting journal entries, and a significant amount of
> additional time to complete the review because of the need
> to perform additional review procedures. . . .
>
> Moreover, the issues noted cause for substantial concern
> because management cannot rely entirely on the accuracy of
> internally prepared financial statements.

175.    The Insider Defendants, with the active involvement and under the instruction of

Defendant Sheehan, grossly mismanaged the Debtor's Chapter 11 Case by, among other things,

providing false and inaccurate testimony and declarations, allowing the Debtor to produce and file

inaccurate documents, pilfering funds belonging to the DIP for the benefit of their affiliated

entities, providing the Sheehan Defendants full access and control of the Debtor's books and

records, allowing the Sheehan Defendants to assist in the preparation of the Debtor's filings with

this Court, intentionally attempting to rig the Section 363 sale for the benefit of the Sheehan

Defendants (resulting in an artificially low price for the Debtor's assets at auction) and causing the

Debtor to incur substantial unnecessary and avoidable fees, costs, and expenses.

176.    The Insider Defendants retained and utilized Defendant Boyer as the Debtor's non-bankruptcy General Counsel while knowing that Defendant Boyer was breaching fiduciary duties owed to the Debtor by simultaneously acting as counsel to the Polebridge Entities and the Wynk Entities to the considerable prejudice and detriment of the Debtor and its creditors.

177.    Defendant Boyer breached his fiduciary duties to the Debtor by simultaneously representing the Debtor, the Polebridge Entities, and the Wynk Entities, which, as set forth herein, existed for the purpose of defrauding the Debtor and its creditors.  Moreover, Defendant Boyer as general counsel to the Debtor knew or should have known of management's wrongdoing and failure to follow proper standards of corporate governance as set forth herein, had a duty to take corrective measures, and actively assisted Defendants' scheme instead of fulfilling his duty to correct the wrongdoing.

178.    Defendants Parzych and Rittenburg treated the Debtor as their piggy bank, making a number of personal purchases using the Debtor's funds, including the following (the "Parzych/Rittenburg Purchases"):

    a.    On May 22, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $287.60 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

    b.    On May 22, 2020, Defendant Angus Rittenburg used the Debtor's credit card to make a $114.42 purchase at Rich Air, a private aircraft services provider in Queensbury, NY;

    c.    On June 1, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $1,029.42 purchase at Elliott Aviation, a private aircraft service provider;

d.      On June 2, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $698.75 purchase at AVFlight, a private aviation service provider in North Canton, OH;

e.      On June 2, 2020, Defendant Angus Rittenburg used the Debtor's credit card to make a $438.76 purchase at Rich Air, a private aircraft services provider in Queensbury, NY;

f.      On June 3, 2020, Defendant Casey Parzych used the Debtor's credit card to make an $81.76 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

g.      On June 8, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $247.34 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

h.      On June 12, 2020, Defendant Casey Parzych used the Debtor's credit card to make a total of $2,072.10 in purchases at Elite Flight Experience, a private flight school in Princeton, NJ;

i.      On June 13, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $948.30 purchase at Elite Flight Experience, a private flight school in Princeton, NJ;

j.      On June 13, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $173.97 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

k.      On June 13, 2020, Defendant Rittenburg used the Debtor's credit card to make a $285.64 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

l.      On June 14, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $1,657.10 purchase at Elite Flight Experience, a private flight school in Princeton, NJ;

m.      On June 22, 2020, Defendant Rittenburg used the Debtor's credit card to make a $2,398.00 purchase at General Aviation Modifications, Inc., a supplier of private aircraft

50

engine parts in Ada, OK;

      n.      On August 23, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $14,362.24 purchase at the Pink Sands Club, a luxury resort located on the Caribbean island of Canouan in St. Vincent and the Grenadines;

      o.      On October 2, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $329.22 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

      p.      On January 7, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $620.40 purchase with American Airlines for purposes of buying an airline ticket for his father, Defendant Gary Parzych;

      q.      On February 13, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $205.14 purchase at the Margaritaville Beach hotel in Hollywood, Florida;

      r.      On February 16, 2021, Defendant Casey Parzych used the Debtor's credit card to make a total of $274.89 in purchases from American Airlines for travel to St. Thomas;

      s.      On March 2, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $4,551.93 purchase at Elite Flight Experience, a private flight school in Princeton, NJ;

      t.      On March 29, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $940.00 purchase at Fare Share Ltd., a private flight school in Pottstown, PA; and

      u.      On April 21, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $15,000.00 payment to his personal attorney at Rogers Counsel in Ardmore, PA.

### The Insider Defendants Funneled Money To Defendant Gary Parzych's Entities

      179.      The Debtor was party to a lease with Defendant Finland Leasing dated January 1, 2016 for warehouse space at 2300 Trumbauersville Road, Quakertown, PA (the "2300

Trumbauersville Lease").

180.    Defendant Finland Leasing is owned and controlled by Defendant Gary Parzych,

Casey Parzych's father.

181.    The 2300 Trumbauersville Lease provides for a monthly rent payment of

$2,050.00.

182.    The 2300 Trumbauersville Lease provides that it "may be modified only by a

further writing that is duly executed by both parties."

183.    Despite only being obligated to pay Finland Leasing $2,050.00 per month in rent,

the Insider Defendants, for the purpose of funneling money out of the reach of the Debtor's

creditors, caused the Debtor to pay Finland Leasing well more than $2,050.00 per month in rent

as follows:

| Month | Payments Total | Excess Payment |
|---|---|---|
| August 2017 | $7,700.00 | $5,650.00 |
| October 2017 | $2,293.36 | $243.36 |
| January 2018 | $8,760.86 | $6,710.86 |
| February 2018 | $6,500.00 | $4,450.00 |
| April 2018 | $6,500.00 | $4,450.00 |
| May 2018 | $6,500.00 | $4,450.00 |
| June 2018 | $6,500.00 | $4,450.00 |
| July 2018 (payment made 6/29/18) | $6,500.00 | $4,450.00 |
| August 2018 | $14,994.40 | $12,944.40 |
| September 2018 | $9,000.00 | $6,950.00 |
| October 2018 | $6,500.00 | $4,450.00 |
| November 2018 | $9,700.00 | $7,650.00 |
| December 2018 | $12,800.00 | $10,750.00 |
| January 2019 (payment made 12/27/18) | $6,500.00 | $4,450.00 |
| February 2019 | $13,000.00 | $10,950.00 |
| March 2019 | $6,500.00 | $4,450.00 |
| April 2019 | $6,500.00 | $4,450.00 |
| May 2019 | $6,500.00 | $4,450.00 |
| June 2019 (payment made 7/3/2019) | $6,500.00 | $4,450.00 |
| July 2019 | $7,375.00 | $5,325.00 |

| | | |
|---|---|---|
| August 2019 | $7,375.00 | $5,325.00 |
| September 2019 | $7,375.00 | $5,325.00 |
| October 2019 | $7,443.00 | $5,393.00 |
| November 2019 | $7,375.00 | $5,325.00 |
| December 2019 | $7,375.00 | $5,325.00 |
| January 2020 | $7,448.00 | $5,398.00 |
| February 2020 | $7,375.00 | $5,325.00 |
| May 2020 | $6,500.00 | $4,450.00 |
| June 2020 (payment made 7/1/20) | $6,500.00 | $4,450.00 |
| July 2020 | $6,500.00 | $4,450.00 |
| August 2020 (payment made 9/4/2020) | $6,500.00 | $4,450.00 |
| September 2020 | $15,000.00 | $12,950.00 |
| October 2020 (payment made 9/29/2020) | $6,500.00 | $4,450.00 |
| November 2020 | $6,500.00 | $4,450.00 |
| December 2020 | $6,500.00 | $4,450.00 |
| January 2021 | $6,500.00 | $4,450.00 |
| February 2021 (payment made 1/28/2021) | $6,500.00 | $4,450.00 |
| March 2021 | $6,500.00 | $4,450.00 |
| April 2021 | $6,500.00 | $4,450.00 |
| May 2021 | $6,500.00 | $4,450.00 |
| June 2021 | $6,500.00 | $4,450.00 |
| **TOTAL** | **$308,389.62** | **$224,339.62** |

184.    As computed above, the Debtor made at least $308,389.62 in payments to Finland Leasing from August 2017 through June 2021 (the "Total Finland Leasing Payments"), thereby overpaying its rent obligations by at least $224,339.62 (the "Finland Lease Overpayments").

185.    The 2300 Trumbauersville Lease provides that "[i]n the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges."

186.    Despite this unambiguous language, the Debtor made various payments for utilities and services ostensibly provided to the leased premises not to Finland Leasing, but instead to Defendant ETP.

187.    The unjustified and extracontractual payments made by the Debtor to ETP were ostensibly for not only utilities, but also a variety of clearly frivolous and non-Debtor charges, including dental insurance for Defendant Casey Parzych's uncle Larry Parzych and satellite radio for Defendant Casey Parzych.

188.    The Debtor made at least $355,778.05 in unjustified and extracontractual payments to ETP (the "ETP Payments") as follows:

| Date | Payment Total |
|---|---|
| May 2016 | $36,374.15 |
| December 2016 | $10,678.08 |
| January 2017 | $6,183.78 |
| March 2017 | $1,477.51 |
| May 2017 | $6,670.48 |
| June 2017 | $2,458.54 |
| July 2017 | $4,773.87 |
| August 2017 | $8,656.02 |
| September 2017 | $8,755.82 |
| November 2017 | $19,082.53 |
| January 2018 | $11,963.53 |
| March 2018 | $12,934.44 |
| April 2018 | $8,723.14 |
| June 2018 | $4,830.00 |
| August 2018 | $3,196.08 |
| September 2018 | $3,372.50 |
| October 2018 | $20,837.51 |
| December 2018 | $1,553.89 |
| February 2019 | $5,853.24 |
| May 2019 | $13,819.34 |
| July 2019 | $7,129.61 |
| August 2019 | $4,423.87 |
| September 2019 | $7,525.59 |
| October 2019 | $1,381.90 |
| December 2019 | $3,996.04 |
| May 2020 | $37,163.97 |
| July 2020 | $16,298.72 |
| August 2020 | $7,809.00 |
| September 2020 | $8,026.80 |
| October 2020 | $6,098.95 |
| November 2020 | $926.24 |
| December 2020 | $3,922.76 |

54

| January 2021 | $4,211.33 |
| February 2021 | $4,630.77 |
| March 2021 | $4,478.25 |
| May 2021 | $21,562.40 |
| June 2021 | $5,998.62 |
| August 2021 | $10,191.00 |
| September 2021 | $7,807.78 |
| **TOTAL** | **$355,778.05** |

### The Chapter 7 Case

189.    On August 25, 2021, the United States Trustee filed a Motion Pursuant to 11 U.S.C.

§ 1112 to Dismiss the Case or Convert to Chapter 7 (the "Conversion Motion").  In support of the

Conversion Motion, the United States Trustee averred, *inter alia*:

        a.      "[P]rior to the petition date the Debtor caused to be made transfers of

substantial value";

        b.      "The Debtor has failed to timely file its financial operating reports since the

petition date.  The UST, creditors, and parties in interest are unable to examine the Debtor's post-

petition operations and determine whether the Debtor has otherwise complied with its fiduciary

obligations.  Further, the failure to comply with this duty makes it impossible to determine the

administrative expenses of the estate since this case was filed."; and

        c.      "The Debtor has failed to file the Notice of Officer Compensation as

required by LBR 4002-1 disclosing any payments made since the filing date or contemplated being

made to the Debtor's officers."

190.    On October 13, 2021 (the "Conversion Date"), the Bankruptcy Court entered an

Order converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code

and, on October 14, 2021, the Trustee was appointed as the permanent Chapter 7 Trustee of the

Estate.

191.    Since her appointment, the Trustee has undertaken an investigation of the Debtor's affairs.

192.    The Defendants have actively obstructed the Trustee's investigation.

193.    As discussed herein, Defendants intentionally destroyed or stole the Debtor's emails and electronic files.

194.    The night before Millstone was set to take over the Debtor, documents stored in a safe located at 118 North Main were removed.  A forensic analysis of the Debtor's Wi-Fi system disclosed that a device named "Casey's Phone" logged into the Debtor's network at a time contemporaneous with the removal.

195.    Defendants Casey Parzych, Rittenburg, Baldwin, Festa, Culbertson, Uszenski, Best Bev, LLC, Can Man, EtOH Worldwide, LLC and AgTech VI have failed to cooperate with requests for information issued pursuant to Bankr. E.D.Pa. Local Rule 2004-1.

196.    Defendants instructed former debtor employees to sign non-disclosure agreements to conceal information relating to the operation of the Debtor's business.

197.    Former Debtor employees who did not cooperate with Defendants were harassed and intimidated.  By way of example, a chocolate phallus was sent to the family home of a former Debtor employee who chose to work for Millstone rather than join Defendants at the Best Bev Entities.

198.    On March 7, 2022, Millstone filed a proof of claim which confirms many of the foregoing allegations and establishes that the Defendants' wrongdoing caused substantial harm to the Estate by incurring debts and making expenditures on behalf of the Pilfering Entities, transferring the Debtor's equipment to the Pilfering Entities, and ultimately diminishing the value of the Debtor in the eyes of potential Rule 363 purchasers.

## V.    CLAIMS

### FIRST CLAIM – BREACH OF FIDCUIARY DUTY
#### (Against the Insider Defendants)

199.    The allegations set forth above are incorporated herein by reference as if set forth at length.

200.    The Insider Defendants, as officers (Defendants Casey Parzych, Rittenburg, Festa, and Culbertson), members (Defendants Parzych, Rittenburg, and Culbertson), employees/agents (all Insider Defendants), and/or legal counsel (Defendant Boyer) to the Debtor, owed fiduciary duties of care, loyalty, and good faith to the Debtor.

201.    The duty of loyalty obligated the Insider Defendants to commit themselves to the business of the Debtor for the purpose of promoting the interests of the Debtor and not themselves or their other affiliated entities.

202.    The duty of loyalty is breached, *inter alia*: (a) when a fiduciary fails to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities; (b) when a fiduciary "abdicates" their fiduciary responsibilities; (c) when a fiduciary acts in bad faith; and/or (d) when a fiduciary engages in self-dealing.

203.    The duty of care is breached, *inter alia*: (a) when a fiduciary engages in an irrational decision-making process; and (b) when the conduct of a fiduciary rises to the level of gross negligence.

204.    The Insider Defendants breached their fiduciary duties to the Debtor by, among other things:

a.    Making, or allowing to be made, significant unauthorized or improper transfers;

b.    Causing the Debtor to enter into transactions with affiliates and family

57

79

members of its managers and members without proper authorization;

          c.      Engaging in numerous acts of self-dealing and theft for the benefit of the Pilfering Entities;

          d.      Causing or allowing the Debtor's funds to be commingled with the funds of other persons or entities;

          e.      Using or allowing to be used the Debtor's funds for the use of the Pilfering Entities or the personal use of Defendants Casey Parzych and Rittenburg;

          f.      Failing to maintain and preserve the Debtor's assets and records, including, among other things, intentionally destroying or stealing Debtor emails and electronic records;

          g.      Failing to ensure that adequate internal controls and reporting systems were in place and property utilized to mitigate against the misappropriation of Debtor funds and resources;

          h.      Failing to maintain an adequate accounting system;

          i.      Failing to hold regular meetings of the Board of Managers;

          j.      Failing to conduct or maintain written records of meetings, votes, resolutions, or written consents;

          k.      Failing to keep, or cause to be kept, accurate, complete, and proper books, records, and accounts pertaining to Debtor's affairs;

          l.      Conspiring to attempt to sell Debtor or its assets to the Sheehan Entities at a fraction of its true value, and in so doing sabotaging offers from other interested purchasers;

          m.      Grossly mismanaging Debtor's Chapter 11 Case, including allowing representatives of the Sheehan Entities to manage the bankruptcy process to the detriment of the Debtor and its estate;

58

n.    Destroying Debtor's attorney-client privilege by including the Wynk Entities and Sheehan Entities in numerous communications;

o.    Causing the Debtor to operate in an illegal fashion in violation of tax laws and other regulatory obligations;

p.    Conspiring with the Sheehan Entities, Finland Leasing, and Gary Parzych to chill bidding at the Debtor's Section 363 sale; and

q.    Engaging in other acts of fraud, gross negligence, or other material breaches of their fiduciary duties as set forth herein.

205.    At all times relevant hereto, the Insider Defendants engaged in self-dealing, prioritizing their own interests and the interests of their affiliates over the interests of the Debtor.

206.    The Insider Defendants and their affiliates received millions of dollars for their roles in facilitating and implementing the breaches of fiduciary duty, and they should be required to disgorge and repay those ill-gotten gains.

207.    The conduct of the Insider Defendants, as aforesaid, was intentional, reckless, and sufficiently outrageous as to justify the imposition of punitive damages.

208.    As a result of the many breaches of fiduciary duties by the Insider Defendants as set forth herein, the Debtor has suffered damages in an amount to be determined at trial, but which exceeds the sum of $10 million.

## SECOND CLAIM – AIDING & ABETTING BREACH OF FIDCUIARY DUTY
### (Against All Defendants)

209.    The allegations set forth above are incorporated herein by reference as if set forth at length.

210.    As set forth in detail in this Complaint, at all times relevant hereto, the Insider Defendants owed the Debtor fiduciary duties of care, loyalty, and good faith and repeatedly

breached these duties.

211.    Each of the Defendants aided and abetted these breaches of fiduciary duty.

212.    Each of the Defendants had knowledge that the Insider Defendants' conduct was a breach of their fiduciary duties owed to the Debtor.

213.    Each of the Defendants substantially assisted and/or encouraged the Insider Defendants to breach their fiduciary duties owed to the Debtor.

214.    To the extent that any Insider Defendant might be found not to have  had a fiduciary duty to the Debtor at the time of the misconduct complained of herein, each such Insider Defendant is nevertheless liable for having aided and abetted the breach of fiduciary duties by one or more of the other Insider Defendants possessing such duties at the relevant times.

215.    The entity Defendants' substantial assistance and/or encouragement is demonstrated by, *inter alia*, their role as the entities through which the individual Defendants siphoned money away from the Debtor, and the improper benefits they received because of that misconduct.

216.    Defendants received millions of dollars for their roles in aiding and abetting the breaches of fiduciary duty, and they should be required to disgorge and repay those ill-gotten gains.

217.    The conduct of the Defendants, as aforesaid, was intentional, reckless, in bad faith, and sufficiently outrageous as to justify the imposition of punitive damages.

218.    As a result of each Defendant's aiding and abetting of the breaches of fiduciary duty by the Fiduciary Defendants as set forth herein, the Debtor has suffered damages in an amount to be determined at trial, but which exceeds the sum of $10 million.

## THIRD CLAIM – CORPORATE WASTE
### (Against the Insider Defendants)

219.    The allegations set forth above are incorporated herein by reference as if set forth

at length.

220.    The funds generated by the Pilfering Entities' use of the Debtor's assets constituted

valuable assets of the Debtor which, if properly handled and collected by the Debtor, would have

generated significant revenue and profits for the Debtor.

221.    By using the Pilfering Entities to funnel revenues and profits away from the Debtor

and its creditors and to the Defendants, the Insider Defendants deprived the Debtor of millions of

dollars.

222.    The Insider Defendants' waste of the Debtor's assets was commercially

unreasonable and served no rational business purpose.

223.    As a result of the waste of Debtor's assets, the Insider Defendants are liable for the

damages associated with their misconduct.

### FOURTH CLAIM – DECLARATORY RELIEF
### (ALTER EGO, PIERCING THE CORPORATE VEIL
### AND/OR SUCCESSOR LIABILITY)
### (Against All Defendants)

224.    The allegations set forth above are incorporated herein by reference as if set forth

at length.

225.    As set forth in detail in this Complaint, the corporate form should be disregarded

as between the Pilfering Entities and the individual Defendants, on the one hand, and the Debtor,

on the other, because Defendants ignored the corporate boundaries of the Debtor in favor of their

own interests and over the interests of the Debtor and its creditors, as part of a scheme to enrich

themselves at the expense of the Debtor and its creditors.

226.    Defendants exercised control over the Debtor to such a degree that the Debtor

operated as nothing more than their alter ego, tool, and business conduit.

227.    Defendants dominated the Debtor inequitably and to the detriment of the Debtor

61

and its creditors by, among other actions, preventing the Debtor from paying its legitimate debts while siphoning company funds for the benefit of the Pilfering Entities and their principals, the individual Defendants.

228.    Defendants operated the Pilfering Entities as if they were the alter ego and mere continuation of the Debtor, with Debtor management and employees making all decisions for and conducting the daily operation of the Pilfering Entities utilizing the physical plant and equipment of the Debtor.

229.    The Pilfering Entities utilized the same employees, telephone number and address as the Debtor.

230.    Any intercompany transactions between the Debtor and the Pilfering Entities were not at arm's length, were not properly documented, and operated to the severe disadvantage of the Debtor.

231.    Defendants intentionally failed to keep adequate books and records rendering it impossible to disentangle the affairs of the Debtor from those of the Pilfering Entities.

232.    Due to Defendant's blatant disregard of corporate formalities and Defendants' explicit statements as set forth herein, Debtor's employees, vendors, and customers understood Debtor and the Pilfering Entities to be one and the same, and injustice would result if the assets of the Pilfering Entities and the other Defendants were not available to satisfy the claims of Debtor's non-insider creditors.

233.    The Pilfering Entities were simply a façade for the individual Defendants and utilized for the sole purpose of siphoning funds and resources from the Debtor.

234.    The Pilfering Entities constitute a mere continuation of the Debtor and are thus liable for the Debtor's debts as the Debtor's successor.

235.    Accordingly, the interests of justice demand the entry of a judgment piercing the corporate veils, declaring that the Pilfering Entities and the individual Defendants are each the alter egos of the Debtor and holding them jointly and severally liable for all liabilities of the Debtor's Estate.

## FIFTH CLAIM – UNJUST ENRICHMENT
### (Against All Defendants)

236.    The allegations set forth above are incorporated herein by reference as if set forth at length.

237.    As set forth in detail in this Complaint, each of the Defendants was enriched and received economic and other benefits from the Debtor without justification, including, but not limited to, the following:

a.      The Pilfering Entities use of the Debtor's facilities, equipment, personnel, inventory, and intellectual property without payment of fair compensation therefor;

b.      The Pilfering Entities receipt of revenue from the sale of CBDelight, Faber Hand Sanitizer, Wynk Seltzer, and other products manufactured by the Debtor or with the use of the Debtor resources;

c.      Finland Leasing and ETP's receipt of extracontractual and unjustified payments from the Debtor (i.e., the Finland Lease Overpayments and the ETP Payments);

d.      Defendant Casey Parzych's and Rittenburg's receipt of the Parzych/Rittenburg Purchases; and

e.      Upon information and belief, each of the Defendants have received monetary payments from the Pilfering Entities which were derived with the benefit of the Debtor's resources.

238.    Defendants have unjustly retained benefits to the detriment of the Debtor's Estate

63

and its creditors.

239.    The Debtor was impoverished because of Defendants' misconduct, which resulted in a massive share of Debtor's assets and profits being siphoned off for the benefit of the Defendants and the Pilfering Entities, with the Estate being left with millions of dollars in unpaid debts.

240.    There is no justification for the Defendants' abuse of the Debtor for the purpose of self-dealing and other misconduct.

241.    Accordingly, the Trustee is entitled to a judgment against each of the Defendants compelling them to disgorge and return the amounts by which they were unjustly enriched.

<b>SIXTH CLAIM – AN ACCOUNTING</b>
<b>(Against All Defendants)</b>

242.    The allegations set forth above are incorporated herein by reference as if set forth at length.

243.    An accounting is an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due to as a result.

244.    As set forth in detail in this Complaint, the Insider Defendants failed to maintain complete and accurate books and records of the benefits conferred by the Debtor on the Pilfering Entities.

245.    Moreover, except for files inadvertently left on a Debtor hard drive, the Insider Defendants either destroyed or stole those Debtor books and records which do exist.

246.    Defendants took extraordinary and illegal steps to cover their tracks, including, for example, Defendant Festa's forgery of vendor invoices to conceal the shipment of goods to the Best Bev Entities and Defendant Casey Parzych's false testimony at a Section 341 meeting.

247.    Upon information and belief, Defendants possess certain books, records, and other

64

electronic data of the Debtor.

248.    The Trustee is entitled to an accounting setting forth the Debtor's transfers to and transactions with the Defendants.

249.    Accordingly, the Trustee seeks the entry of a judgment directing the Defendants to perform a full and accurate accounting of all Debtor resources which were diverted to or for the benefit of the Defendants, as well as revenues received using Debtor resources, and to remit to the Trustee all funds owed to the Estate as a result.

## SEVENTH CLAIM – CONSTRUCTIVE TRUST
### (Against All Defendants)

250.    The allegations set forth above are incorporated herein by reference as if set forth at length.

251.    A constructive trust is an equitable remedy to redress a wrong.  When one party has obtained the property of another that in equity and good conscience it ought not to possess, a constructive trust will be imposed.

252.    As set forth in detail herein, the Pilfering Entities were formed, managed, and financed using the resources of the Debtor, with full knowledge of the Debtor's obligations to its creditors, and with the active participation of the Debtor's fiduciaries.

253.    The Pilfering Entities were directly and materially enriched by virtue of such unfair and unconscionable conduct, at the expense of the Debtor and its creditors.

254.    Accordingly, a constructive trust should be imposed on the assets of the Pilfering Entities for the benefit of the Debtor's bankruptcy estate.

## EIGHTH CLAIM – BREACH OF CONTRACT
**(Against Defendants Casey Parzych and Rittenburg, for Monetary Damages)**
**(Against the Pilfering Entities, for a Declaratory Judgment)**

255.    The allegations set forth above are incorporated herein by reference as if set forth at length.

256.    Section 9.17 of Debtor's Amended and Restated Operating Agreement As Amended and Restated as of April 16, 2019 and Debtor's Amended and Restated Operating Agreement As Amended and Restated as of March 26, 2021 state as follows (the "Assignment" provision):

> 9.17    <u>Assignment</u>.
>
> (a) The term "Work Product" means all patents and patent applications, all inventions, innovations, improvements, packaging improvements, alcohol/spirit/liqueur formulations, packaging inventions and/or improvements, packaging developments, technologies, similar technologies, developments, methods, designs, analyses, drawings, reports, creative works, discoveries, software, computer programs, modifications, enhancements, know-how, product, formula or formulations, marketing and sales information, concepts and ideas, and all similar or related information (in each case whether or not patentable), all copyrights and copyrightable works, all trade secrets, Information, and all other intellectual property and intellectual property rights that (in any case above) are conceived, reduced to practice, created, developed or made by a Member either alone or with others, in the course of providing the services to the Company.
>
> (b) Each Member hereby agrees that (and hereby assigns) all Work Product will be the exclusive property of the Company, and in consideration of this Agreement, without further compensation, hereby assigns, and (as necessary) agrees to assign, to the Company all right, title, and interest to all Work Product that: (i) relates to any and all current and future aspects of the Company's Business (defined as the selling, making, marketing, distributing or otherwise engaging in the liqueur, spirits, carbonated beverage, seltzer, general beverage, or alcoholic beverage business) or (ii) is conceived, created, reduced to practice, developed, or made entirely or in any part: (a) during the time any Member performs (or performed) services for the Company; or (b) using any equipment,

66

supplies, facilities, assets, materials, information (including, without limitation, Information) or resources of the Company (including, without limitation, any intellectual property rights of the Company);

(c) If for any reason the foregoing assignment is determined to be unenforceable, each Member grants to the Company a perpetual irrevocable, worldwide, royalty-free, exclusive, sub-licensable right and license to exploit and exercise all such Work Product; and

(d) Each Member shall promptly disclose Work Product to the CEO of the Company and perform all actions reasonably requested by the Company (whether during or after the service with the Company) to establish and confirm the ownership and proprietary interest of the Company in any Work Product (including, without limitation, the execution of assignments, consents, powers of attorney, applications and other instruments). Each Member agrees to assist the Company in obtaining any patent for, copyright on or other intellectual-property protection for the Work Product, and to execute and deliver or otherwise provide such documentation and provide such other assistance as is necessary to or reasonably requested by the Company or its agents or counsel to obtain such patent, copyright, or other protection. Each Member shall maintain adequate written records of the Work Product, in such format as may be specified by the Company, and make such records available to, as the sole property of, the Company at all times. Each Member shall not file any patent or copyright applications related to any Work Product except with the written consent of the Company's CEO.

257.    Defendants Casey Parzych and Rittenburg are "Members" of the Debtor as that term is defined in each pertinent document, and were bound by Debtor's operating agreement which contains the Assignment Provision.

258.    As set forth in detail above, Defendants Casey Parzych and Rittenburg generated Work Product for the benefit of the Pilfering Entities that: 1) related to the Debtor's Business (i.e., selling, making, marketing, distributing or otherwise engaging in the liqueur, spirits, carbonated beverage, seltzer, general beverage, or alcoholic beverage business); 2) was conceived, created, reduced to practice, developed, or made entirely or in any part during the time Parzych and

Rittenburg were performing services for the Debtor; and 3) was conceived, created, reduced to practice, developed, or made entirely or in any part using the equipment, supplies, facilities, assets, materials, information and resources of the Debtor.

259. Defendants Casey Parzych and Rittenburg have not disclosed or assigned Work Product to the Debtor, in breach of the Assignment Provision.

260. The Pilfering Entities, with knowledge of the Assignment Provision, possess Work Product which was generated entirely or partially by Defendants Casey Parzych and Rittenburg, including, but not limited to, the Work Product associated with the following:

    a. The Wynk Seltzer and CBDelight products;

    b. The Best Bev Entities' branding and brands;

    c. United States Design Patent Nos. US D918,708 S, US D931,672 S;

    d. United States Patent Application Publication No. US 2022/0264947 and Patent Cooperation Treaty Application No. PCT/US2020/043055;

    e. United States Patent Application Publication No. US 2022/0232859 and Patent Cooperation Treaty Application No. PCT/US2020/043034;

    f. Unites States Patent Application No. 63/174,233 and Patent Cooperation Treaty Application No. PCT/US2022/024394;

    g. United States Patent Application No. 62/979,200 and Patent Cooperation Treaty Application No. PCT/US2021/018509;

    h. United States Patent Application No. 62/903,260 and Patent Cooperation Treaty Application No. PCT/US2020/051783;

    i. United States Patent Application No. 62/847,019 and Patent Cooperation Treaty Application No. PCT/US2020/032590;

    j. United States Patent Application No. 62/979,233 and Patent Cooperation Treaty Application No. PCT/US2021/018532;

    k. United States Patent Application No. 62/847,023 and Patent

Cooperation Treaty Application No. PCT/US2020/032593;

l.   United States Patent Application No. 62/903,293 and Patent Cooperation Treaty Application No. PCT/US2020/051803; and

m.   United States Trademark Serial Nos. 97263015, 90889744, 90674624, 97883067, 97174708, 97184527, 97184492, 97600495, 97600483, 88639939, 88840793, 88389825, 88421795, 88389949.

261.   Defendants Casey Parzych's and Rittenburg's failure to comply with the terms of the Assignment Provision have caused damages to the Debtor.

262.   Accordingly, the Trustee seeks entry of a judgment against Defendants Casey Parzych and Rittenburg for damages caused to the Debtor arising out of the breach of the Assignment Provision, or Defendants' wrongful use of Debtor property.

263.   The Trustee also seeks entry of a declaratory judgment against the Pilfering Entities assigning back to the Debtor all Work Product in the possession or control of the Pilfering Entities.

**NINTH CLAIM – BREACH OF CONTRACT**
**(Against Defendant Finland Leasing)**

264.   The allegations set forth above are incorporated herein by reference as if set forth at length.

265.   As set forth in detail *supra*, the Finland Lease Overpayments and ETP Payments were made in violation of the terms of the Finland Lease.

266.   Accordingly, judgment should be entered in favor of the Trustee and against Finland Leasing for the full amount of the Finland Lease Overpayments and ETP Payments.

**TENTH CLAIM – EQUITABLE SUBORDINATION**
**(Against All Defendants)**

267.   The allegations above are incorporated herein by reference as if set forth at length.

268.   Defendants have engaged in inequitable conduct which has resulted in injury to Debtor's creditors and conferred unfair advantages on Defendants and, as such, equitable

69

subordination of any/all claims of the Defendants would not be inconsistent with the provisions of the bankruptcy code.

269.    As a result of the wrongdoing of the Defendants, as aforesaid, any/all claims of the Defendants – including claims heretofore or hereinafter filed – against the Debtor should be equitably subordinated below the rights of all other creditors and innocent members of the Debtor, pursuant to 11 U.S.C. § 510(c).

## ELEVENTH CLAIM – TURNOVER
### Pursuant to 11 U.S.C. § 542
### (Against all Defendants)

270.    The allegations set forth above are incorporated herein by reference as if set forth at length.

271.    The following items in the possession of the Defendants are property of the Debtor's estate which the Trustee may use in her administration of this bankruptcy case, and have significant informational and/or monetary value to the estate:

a.    Debtor's electronic records, email, and other records which relate to the Debtor's property and financial affairs which, as discussed in detail above, were ostensibly deleted by Defendant Festa but which, upon information and belief, were instead transferred to and remain in the possession of Defendants;

b.    All Debtor emails and other documents which are being stored on or are otherwise in the possession of the Defendants;

c.    The extracontractual Finland Lease Overpayments and ETP Payments;

d.    The intellectual property and Work Product discussed in Claim Eight, *supra*; and

e.    All property otherwise set forth above which belonged to the Debtor but

70

was improperly transferred to the Pilfering Entities.

272.    Pursuant to 11 U.S.C. § 542, the above listed items should be immediately turned over to the estate.

### TWELFTH  CLAIM – AVOIDANCE AND RECOVERY OF POSTPETITION TRANSFERS
### Pursuant to 11 U.S.C. §§ 549 and 550
### (Against the Best Bev Defendants)

273.    The allegations set forth above are incorporated herein by reference as if set forth at length.

274.    Defendants caused the Debtor to make the Post Petition Best Bev Transfers after commencement of the Debtor's bankruptcy case and without authorization by the Court or under the Bankruptcy Code.

275.    The Post Petition Best Bev Transfers are thus avoidable by the Trustee pursuant to 11 U.S.C. § 549 and their value recoverable by the Trustee pursuant to 11 U.S.C. § 550.

### THIRTEENTH CLAIM – AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS
### Pursuant to 11 U.S.C. §§ 547(b) and 550
### (Against Defendants Finland Leasing, ETP, and Boyer)

276.    The allegations set forth above are incorporated herein by reference as if set forth at length.

277.    As further set forth herein, Defendants Finland Leasing, ETP, and Boyer are insiders of the Debtor by virtue of their close relationships with the Debtor and the fact that their dealings with the Debtor were not at arm's length.

278.    The Total Finland Leasing Payments and the ETP Payments were transfers of property, or of an interest in property, of the Debtor to and/or for the benefit of Finland Leasing and ETP.

279.    Some of the Total Finland Leasing Payments and the ETP Payments were made within one year of the Petition Date, as previously set forth.

280.    The Total Finland Leasing Payments and the ETP Payments made within the one-year preference period were made at a time while the Debtor was insolvent.

281.    The Total Finland Leasing Payments and the ETP Payments allowed Finland Leasing and ETP to receive more than they would have received if the payments had not been made and they received payment of those debts to the extent provided by filing a claim in this proceeding.

282.    As discussed in detail *supra*, the Debtor was contractually obligated to pay Finland Leasing $2,050.00 per month in rent.  Accordingly, $2,050.00 of each month's Total Finland Leasing Payments within the year preceding the Petition Date were made on account of antecedent debt owed by the Debtor to Finland Leasing pursuant to the Finland Lease and constitute avoidable preferential transfers pursuant to Section 547 of the Bankruptcy Code.

283.    While the Trustee alleges that there is no contractual basis for any payment in excess of $2,050.00 per month to Finland Leasing (and thus that those amounts must be returned to the Debtor as damages for a breach of contract or unjust enrichment, or as a matter of statutory turnover), to the extent that the Court finds that any of the Finland Lease Overpayments made during the one year preference period were valid antecedent debts, then those payments were preferential as well.

284.    While the Trustee alleges that there is no valid contractual basis for any of the ETP Payments (and thus that those amounts must be returned to the Debtor as a matter of damages for unjust enrichment, or as a matter of statutory turnover), to the extent that the Court finds that any of the ETP Payments made during the one-year preference period were valid antecedent debts,

then those payments were preferential as well.

285.    On March 19, 2021, Defendant Boyer received a $75,000.00 wire transfer from the Debtor (the "Boyer Payment").  Upon information and belief, the Boyer Payment was on account of an antecedent debt for legal services ostensibly provided for the Debtor.

286.    The Trustee and her professionals have conducted reasonable due diligence into potential affirmative defenses and have concluded that those defenses are without merit given the nature of and circumstances surrounding the portion of the Total Finland Leasing Payments, the ETP Payments, and the Boyer Payment discussed in this Claim, including, but not limited to, the fact that the Debtor received no contemporaneous value in exchange for the payments and the payments were not made according to ordinary business terms, but instead to enrich insiders of the Debtor.

287.    Accordingly, the Boyer Payment as well as that portion of the Total Finland Leasing Payments and the ETP Payments subject to the aforementioned conditions are avoidable by the Trustee pursuant to 11 U.S.C. § 547 and their value recoverable by the Trustee pursuant to 11 U.S.C. § 550.

**FOURTEENTH CLAIM – AVOIDANCE AND
RECOVERY OF FRAUDULENT TRANSFERS
Pursuant to 11 U.S.C. §§ 548 and 550
(Against Defendants Finland Leasing and ETP)**

288.    The allegations set forth above are incorporated herein by reference as if set forth at length.

289.    The Finland Lease Overpayments and ETP Payments were transfers of property, or of an interest in property, of the Debtor to and/or for the benefit of Defendants Finland Leasing and ETP.

73

290. The Debtor made the contractually unjustified Finland Lease Overpayments and ETP Payments with the actual intent to hinder, delay and/or defraud the Debtor's creditors.

291. Accordingly, to the extent they were made within two years of the Petition Date, the Finland Lease Overpayments and ETP Payments constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A).

292. Due to the Defendants' misconduct as detailed herein, the Debtor was insolvent in the two years prior to the Petition Date.

293. The Debtor did not receive reasonably equivalent value for the Finland Lease Overpayments and the ETP Payments.

294. Accordingly, to the extent they were made within two years of the Petition Date, the Finland Lease Overpayments and ETP Payments constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff Bonnie Finkel, Chapter 7 Trustee for the estate of Midnight Madness Distilling LLC, demands judgment in her favor and against Defendants, jointly and severally, for:

(a) Compensatory damages in excess of $10 million;

(b) Punitive damages in an amount to be determined by the jury;

(c) Avoidance and recovery of fraudulent, preferential, and unauthorized post-petition transfers as set forth herein;

(d) the return of estate property as set forth herein;

(e) Equitable subordination of any and all claims of any Defendant against the Debtor below the rights of all other creditors of the Debtor;

74

(f)  A constructive trust on the assets of the Pilfering Entities for the benefit of the Debtor's bankruptcy estate;

(g) The entry of declaratory judgments as set forth above;

(h)  Pre-Judgment and Post-Judgment Interest, reasonable attorneys' fees, and costs; and

(i)  Such additional relief as this Court deems just.

## VII.    <u>JURY DEMAND</u>

The Trustee demands a jury trial before an Article III Judge on all claims asserted in this Complaint that are triable to a jury under the Constitution and applicable law.

Dated: June 15, 2023                     /s/ Steven M. Coren
                                         STEVEN M. COREN
                                         ANDREW J. BELLI
                                         **COREN & RESS, P.C.**
                                         Two Commerce Square, Suite 3900
                                         2001 Market Street
                                         Philadelphia, PA 19103
                                         Tel: (215) 735-8700
                                         Fax: (215) 735-5170
                                         scoren@kcr-law.com

                                         *Counsel for Plaintiff*
                                         *Bonnie Finkel, Chapter 7 Trustee*

**EXHIBIT 2**

**Email Exchange Between Trustee's Counsel and Counsel for Moving Defendants**

## Packman, Stephen M.

| | |
|---|---|
| **From:** | Steven Coren <SCoren@kcr-law.com> |
| **Sent:** | Thursday, August 10, 2023 5:41 PM |
| **To:** | Jeffrey Kurtzman |
| **Cc:** | Packman, Stephen M.; Andrew Belli |
| **Subject:** | [EXT MAIL] RE: Finkel v. Parzych, et al. |

Jeff:

We have considered the venue issue and wish to keep the matter in the bankruptcy court until it is ready for a jury trial, which of course will take place in the District Court.

Regards,

STEVEN

STEVEN M. COREN
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA  19103
Office: (215) 735-8700
Cell: (215) 498-8700
E-mail: scoren@kcr-law.com
Website: www.kcr-law.com

COREN|RESS
ATTORNEYS AT LAW

---

**From:** Jeffrey Kurtzman <kurtzman@kurtzmansteady.com>
**Sent:** Thursday, August 10, 2023 11:17 AM
**To:** Steven Coren <SCoren@kcr-law.com>
**Cc:** Packman, Stephen (spackman@archerlaw.com) <spackman@archerlaw.com>
**Subject:** Finkel v. Parzych, et al.

---

**EXTERNAL EMAIL.**

Steve, it was nice to speak with you this morning.  As related, my firm represents Gary Parzych, Ryan Uszenski, Can Man, LLC, Finland Leasing Co., Inc. and Eugene T. Parzuych, Inc. in the above-referenced adversary proceeding.

In reviewing the complaint, I note that, while the plaintiff alleges that the bankruptcy court has jurisdiction over the adversary proceeding, she demands a jury trial and does not consent to the entry of a final judgment by that court.  For this and other reasons, I suggested that efficiency may be served by transferring the case to the district court.  I have not discussed this issue with Steve Packman, who is copied here.

Secondly, I requested an extension of my clients' deadline to answer or move with respect to the complaint to September 15, as to which you graciously agreed.

If you and your partner wish to discuss the venue issue, please let Steve and me know.  Thanks.

1

Jeffrey Kurtzman, Esquire
KURTZMAN | STEADY, LLC
555 City Avenue | Suite 480 | Bala Cynwyd, PA 19004
Main: (215) 883-1600 | Direct: (215) 839-1222 | Mobile: (215) 715-2814
kurtzman@kurtzmansteady.com

101 N. Washington Avenue | Suite 4A | Margate, NJ 08402
Main: (856) 428-1060 | Fax: (609) 482-8011

2 Kings Highway West | Suite 102 | Haddonfield, NJ 08033
Main:  (856) 428-1060 | Fax: (609) 482-8011

---

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Miscellaneous Matter No._____

| | |
|---|---|
| **In re:**<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>        **Debtor.** | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>        **Plaintiff,**<br><br>        **v.**<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>        **Defendants.** | **Adv. No. 23-00047-MDC**<br><br><br>**JURY TRIAL DEMANDED** |

### ORDER

AND NOW, this _____ day of September, 2023, upon consideration of the Motion of Moving Defendants for Withdrawal of the Reference, it is hereby ORDERED that the Motion is GRANTED and that:

1.  Reference is withdrawn in connection with the above Adversary Proceeding; and

2.   All matters in said Adversary Proceeding shall be transferred to the United States District Court for the Eastern District of Pennsylvania, to be set down for trial as a civil action in the ordinary course.

BY THE COURT:

_____

J.

227695611 v1

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Miscellaneous Matter No._____

| | |
|---|---|
| **In re:**<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>Debtor. | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>Defendants. | **Adv. No. 23-00047-MDC**<br><br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2023, he caused a true and correct copy of the foregoing Motion for withdrawal of the reference, upon Plaintiff's counsel and the Office of the United States Trustee, via email and overnight courier, and upon all parties in the bankruptcy case via the Court's CM/ECF electronic filing system.

227695611 v1

Dated: September 5, 2023

/s/ Mariam Khoudari
STEPHEN M. PACKMAN
MARIAM KHOUDARI
**ARCHER & GREINER, P.C.**
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
Tel: (215) 963-3300
Fax: (215) 963-9999
spackman@archerlaw.com
mkhoudari@archerlaw.com

*Counsel for Moving Defendants*

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>Debtor.<br>_____<br><br>**BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>Defendants. | **CHAPTER 7**<br>**Case No. 21-11750-MDC**<br><br><br>**Adv. No. 23-00047-MDC**<br><br><br>**JURY TRIAL DEMANDED** |

### EMERGENCY MOTION OF MOVING DEFENDANTS FOR AN
### ORDER TO STAY PROCEEDINGS AND/OR FOR OTHER RELATED RELIEF

### PROCEDURAL HISTORY AND PARTIES

Plaintiff, Bonnie B. Finkel **(the "Trustee" or "Plaintiff")**, is the Chapter 7 Trustee for

the debtor, Midnight Madness Distilling LLC f/k/a Theobald and Oppenheimer, LLC d/b/a

Faber Distilling **(the "Debtor")**. Plaintiff filed an adversary proceeding **(the "Complaint")**

against Defendants on June 15, 2023. On September 5, 2023, moving defendants herein

**("Moving Defendants")** submitted a Motion with the United States Bankruptcy Court for the

Eastern District of Pennsylvania **("Bankruptcy Court")** requesting that the District Court

withdraw its reference with respect to the Complaint **(the "Withdrawal Motion")**. The

Withdrawal Motion is attached hereto as Exhibit 1. The Plaintiff has, to date, granted all

defendants until September 15, 2023 to respond to the Complaint.  Moving Defendants are

Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly Festa; Ashleigh Baldwin; Michael

Boyer; R.F. Culbertson; Polebridge, LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI,

LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; Etoh Worldwide, LLC; and

Canvas 340, LLC.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §

1334, since the litigation arises under Title 11 of the United States Code **(the "Bankruptcy**

**Code")**, or in or related to cases under the Bankruptcy Code.  In the Complaint, the Plaintiff has

demanded a jury trial before an Article III judge in connection with all claims asserted that are

triable to a jury under the Constitution and applicable law.  The Plaintiff has not consented to

entry of final judgment or adjudication by this Honorable Court.  Venue is appropriate in this

District pursuant to 28 U.S.C. § 1409(a).

## ARGUMENT IN SUPPORT OF REQUEST FOR RELIEF

Moving Defendants respectfully request that this Court stay the proceedings on the

Complaint until such time as the District Court determines the Withdrawal Motion. Rule 65 of

the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7065 of

the Bankruptcy Rules, "applies in adversary proceedings, except that a temporary restraining

2

order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)." *See In re D'Angelo,* <u>475 B.R. 424</u> *(Bankr. E.D. Pa. 2012),* aff'd, <u>491 B.R. 395</u> (E.D. Pa. 2013).

In order to obtain section 105(a) injunctive relief, the movant, in accordance with Bankruptcy Rule 7065 and <u>Fed.R.Civ.P. 65,</u> has the burden of demonstrating to the court the following: substantial likelihood of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the nonmovant, and injunctive relief would not violate public interest. *In re Wedgewood Realty Grp., Ltd.,* <u>878 F.2d 693, 701-702</u> (3d Cir. 1989).

The district court has broad discretion to decide whether a stay is appropriate to "promote economy of time and effort for itself, for counsel, and for litigants." *Filtrol Corp. v. Kelleher,* <u>467 F.2d 242, 244</u> (9th Cir. 1972) (quotations and citations omitted); *Mediterranean Enterprises, Inc. v. Ssangyong Corp.,* <u>708 F.2d 1458, 1465</u> (9th Cir. 1983) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."). "A United States district court has broad power to stay proceedings," and "[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N.A., AFL-CIO,* <u>544 F.2d 1207, 1215</u> (3d Cir. 1976).

"In determining whether to stay an action under its inherent authority, a court must weigh the competing interests of and possible harms to the parties." *Stokes v. Real Page, Inc.,* No. 15-1520, <u>2016 WL 9711699</u> at *1 n.1 (E.D. Pa. Jan. 25, 2016) (quotation marks omitted). "In making our determination, we weigh the following factors: whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or

inequity if forced to proceed, and whether granting the stay would further the interest of judicial economy." *Id.* (quotation marks omitted). Courts also consider whether "discovery is complete and/or a trial date has been set." *Akishev v. Kapustin,* 23 F. Supp. 3d 440, 446 (D.N.J. 2014).

The Bankruptcy Court granted a motion for stay of the complaint pending the district court's ruling on the withdrawal because the defendant would suffer harm in the form of duplicative costs of litigating in the court and in New York. *In re Eagle Enterprises,* Inc., 259 B.R. 83, 88 (Bankr. E.D. Pa. 2001). "On the other hand, the Plaintiffs would sustain minimal harm if the Complaint were stayed . . . No pretrial scheduling has yet occurred and the parties have not mentioned whether any discovery has commenced. Regardless, any such potential harm is seemingly greatly outweighed by the attendant benefits to the parties, as well as a consideration of the public interest, judicial economy and uniformity." *Id.* at 88-89.

The Withdrawal Motion before the District Court, if granted, would of course lodge the Complaint in the District Court for adjudication moving forward. Moving Defendants believe there is a strong likelihood they will prevail on the merits of the Withdrawal Motion. The subject "Adversary Proceeding" is in its infancy and raises substantially more non-core issues than bankruptcy issues. A jury trial has been requested by Plaintiff, who has not consented to this Court conducting such trial. Further, the Complaint sets forth 56 pages of alleged facts against twenty-one defendants. If the Complaint is not dismissed, discovery could be lengthy, complex and adversarial. These factors, among others set forth in the Withdrawal Motion, weigh in favor of the District Court withdrawing the reference as to the Complaint.

The granting of a stay will not prejudice Plaintiff as the case will proceed in District Court, should the Withdrawal Motion be granted, or here, but there is no immediate or compelling reason for it to proceed here until the District Court decides the Withdrawal Motion.

227696056 v1

Conversely, there will be real and irreversible harm in the form of prejudice to the Moving

Defendants as they will be forced, absent a consensual or ordered extension of time, to prepare

and file a lengthy motion to dismiss the Complaint on or before September 15, 2023. This will

then start the clock running on Plaintiff's response date and so on which might be otherwise

avoided if the matter is stayed pending the District Court's ruling

Finally, Moving Defendants submit that public policy favors this Court granting a stay.

Judicial economy warrants a stay of this proceeding pending the District Court determining

which court will litigate the matter. Otherwise, the parties will spend substantial time and

expense on matters which this Court may not even be called upon to ever consider.

## ADDITIONAL AND/OR ALTERNATIVE RELIEF REQUESTED

In addition to, or in lieu of, granting a stay of proceedings, Moving Defendants request

that the Court allow Moving Defendants an extension of time to answer or otherwise move or

respond to the Complaint. Moving Defendants request entry of an Order of this Court, granting

them 30 days from the date when the District Court enters its order ruling on the Withdrawal

Motion, to respond to the Complaint if the Withdrawal Motion is denied.


Dated: September 5, 2023            */s/ Mariam Khoudari*
                                    STEPHEN M. PACKMAN
                                    MARIAM KHOUDARI
                                    **ARCHER & GREINER, P.C.**
                                    Three Logan Square
                                    1717 Arch Street, Suite 3500
                                    Philadelphia, PA 19103
                                    Tel: (215) 963-3300
                                    Fax: (215) 963-9999
                                    spackman@archerlaw.com
                                    mkhoudari@archerlaw.com

                                    *Counsel for Moving Defendants*

227696056 v1

**EXHIBIT 1**
**Motion for Withdrawal of Reference**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Miscellaneous Matter No._____

| | |
|---|---|
| **In re:** | |
| **MIDNIGHT MADNESS DISTILLING LLC,** | **CHAPTER 7** |
| Debtor. | **Case No. 21-11750-MDC** |
| | |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,** | **Adv. No. 23-00047-MDC** |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,** | |
| Defendants. | |

## MOVING DEFENDANTS' MOTION FOR WITHDRAWAL OF REFERENCE

For the reasons set out in their accompanying memorandum of law, Moving Defendants,[1]

by their undersigned attorneys, hereby move this Honorable Court for entry of an Order

---

[1] The Moving Defendants are Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly A. Festa; Ashleigh Baldwin; Michael Boyer; R.F. Culbertson; Polebridge, LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; Etoh Worldwide, LLC; and Canvas 340, LLC.

withdrawing the reference and transferring this action to the United States District Court for the

Eastern District of Pennsylvania.


Dated: September 5, 2023     */s/ Mariam Khoudari*
            STEPHEN M. PACKMAN
            MARIAM KHOUDARI
            **ARCHER & GREINER, P.C.**
            Three Logan Square
            1717 Arch Street, Suite 3500
            Philadelphia, PA 19103
            Tel: (215) 963-3300
            Fax: (215) 963-9999
            spackman@archerlaw.com
            mkhoudari@archerlaw.com

            *Counsel for Moving Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Miscellaneous Matter No._____

| | |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>Debtor. | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>Defendants. | **Adv. No. 23-00047-MDC**<br><br><br>**JURY TRIAL DEMANDED** |

## MEMORANDUM OF LAW OF MOVING DEFENDANTS IN SUPPORT OF MOTION FOR WITHDRAWAL OF REFERENCE

Moving Defendants, Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly A. Festa;

Ashleigh Baldwin; Michael Boyer; R.F. Culbertson; Polebridge, LLC; Good Design, Inc.;

AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev,

227695611 v1

LLC; Etoh Worldwide, LLC; and Canvas 340, LLC (the "**Moving Defendants**"), respectfully

submit this memorandum of law in support of their motion for withdrawal of the reference (the

"**Motion**") of the above-captioned adversary proceeding (the "**Adversary Proceeding**") from

the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy**

**Court**"), pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy

Procedure  and Local Bankruptcy Rule 5011-1 (the "**Bankruptcy Rules**").

## PRELIMINARY STATEMENT

The Court should withdraw the reference of the Adversary Proceeding for various

reasons, including that the Moving Defendants and the Chapter 7 Trustee **("Plaintiff")** do not

consent to the Bankruptcy Court conducting a jury trial. Moreover, there is cause for a

permissive withdrawal of the reference as (1) at least nine of the fourteen claims asserted by

Plaintiff are non-core; (2) the Motion was filed at the first reasonable opportunity after Moving

Defendants had notice of grounds for removal and it would permit the District Court to preside

over the case from its inception; (3) it would promote judicial economy, avoiding redundant

review of proceedings and legal work; (4) it would foster uniformity in bankruptcy

administration and would reduce forum shopping and confusion; and (5) it would have no effect

on bankruptcy administration, as the claims being asserted herein by the Plaintiff are severable

from the Bankruptcy Case.

The Plaintiff has joined twenty-one defendants in the Adversary Proceeding. The

Complaint contains 56 pages of alleged "facts."  To the extent Moving Defendants' motion to

dismiss is not fully granted, it is anticipated that discovery conducted will be substantial, time-

intensive, and subject to disputes.

**STATEMENT OF FACTS**

Midnight Madness Distilling LLC f/k/a Theobald and Oppenheimer, LLC d/b/a Faber

Distilling (the "**Debtor**") filed a voluntary petition for relief under Chapter 11 in the Bankruptcy

Court on June 21, 2021 (the "**Petition Date**"). [Dkt No. 1]. The Debtor's case, now converted to

Chapter 7, is currently pending under Bankruptcy Case No. 21-11750-MDC. On May 10, 2022,

the Plaintiff was appointed as Chapter 7 Trustee of the Debtor's estate.

Plaintiff filed the Adversary Proceeding by "Complaint" against, *inter alia*, the Moving

Defendants, on June 15, 2023. A copy of the Complaint is filed herewith as Exhibit 1. The

Plaintiff agreed to extend Moving Defendants' time to respond to the Complaint to

September 15, 2023.

The Complaint mainly asserts non-core, common law claims against the defendants.

These common law claims include claims for (1) breach of fiduciary duty; (2) aiding and

abetting breach of fiduciary duty; (3) corporate waste; (4) declaratory relief (alter ego, piercing

the corporate veil and/or successor liability); (5) unjust enrichment; (6) an accounting; (7)

constructive trust; (8) breach of contract (against certain Moving Defendants); and (9) breach of

contract (against defendant Finland Leasing Co., Inc.). The Complaint additionally asserts more

traditional, core "bankruptcy" claims for (10) equitable subordination; (11) turnover pursuant to

11 U.S.C. § 542 (a hybrid common law and "bankruptcy" claim); (12) avoidance and recovery of

post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550; (13) avoidance and recovery of

preferential transfers pursuant to 11 U.S.C. §§ 547(b) and 550; (14) avoidance and recovery of

fraudulent transfers pursuant to 11 U.S.C. §§ 548 and 550.

3

## ARGUMENT IN SUPPORT OF REQUEST FOR RELIEF

### A. There is Cause for a Permissive Withdrawal of the Reference

28 U.S.C. § 157(d) provides that:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

There is no statutory definition of what constitutes "cause shown" under 28 U.S.C. § 157(d). *See In re Eagle Enterprises, Inc,* 259 B.R. 83, 87 (Bankr. E.D. Pa. 2001). However, the Third Circuit has set out five factors the District Court should consider in deciding whether permissive withdrawal is warranted. These factors include: (1) "promoting uniformity in bankruptcy administration"; (2) "reducing forum shopping and confusion"; (3) "fostering the economical use of the debtors' and creditors' resources"; (4) "expediting the bankruptcy process"; and (5) the timing of the withdrawal petition. *In re Pruitt,* 910 F.2d 1160, 1168 (3d Cir. 1990).

Two additional considerations guide the exercise of discretionary withdrawal: "whether (i) the underlying proceeding involves 'core' or 'non-core' claims, and (ii) any party has asserted a right to a jury trial to which it is constitutionally entitled." *In re Forks Specialty Metals Inc.,* 2020 WL 2098099, at *2 (E.D. Pa. May 1, 2020) (quoting *In re Earth Pride Organics, LLC,* 602 B.R. 1, 12 (E.D. Pa. May 23, 2019)); *In re Pruitt,* 910 F.2d at 1168.

1. <u>Withdrawal of the Reference Would Promote Uniformity in Bankruptcy</u>
   <u>Administration and Reduce Forum Shopping and Confusion.</u>

Withdrawal of the reference would promote uniformity in bankruptcy administration here as the vast majority of the claims in the Adversary Proceeding are non-core. Adjudicating non-core claims in the Bankruptcy Court does not foster efficient use of judicial resources. In *Pelullo*, this Court granted permissive withdrawal of the reference as "the bankruptcy court may not enter a final order or judgment in a non-core proceeding without the consent of the parties, keeping the proceeding in the bankruptcy court wastes judicial resources because the district court must review the bankruptcy court's proposed findings of fact and conclusions of law de novo." *In re Pelullo*, <u>1997 WL 535155</u>, at *2.

Withdrawal is warranted as well where the District Court is better equipped to make determinations under non-bankruptcy laws since it hears the types of claims the Plaintiff has asserted much more frequently than the bankruptcy court does. *See in re Pelullo,* <u>1997 WL 535155</u>, at *2 ("[S]tate law claims are not the type of claims typically heard in the bankruptcy court and could require extensive discovery and instructions to the jury on the law of Pennsylvania or possibly another state.").

2. <u>Withdrawal of the Reference Would Promote the Economical Use of the Parties' and</u>
   <u>Judicial Resources.</u>

Absent consent of the parties, the Bankruptcy Court cannot preside over a jury trial of the non-core claims. Thus, "it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issue presented in this litigation" given that a district judge "must eventually preside over the jury trial." *In re Gruppo Antico,* 2005 U.S. Dist, LEXIS 38904, *3-5, <u>2005 WL 3654215</u> (D.Del. July 1, 2005); *see also In re Pelullo,* <u>1997 WL 535155</u>, at *2.

5

It would plainly be inefficient to have two different courts considering interrelated parts of this lawsuit when this Court has the power to administer and decide the entire case and both parties are requesting that this Court ultimately do so. Withdrawal of the reference would avoid this Court's redundant review of proceedings and legal work, including but not limited to pleadings, dispositive motions and accompanying briefs, and other pre-trial matters. *In re Pelullo,* WL 535155, at *2 ("[P]ermitting [a] case to proceed in the bankruptcy court, even for pre-trial matters, would require duplication of the bankruptcy court's efforts, since defendants have not consented to entry of final judgment by the bankruptcy court. Under such circumstances, [the] [c]ourt would have to review the bankruptcy court's orders de novo and conduct a jury trial without the benefit of having overseen pre-trial matters.").

   3.  Trying this Case in the District Court Would Neither Expedite Nor Delay the Bankruptcy Process.

Having this action tried in the District Court will have no effect on bankruptcy administration as the claims being asserted are severable from the Bankruptcy Case because they do not affect the claims allowance process but only affect the amount of any recovery for the bankruptcy estate of the Debtor. Likewise, having the Adversary Proceeding tried in the District Court will not affect the timing of the Bankruptcy Case. Since the case was converted to Chapter 7, the Bankruptcy Case does not involve any complicated Chapter 11 restructuring, administration or claims issues. Moving Defendants submit that litigating the underlying matters asserted in this Court would be both more efficient and economical and should move the Bankruptcy Case to closure much sooner than a piecemeal litigation of the matter in both Courts.

6

227695611 v1

4. <u>The Timing of the Motion Favors Withdrawal.</u>

A motion to withdraw bankruptcy court reference is timely if it is filed at the first reasonable opportunity after movant has notice of grounds for removal, taking into consideration circumstances of the proceeding. *In re Schlein,* <u>188 B.R. 13</u> (E.D. Pa. 1995). Here, the Moving Defendants bring this Motion as their initial pleading. No response to the Complaint has yet been filed by the defendants in the Adversary Proceeding. Moreover, the timing of this request favors withdrawal as it allows for the District Court to preside over the case from the very beginning, where both parties agree that the District Court would be the tribunal for any jury trial conducted. *In re Pelullo,* <u>1997 WL 535155</u>, at *2 (withdrawal is warranted when the court "would have to review the bankruptcy court's orders de novo and conduct a jury trial without the benefit of having overseen pre-trial matters.").

5. <u>This Court Should Withdraw the Reference as the Vast Majority of Claims Asserted by the Trustee are Non-Core.</u>

The Complaint consists of fourteen counts against twenty-one defendants, nine counts of which are non-core, one count which asserts a hybrid core and non-core claim, and four counts which allege core bankruptcy claims. A proceeding is core if it "invokes a substantive right provided by title 11 or if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Torkelsen v. Maggio (In re the Guild and Gallery Plus, Inc.),* <u>72 F.3d 1171, 1178</u> (3d Cir,1996); *accord In re Winstar Communications, Inc.,* <u>554 F.3d 382, 405</u> (3d Cir.2009); *see also* <u>28 U.S.C. § 157(b)(2)</u>.

The first claim asserted by the Trustee is that of breach of fiduciary duty, which is a "non-core, related proceeding*." In re Jamuna Real Est., LLC,* <u>357 B.R. 324</u>, <u>336</u> (Bankr. E.D. Pa. 2006); *see also McDermott v. Party City Corp.,* <u>11 F.Supp.2d 612, 626</u> n. 18 (E.D.Pa.1998). The second claim asserted by the Trustee is that of aiding and abetting a breach of fiduciary duty,

227695611 v1

which is also a non-core claim because it arises under state law and "cannot be said to invoke a substantive right provided by title 11 or to arise only in the context of a bankruptcy." *In re Jamuna,* 357 B.R. at 336.

The third claim of corporate waste is also non-core because it is a traditional state law claim that does not involve substantive rights provided by Title 11 and can be brought outside of the context of a bankruptcy case. *See Phar–Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228, 1234 (3d Cir.1994); *see also Times Mirror Mags., Inc. v. Las Vegas Sports News, L.L.C.,* No. CIV. A. 98-CV-5768, 1999 WL 179749, at *1 (E.D. Pa. Mar. 17, 1999). The fourth claim of declaratory relief (alter ego, piercing the corporate veil and/or successor liability) is also non-core as held by the Third Circuit. *In re Phar–Mor, Inc.,* 22 F.3d at 1239. The fifth claim, unjust enrichment is non-core because it is a Pennsylvania common law claim. *In re Pa. Gear Corp.,* Adv. Nos. 03-940, 03-942, 2008 WL 2370169, at *5 (Bankr. E.D. Pa. Apr. 22, 2008) (describing unjust enrichment as a "clear non-core" proceeding).

The sixth claim for an accounting (equitable remedy) is non-core because it arises under Pa.R.Civ.P 1021(a). *See Buczek v. First National Bank of Mifflintown,* 366 Pa.Super. 551, 531 A.2d 1122, 1123 (Pa.Super.1987). The seventh claim of constructive trust is non-core because courts have consistently held that a constructive trust claim made by a debtor or bankruptcy trustee, based upon the defendant's prepetition conduct, is a state law claim that falls outside the scope of a core proceeding. *In re Drauschak,* 481 B.R. 330, 340–42 (Bankr. E.D. Pa. 2012); *XL Sports, Ltd. v. Lawler,* 49 Fed.Appx. 13, 20 (6th Cir.2002); *see, e.g., Schafer v. Nextiraone Federal, LLC,* 2012 WL 2281828 (M.D.N.C. June 18, 2012); *In re Taub,* 413 B.R. 81 (Bankr.E.D.N.Y.2009).

The eighth and ninth claims of breach of contract are also non-core. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co. (In re Northern Pipeline Construction Co),* 458 U.S. 50, 71 (1982) ("[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case."); *Civic Ctr. Cleaning Co. v. Reginella Corp.,* 140 B.R. 374 (W.D. Pa. 1992) (finding that an adversary proceeding brought by debtor to recover amounts allegedly owing under prepetition contract was "non-core"); *In re AstroPower Liquidating Trust,* 335 B.R. 309, 323 (Bankr.D.De1.2005) (holding that unjust enrichment claims and breach of contract claims are generally non-core).

The tenth claim asserted by Plaintiff is equitable subordination. An equitable subordination claim may be a core proceeding pursuant to sections 11 U.S.C. § 510(c) and 157(b)(2). *In re M. Paolella & Sons, Inc.,* 161 B.R. 107, 116 (E.D. Pa. 1993), aff'd, 37 F.3d 1487 (3d Cir. 1994).

The eleventh claim of turnover is a hybrid claim with core and non-core allegations. Turnover is a core proceeding when the plaintiff's objective is the collection rather than the creation, recognition, or liquidation of a matured debt. *In re Drauschak,* 481 B.R. 330, 340–42 (Bankr. E.D. Pa. 2012); *In re Asousa P'ship,* 264 B.R. 376, 384 (Bankr. E.D. Pa. 2001) ("Turnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate."). However, turnover is classified as a non-core matter when it involves disputed property or property clearly not within the bankruptcy estate. *In re Jamuna Real Est., LLC,* 357 B.R. 324, 333 (Bankr. E.D. Pa. 2006) (Holding that turnover is not proper where a bona fide dispute regarding the title of the property exists); *see also, e.g., U.S. v. Inslaw, Inc.,* 932 F.2d 1467, 1472 (D.C.Cir.1991) ("It is settled law that the

9

debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.").

The twelfth claim of avoidance and recovery of post-petition transfers is a core claim because it arises under 11 U.S.C. §§ 549 and 550. The thirteenth claim of avoidance and recovery of preferential transfers is a core claim pursuant to 11 U.S.C. §§ 547(b) and 550. The fourteenth claim of avoidance and recovery of fraudulent transfers is also a core claim pursuant to the Bankruptcy Code, 11 U.S.C. § 548.

The majority (at least nine out of fourteen) of the claims asserted by the Trustee are non-core and, without consent of the parties, must be tried to a jury in this Court. This Court is better equipped to handle the discovery proceedings and adjudicating the non-core claims asserted by the Plaintiff.

6.  The Parties Assert Their Right to a Jury Trial.

A court's exercise of discretion to withdraw is guided by whether "any party has asserted a right to a jury trial to which it is constitutionally entitled." *In re Earth Pride Organics, LLC,* 602 B.R. 1, 12-13 (E.D. Pa. 2019) (quoting *In re Portnoy,* No. 17-38, 2017 WL 3141186, at *2 (E.D. Pa. July 24, 2017)). Here, the vast majority of the claims the Trustee asserts in the Complaint are non-core claims against Moving Defendants. Plaintiff has included a jury demand in the Complaint, and Moving Defendants are entitled to a jury trial as the Seventh Amendment to the United States Constitution guarantees the right to a jury trial in suits at common law. *In re Transcon. Refrigerated Lines, Inc.,* 494 B.R. 816, 820 (Bankr. M.D. Pa. 2013). [2]

---

[2] Counsel for the Plaintiff seemingly recognizes this as well. In response to defense counsel's inquiry regarding withdrawal of the reference, Plaintiff's counsel wrote: "[w]e have considered the venue issue and wish to keep the matter in the bankruptcy court until it is ready for a jury trial, *which of course will take place in the District Court.*" *See* Exhibit 2 filed herewith (emphasis added).

10

**B.  This Court Should Withdraw the Reference Because this Action May Involve
Extensive Discovery Disputes.**

Although the Moving Defendants intend to move for dismissal of the Complaint, should

any portion of the Adversary Proceeding remain following that adjudication, referral of this case

for discovery to a magistrate judge would promote judicial economy by efficiently moving the

case forward (due to the case being extensively factually involved) because they "are not the

type of claims typically heard in the bankruptcy court and could require extensive discovery and

instructions to the jury on the law of Pennsylvania." *In re Pelullo,* WL 535155, at *2 (citing

*Judge v. Ridley & Schweigert (In re Leedy Mortgage Co., Inc.),* 62 B.R. 303, 306

(E.D.Pa.1986)). In *Leedy Mortgage*, the court observed:

> Unlike the matters concerning the bankruptcy matter, this case
> could require extensive discovery. The parties in this action will
> have to study many volumes of written material and depose many
> individuals, including, at least, the thirteen individual defendants.
> In addition, the parties will have to hire experts to testify as to the
> standard of care to be employed by a reasonable accountant in
> Birmingham, Alabama, at the pertinent times. The trial will be
> lengthy and complex. It will last from two to four weeks, far longer
> than most proceedings in bankruptcy court. Also, unlike most
> bankruptcy proceedings, it will require a jury and extensive
> examination of documents and witnesses. At the conclusion of the
> evidence, the court will have to instruct the jury on the law of
> contract and negligence as governed by the State of Alabama. All
> of this contrasts with that which typically occurs before the
> bankruptcy court. The court believes that it is well within the mark
> when it says that bankruptcy courts do not commonly hear lengthy
> trials involving the law of contracts or negligence based on the law
> of a state foreign to the forum where extensive discovery and
> pretrial proceedings are necessary and inevitable.

*In re Leedy Mortgage*, 62 B.R. at 306.

Here, while the case may not involve a law of a state foreign to the Bankruptcy Court, it

will inevitably be complex and lengthy due to the sheer number of defendants (twenty-one) and

claims asserted (fourteen). Accordingly, because of the discovery complexity, length, and

227695611 v1

disputes that may arise, Moving Defendants respectfully submit that this matter should be
adjudicated by this Court.

<u>**CONCLUSION**</u>

For the foregoing reasons, Moving Defendants request that the Court enter an order (i)
granting the Motion and (ii) granting such other and further relief as is just and proper.

Dated: September 5, 2023

*/s/ Mariam Khoudari*
STEPHEN M. PACKMAN
MARIAM KHOUDARI
**ARCHER & GREINER, P.C.**
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
Tel: (215) 963-3300
Fax: (215) 963-9999
spackman@archerlaw.com
mkhoudari@archerlaw.com

*Counsel for Moving Defendants*

12

**EXHIBIT 1**
**Adversary Complaint - Bankruptcy Case No. 21-11750-MDC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:**<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>Debtor. | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>Defendants. | **Adv. No. _____**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

## <u>COMPLAINT</u>

### I.    INTRODUCTION

1.    Plaintiff, Bonnie B. Finkel (the "Trustee"), in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC f/k/a Theobald and Oppenheimer, LLC d/b/a Faber Distilling (the "Debtor"), by and through her undersigned counsel, brings this action to recover, *inter alia*, more than $10 million for damages inflicted upon the Debtor—a successful distillery that was

1

126

looted and destroyed by the Debtor's former insiders (the "Insider Defendants") and their profiteering enablers—all Defendants herein.

2.      In a brazen scheme to loot the Debtor, Defendants formed shadow entities—a number of which were "offshore"—to which Debtor opportunities, property and profits were diverted (the "Pilfering Entities") with the purpose, intent, and effect of enriching Defendants at the expense of the Debtor and its non-insider creditors.

3.      To cover their tracks, the Insider Defendants intentionally deleted, wiped, and stole the Debtor's electronic data and cloud computing drives after the Debtor filed for bankruptcy. Debtor emails, internal documents, sales records, customer lists, invoices, and marketing strategies (but for a few which remained in system files and metadata uncovered by the Trustee) were purposefully destroyed or transferred to the Pilfering Entities.

## II.     JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1334, since the litigation arises under Title 11 of the United States Code (the "Bankruptcy Code"), or in or related to cases under the Bankruptcy Code.

5.      The Trustee demands a jury trial before an Article III judge in connection with all claims asserted herein that are triable to a jury under the Constitution and applicable law, and the Trustee does not consent to the entry of final judgment or adjudication by a bankruptcy judge.

6.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1409(a).

## III.    PARTIES

### A.      The Plaintiff

7.      On June 21, 2021 (the "Petition Date"), Midnight Madness Distilling LLC, a Pennsylvania limited liability company, filed a voluntary petition for relief under Chapter 11 of

the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania under the caption *In re Midnight Madness LLC*, Bankr. E.D. Pa., Case No. 21-11750-MDC.

8.      On October 13, 2021, this Court entered an order converting the Debtor's Chapter 11 bankruptcy case (the "Chapter 11 Case") to a case under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Case").

9.      On October 14, 2021, Plaintiff Bonnie B. Finkel was appointed as Chapter 7 Trustee of Debtor's bankruptcy estate—a position which she currently holds.

**B.     The Defendants**

**The Insider Defendants**

10.     Defendant Casey Parzych is an individual with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073.  At times material hereto, Casey Parzych was: (a) the Manager and majority member of the Debtor; (b) the Debtor's President and Treasurer from 2012 until 2020 (when he was replaced as Treasurer by Defendant Rittenburg); (c) a Member and President of Defendant AgTech PA LLC (hereinafter identified), one of the Defendant Wynk Entities (hereinafter defined); and (d) an agent for the Pilfering Entities (hereinafter defined).

11.     Defendant Angus Rittenburg is an individual with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073.  At times material hereto, Defendant Rittenburg was: (a) an officer and member of the Debtor; (b) an officer and member/shareholder of Defendants Polebridge, LLC and Good Design, Inc.; and (c) Chief Operations/Technology Officer of Defendant Best Bev Entities (hereinafter identified) and Defendant Wynk Entities (of which he is a co-founder).

12.     Defendant Kelly Festa is an individual with a place of business at 2512 Quakertown

3

Road, Pennsburg, PA 18073.  At times material hereto, Defendant Festa was: (a) the Chief Financial Officer of the Debtor; (b) the Director of Sales and Operations of the Best Bev Entities; and (c) an agent of the Polebridge Entities (hereinafter defined) and the Wynk Entities.

13.    Defendant Ashleigh Baldwin—Defendant Casey Parzych's wife—is an individual with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073. At times material hereto, Defendant Baldwin was: (a) Debtor spokesperson and agent; (b) an officer and member/shareholder of Polebridge, LLC and Good Design, Inc.; and (c) an agent of the Wynk Entities and the Best Bev Entities.

14.    Defendant Michael Boyer is an individual residing at 4406 Lowell Road, Wilmington, DE 19802 and with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073.  At times material hereto, Defendant Boyer was an attorney serving in the dual and conflicting roles of general counsel to the Debtor and counsel to the Polebridge Entities and the Wynk Entities.

15.    Defendant R.F. Culbertson is an individual residing at 17 Churchill Road, Pittsburgh, PA 15235 and with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073.  At times material hereto, Defendant Culbertson was: (a) Chief Operating Officer and member of the Debtor; and (b) an agent of the Polebridge Entities, the Wynk Entities, and the Best Bev Entities.

16.    Defendants Casey Parzych, Rittenburg, Festa, Baldwin, Boyer, and Culbertson are referred to collectively in this Complaint as the "Insider Defendants."

### The Polebridge Entities

17.    Defendant Polebridge, LLC ("Polebridge") is a Pennsylvania limited liability company with its registered office at 118 North Main Street, Trumbauersville, PA 18970.

4

18.     Defendant Good Design, Inc. ("Good Design") is a British Columbia corporation with a registered office at Suite 1400, 777 Densmuir Street, Vancouver, British Columbia, Canada, V7Y 1K4.  Good Design is owned by Defendant Baldwin, Defendant Rittenburg, and Thomas Rittenburg, who, upon information and belief, has a familial relationship with Defendant Rittenburg.

19.     Defendants Polebridge and Good Design operated as alter egos, and are referred to collectively in this Complaint as the "Polebridge Entities."

20.     As described in detail herein, the Polebridge Entities, with the substantial assistance of the Insider Defendants, misappropriated Debtor resources, property, and personnel to generate sales and profits from CBDelight and Faber Hand Sanitizer products, which rightfully belonged to the Debtor but were misappropriated by and diverted to the Polebridge Entities.

### **The Wynk Entities**

21.      Defendant AgTech PA LLC f/k/a American Cannabis LLC ("AgTech PA") is a Pennsylvania limited liability company with its principal business office at 2512 Quakertown Road, Pennsburg, PA 18073.

22.     Defendant Shawn Sheehan is an individual with a place of business at 6501 Red Hook Plaza, Suite 201, Charlotte Amalie, United States Virgin Islands, 00802.  Defendant Sheehan is sole manager and member of XO EW, LLC and Canvas 340, LLC, and Director and President of XO Energy MA, Inc.

23.     Defendant AgTech VI, LLC ("AgTech VI") is a United States Virgin Islands limited liability company with operations at 2512 Quakertown Road, Pennsburg, PA 18073.

24.     Defendant AgTech VI is formally owned and operated by a complex web of entities which are ultimately owned and controlled by Defendant Sheehan, as follows:

5

      a.     Defendant XO Energy Worldwide, LLLP is a United States Virgin Islands limited liability limited partnership with its principal office at East End Plaza, Suite 120, 6115 Smith Bay, Charlotte Amalie, United States Virgin Islands, 00802. Defendant XO Energy Worldwide, LLLP is the sole member and manager of Defendant AgTech VI;

      b.     Defendant XO EW, LLC is a United States Virgin Islands limited liability company with its principal office at 5093 Dronningens Gade, Ste. 1, Charlotte Amalie, United States Virgin Islands, 00802. Defendant XO EW, LLC is the general partner of Defendant XO Energy Worldwide, LLLP; and

      c.     Defendant Sheehan is the sole member and manager of Defendant XO EW, LLC. He is also its Chief Executive Officer.

25.     Defendant Canvas 340, LLC is a United States Virgin Islands limited liability company with its principal office at East End Plaza, Suite 120, 6115 Smith Bay, Charlotte Amalie, United States Virgin Islands, 00802. The members of Canvas 340, LLC are Defendant Sheehan and the Shawn P. Sheehan Revocable Trust.

26.     Upon information and belief, Defendants AgTech PA, AgTech VI, XO Energy Worldwide, LLLP, XO EW, LLC, and Canvas 340, LLC – along with the now-dissolved Sheehan-controlled entities AgTech VI, LLLP and AgTVI, LLC – operated under the control of Defendants Sheehan and Casey Parzych as if they were a unified entity, or alter egos, and are referred to collectively in this Complaint as the "Wynk Entities."

27.     As described in detail herein, Defendants caused the Wynk Entities to, *inter alia*, utilize the resources, property, and personnel of the Debtor to produce, market and sell the Wynk Seltzer product, for which the profits flowed not to the Debtor, but instead to the Wynk Entities.

## **The Best Bev Entities**

28.     Defendant Ryan Uszenski is an individual residing at 8-40 Estate Nazareth, Charlotte Amalie, United States Virgin Islands, 00802, with a place of business at 2512 Quakertown Road, Pennsburg, PA 18073.  Defendant Uszenski is a Manager of Defendants Can Man, LLC and Best Bev, LLC.

29.     Defendant Can Man LLC d/b/a Best Bev ("Can Man") is a Pennsylvania limited liability company with its registered office at 2512 Quakertown Road, Pennsburg, PA 18073.

30.     Defendant Best Bev, LLC is a United States Virgin Islands limited liability company with operations at 2512 Quakertown Road, Pennsburg, PA 18073.

31.     Defendant Best Bev, LLC is owned and operated by a complex web of entities which are owned and controlled by Defendant Sheehan, as follows:

        a.      Defendant EtOH Worldwide, LLC is a United States Virgin Islands limited liability company with its principal office at East End Plaza, Suite 120, 6115 Smith Bay, Charlotte Amalie, United States Virgin Islands, 00802.  Defendant EtOH Worldwide, LLC is the sole member and a co-Manager of Defendant Best Bev, LLC;

        b.      Defendant XO Energy Worldwide, LLLP is the sole member and manager of Defendant EtOH Worldwide, LLC;

        c.      Defendant XO EW, LLC is the general partner of Defendant XO Energy Worldwide, LLLP; and

        d.      Defendant Sheehan is the sole member and manager of Defendant XO EW, LLC.

32.     Upon information and belief, Defendants Can Man, Best Bev, LLC, EtOH Worldwide, LLC, XO Energy Worldwide, LLLP, and XO EW, LLC operated as if they were a

7

unified entity, or alter egos, and will hereinafter be collectively referred to as the "Best Bev Entities."

33.     As described in detail herein, the Defendants caused the Best Bev Entities to, *inter alia*, utilize resources, property, and personnel of the Debtor to generate beverage sales and beverage packaging sales for which the profits flowed not to the Debtor, but instead to the Best Bev Entities.

### The Gary Parzych Entities

34.     Defendant Gary Parzych is an individual residing at 138 N. Main Street, Trumbauersville, PA, with a place of business at 2300 Trumbauersville Road, Trumbauersville, PA 18970.  Gary Parzych is the father of Defendant Casey Parzych and the President and Owner of Defendants Finland Leasing Co., Inc. and Eugene T. Parzych, Inc.

35.     Defendant Finland Leasing Co., Inc. ("Finland Leasing") is a Pennsylvania corporation with its registered office at 2300 Trumbauersville Road, Trumbauersville, PA 18970. Finland Leasing is Debtor's former landlord.

36.     Defendant Eugene T. Parzych, Inc. ("ETP") is a Pennsylvania corporation with its registered office at 2300 Trumbauersville Road, Trumbauersville, PA 18970.

37.     At all times material hereto, the individual Defendants acted in their own right, and as agents for and on behalf of the entity Defendants.

38.     The Polebridge Entities, the Wynk Entities, and the Best Bev Entities will be referred to collectively herein as the "Pilfering Entities."

IV.    **FACTS**

39.     The Debtor, also known as Theobald & Oppenheimer and Faber Distilling Co., was co-founded by Defendant Casey Parzych and Anthony Lorubbio in or around 2012 while the two

8

were enrolled in Defendant Culbertson's Intro to Entrepreneurship class at Carnegie Mellon University.

40.    In the years leading up to its bankruptcy filing, the Debtor experienced rapid growth—from almost nothing to $10 million in annual sales—developing, manufacturing, marketing and selling thirty+ distilled spirit products, with its most prominent products bearing the Faber brand.

41.    A February 21, 2018 Philadelphia Business Journal article reported on the Debtor's expansion:

> The Bucks County spirits company that produces the Faber line of liquors has rebranded and moved to a larger headquarters facility. The moves signal changes at the company, pivoting to become a 'curator of a collection of brands' – setting it up for more expansion. Theobald & Oppenheimer began as an entrepreneurship class project at Carnegie Mellon University in Pittsburgh, forming in 2012 under the name Midnight Madness Distilling.
>
> The company purchased, renovated and this year moved into the historic and once-dormant Theobald & Oppenheimer Co. cigar building at 118 N. Main St., Trumbauersville in Bucks County.
>
> Theobald & Oppenheimer moved from 500 square feet in its old facility to about 12,000 square feet in its new headquarters just down the road, which has office space, storage and a bottling system on four floors. . . .
>
> "We rebranded not as a craft distillery but as a curator of a collection of brands," co-founder Anthony Lorubbio told the Philadelphia Business Journal. . . . "Faber is our consumer-facing line, but if we wanted to get into another one, then we need this umbrella-branded entity that houses those brands . . . . Aside from products we have now, we have a few things under the hood we look to launch soon[.]"

**The Insider Defendants Form Good Design, Polebridge, and the Wynk Entities
To Funnel Money Out of the Debtor in Collusion with Defendant Sheehan**

42.    On April 19, 2019, the Debtor entered into a Loan Agreement and a Security Agreement with PNC pursuant to which it ultimately borrowed approximately $2.5 million.  To

9

secure the loan, PNC received a first lien on all personal property of the Debtor and a second mortgage on the Debtor's headquarters at 118 North Main St., Trumbauersville in Bucks County ("118 North Main").

43.     To circumvent PNC's security interest, the Insider Defendants conspired with themselves and the other Defendants to form shadow entities—in the same lines of business as the Debtor—which were then used to misappropriate Debtor resources and loot the Debtor for the benefit of the Defendants.

44.     The unlawful scheme involved sham profit sharing arrangements and sham loan agreements between the Debtor and Sheehan's collection of wholly-owned Virgin Islands based entities – namely, Defendant AgTech VI, LLC, Defendant XO Energy Worldwide, LLLP, Defendant XO EW, LLC, Defendant EtOH Worldwide, LLC, AgTech VI LLLP, and AGTVI LLC (collectively, the "Sheehan Entities") – through which Debtor resources were misappropriated and Debtor profits were siphoned out, and the ill-gotten gains were shared among the Defendants.

45.     The profit sharing agreements themselves have not been provided and are unavailable to the Trustee due to Defendants' destruction/theft of Debtor records and Defendants' failure to cooperate with the Trustee's Rule 2004 requests (discussed *infra*).

### The Polebridge Entities

46.     Effective April 19, 2019 – the same date that the Debtor executed the PNC Loan Agreement – Defendant Baldwin formed Defendant Polebridge as a Pennsylvania limited liability company, listing its registered office as the Debtor's headquarters at 118 North Main.  Using Debtor computers, Defendant Festa provided administrative support for the filing of Polebridge's registration documents.

47.     On May 23, 2019, Defendants Baldwin and Rittenburg formed Defendant Good

10

Design as a British Columbia corporation, listing the Debtor's headquarters as the incorporators' address.  Using Debtor computers, Defendant Festa provided administrative support for the filing of Good Design's registration documents.

48.     On February 4, 2020, Defendant Baldwin caused Polebridge to register "Good Design" as a fictitious name with the Pennsylvania Department of State, listing "canning" as the "nature of the business or other activity to be carried on under or through the fictitious name."

### CBDelight Seltzer

49.     The Polebridge Entities' first project was CBDelight seltzer, a carbonated beverage containing cannabis derivatives.

50.     CBDelight was manufactured, packaged, and marketed using Debtor resources, labor, and material, including but not limited to: office and warehouse space for operations, the purchase of additional canning/bottling equipment utilized for the purposes of Good Design/Polebridge, sales services and incentives, marketing services, graphic design services, digital marketing and advertising services, legal services, intellectual property, and bottling services.  The following facts establish the point.

51.     While described to the public as a Good Design product, "C B Delight" was in fact a trademark filed by the Debtor on April 17, 2019.

52.     On August 1, 2019, Defendants issued a press release stating that "Cbdelight (a division of Good Design Inc.) announced that it has partnered with Pennsylvania-based distributor Nittany Beverage to expand the brand's footprint in Pennsylvania. . . . Ashleigh Baldwin, CEO of Good Design Inc., remarked: 'With Chad Merriweather and Kelli Scozzaro working with Nittany's seasoned team, we're going to hit it out of the park.'"  At the time of the press release, Kelli Scozzaro and Chad Merriweather were full time employees of the Debtor.

11

53.    Defendant Culbertson's LinkedIn page states that he has been employed in sales and marketing for Good Design since January 2019 and further states that "[o]ur cbDelight product is one of the top selling products in the tri-state area. . . . Our new Siphon device allows anyone to carbonate any drink with CBD – anywhere – at a far reduced price point." The "Siphon device" referenced by Defendant Culbertson constituted or utilized the Debtor's intellectual property.

54.    The Debtor utilized Defendant Culbertson's Polebridge Entities' email address (rf@gooddesigninc.com) on its application for a Paycheck Protection Program loan.

55.    While employed full-time as the Debtor's CFO, Defendant Festa utilized a Polebridge Entities email address (kellyfesta@gooddesigninc.com), which she accessed using the Debtor's computer equipment.

56.    On numerous occasions, Defendant Casey Parzych conducted Debtor business, including communications with Debtor's outside counsel, using his Polebridge Entities email address (casey@gooddesigninc.com).

57.    Many other full-time Debtor employees utilized the Polebridge Entities' email addresses, accessed through Debtor computers, to further the business interests of the Polebridge Entities, including Defendant Rittenburg (angus@gooddesigninc.com), Debtor customer service representative Casey Coughlin (ccoughlin@gooddesigninc.com), and Debtor production manager John Pitts (john@gooddesigninc.com).

58.    CBDelight's Facebook page lists its telephone number as (215) 268-6071, a telephone number owned, paid for, and utilized by the Debtor, and staffed by Debtor employees.

59.    The LinkedIn page of John Aguilar—a Debtor account manager from November 2019 through November 2020—emphasizes that, while employed full-time by the Debtor, he "[d]eveloped, maintained and grew a target account list within Philadelphia market that drove

12

volume & brand recognition for . . . CBDelight," and which resulted in a 40% increase in brand

growth for CBDelight.

      60.    An August 23, 2019 presentation approved by Defendant Parzych to train Debtor

sales representatives announced new Debtor product CBDelight as Debtor's top "mission critical"

priority:



61.     A Debtor marketing presentation entitled "Theobald & Oppenheimer Leadership Brands Presentation" features numerous CBDelight slides emphasizing that the Debtor makes, cans, and delivers the CBDelight product:



**Faber Hand Sanitizer**

62.     In March 2020, after the WHO declared COVID-19 a global pandemic and bars throughout the United States shut down due to government orders, the Insider Defendants caused the Debtor to manufacture, bottle, and sell hand sanitizer under the Faber brand ("Faber Hand Sanitizer"), which had been trademarked by the Debtor in 2016.

63.     As they did with CBDelight, Defendants diverted the proceeds and profits from

14

139

the massively lucrative Faber Hand Sanitizer out of the hands of the Debtor where they rightfully belonged and into the pockets of Defendants—funneled through the Polebridge Entities.

64.    Faber Hand Sanitizer was manufactured, packaged, and marketed with Debtor resources, including labor, material, office and warehouse space for operations, the purchase of additional canning/bottling equipment, sales services and incentives, marketing services, graphic design services, digital marketing and advertising services, legal services, intellectual property, and bottling services.  The following facts establish the point.

65.    Good Design's LinkedIn profile describes its business as "[m]anufacturing," specifically "[m]aking beverages and FDA-approved hand sanitizer for hospitals, grocery stores, employees and everyday Americans."

66.    Defendant Baldwin's LinkedIn profile lists her former employment as CEO of Good Design, which she states "makes consumer goods including spirits, sodas and hand sanitizer. We are registered with the FDA and are currently supplying hand sanitizer to several of the largest healthcare systems in the U.S."  Defendant Baldwin's profile further states that Good Design "is a good kind of consumer goods company.  We invent and make delightful spirits, sodas and other consumer products in our own factory in rural Pennsylvania."

67.    These descriptions are false—the Polebridge Entities had no manufacturing capability, facilities, or personnel whatsoever, except for that pilfered from the Debtor.

15

68.    Good Design's LinkedIn profile depicts bottles of Faber Distilling Co. hand

sanitizer in its background:



69.    Beginning on March 26, 2020, the Debtor's Faber Liquors Instagram page was

dominated by posts advertising Faber Hand Sanitizer.

70.    A Philadelphia Inquirer article dated April 6, 2020 highlights the Debtor, with no

mention of Polebridge or Good Design:

> Bucks County's Theobald & Oppenheimer[, i.e., the Debtor,] is on
> the opposite end of the spectrum [from a smaller distillery]: The
> second-largest distillery in the state, it made $2 million worth of
> alcohol last year between its two brands, Faber Liquors and Singe
> Prop Rum.  Like its smaller peers, Theobald has pivoted to hand
> sanitizer – also using its own bottles – but it can churn it out by the
> pallet.
>
> "We bought ethanol at 200 [proof] and we get a tanker in a day,"
> said T&O chief financial officer Kelly Festa.  "We mix it with
> hydrogen peroxide and glycerin, and then we run it through the
> bottling lines."

16

The Trumbauersville company has increased the number of
production shifts and employees. "We're running three shifts a day,
seven days a week, trying to get as much out the door as possible,"
Festa said. "We're getting orders left and right, from hospitals, the
U.S. Postal Service, huge supermarket chains, you name it."

By the end of March, T&O had filled 167,300 one-liter glass bottles
with hand sanitizer branded with the Faber Liquors label. . . . At the
moment, hand sanitizer is all T&O is making.

71.    Confirming the theft of payments due the Debtors from sales of Faber Hand

Sanitizer, by email dated April 9, 2020, Defendant Baldwin instructed the Debtor's sales team to

divert payments from Debtor's Square point of sale system to Polebridge's Square account:



72.    As the Debtor's April 17, 2020 press release made clear:

> [The Debtor] has shifted production of its high-quality vodkas, gin, and rum to the manufacture of hand sanitizer (Faber Hand Sanitizer). While many distillers have made similar adjustments, Faber has scaled the production of its hand sanitizer to supply consumers as well as medical professionals and first responders. . .

> So many people are having trouble securing sanitizer right now. We knew we could help by producing an abundant supply, despite disruptions in the supply chain," said Ashleigh Baldwin, Faber's spokesperson. "When people get their sanitizer from us, they are protecting themselves and supporting efforts to help those heroes on the frontlines of the COVID-19 pandemic. . . .

> Faber Hand Sanitizer is available in the same one-liter bottles that the company has traditionally used to store the spirits that it has produced for more than 8 years. The hand sanitizer has less viscosity, allowing it to be utilized in spray bottles or with towels to help disinfect surfaces.

73.    Similarly, Faber Hand Sanitizer's Facebook page stated: "we – the team at FABER Liquors – have shifted our usual operations to produce much-needed hand sanitizer" and lists the telephone number of Faber Hand Sanitizer as (215) 268-6071, a telephone number owned by, paid for, utilized, and staffed by the Debtor.

74.    On April 17, 2020, Defendant Sheehan made a post to his LinkedIn page advertising Faber Hand Sanitizer.  Upon information and belief, Defendant Sheehan and the Sheehan Entities had an agreement with the Insider Defendants to share in the ill-gotten profits from the sale of CBDelight and Faber Hand Sanitizer.

75.    An April 21, 2020 email from Defendant Festa's Polebridge Entities email account (kellyfesta@gooddesigninc.com) to the Debtor's sales managers—via their Debtor email accounts (@theoandopp.com)—instructed the Debtor's sales managers to ensure that the Debtor's customers made payments by electronic transfer, i.e., ACH or wire, into Polebridge's

18

bank account, and not the account of the Debtor, for sales of Faber Hand Sanitizer:

> **From: Kelly Festa**
> <kellyfesta@gooddesigninc.com>
> Date: Tue, Apr 21, 2020 at 3:55 PM
> Subject: New bank account wiring
> instructions
> To: Ian Kobos <ian@theoandopp.com>,
> Kelli Scozzaro
> <kscozzaro@theoandopp.com>
>
> Hello,
>
> Can you please send this along to your
> sales team? We have a new bank account
> for wires and ACH's to go into. ACH info
> below and wire instructions attached.
>
> Thank you!
>
> Account name: Polebridge LLC
>
> Account type: Checking
>
> Bank name: Raymond James- UMB Bank
>
> Account: ███████████
> Routing: ███████████

76.    An April 29, 2020 press release issued by the Debtor, reports that the Debtor:

> is increasing its production of hand sanitizer (Faber Hand Sanitizer)
> to meet growing demand . . . .
>
> The Faber team has been supplying hospitals, truck drivers, and first
> responders since it first made the switch from producing its high-
> quality vodkas, gin, and rum.  The company has also made its 80
> percent alcohol antiseptic hand sanitizer available directly to
> consumers too.
>
> "It is no secret that essential businesses and services need hand
> sanitizer to maintain operations. However, as more businesses make
> plans to re-open, many are experiencing difficulties and frustrations
> sourcing much-needed hand sanitizer," said Faber spokesperson
> Ashleigh Baldwin. "We are producing abundant supplies of high-
> quality sanitizer to relieve the anxieties of businesses preparing to
> safely conduct business again.

77.    A May 12, 2020 email from the Debtor's outside counsel to a representative of the

United States Alcohol & Tobacco Tax & Trade Bureau confirms that the Debtor "has converted

to hand sanitizer production and [is] supplying large hospital centers."

78.    The Debtor's sales representatives also accepted tens of thousands, if not

hundreds of thousands, of dollars in cash payments for Faber Hand Sanitizer, which were

diverted from the Debtor for the benefit of the Polebridge Entities.

79.    A June 11, 2020 presentation approved by Defendant Parzych to train the Debtor's

sales representatives lists four "Mission Critical" products for emphasis to the Debtor's customers.

Faber Hand Sanitizer shared the top spot with Faber liquor (with CBDelight demoted to third

place):



80.    Another Debtor marketing presentation—entitled "Theobald & Oppenheimer Leadership Brands Presentation"—featured numerous slides touting Faber Hand Sanitizer and the massive success of this Debtor product:






81.    Numerous individuals utilized email addresses associated with Faber Hand Sanitizer, which they accessed using Debtor computer equipment, to further the business interests of the Polebridge Entities, including: Defendant Baldwin (ashleigh@fabersanitizer.com), Defendant Culbertson (rf@fabersanitizer.com), and Debtor customer service representative Casey Coughlin (ccoughlin@fabersanitizer.com).

21

82.   Faber Hand Sanitizer exploited the Debtor's marketing staff and resources, and

utilized advertising mirroring that for Debtor's liquor products:



83.   Kelli Sheehan (who, upon information and belief, has a familial relationship with

Defendant Sheehan), while a full-time employee and agent of the Sheehan Entities, utilized the

Debtor's computers to conduct business relating to the Faber Hand Sanitizer product

(kelli@fabersanitizer.com).

84.    Despite being manufactured, marketed, and sold using the Debtor's resources and personnel, profits from Faber Hand Sanitizer were diverted to the Polebridge Entities, and ultimately to the Defendants.

85.    The Trustee's preliminary analysis confirms that a minimum of $8.8 million of profits attributable to the sale of Faber Hand Sanitizer and CBDelight were stolen from the Debtor and diverted to Defendants.  The actual amount diverted is likely much higher, as there was no proper accounting for cash transactions.

### Wynk Seltzer

86.    In the fall of 2020, Defendants Casey Parzych, Rittenburg and Sheehan used Debtor resources and personnel to create a cannabis infused beverage known as Wynk seltzer ("Wynk Seltzer").

87.    On September 1, 2020, Defendant Sheehan caused Defendant AgTech VI to file Articles of Organization as a United States Virgin Islands ("USVI") limited liability company for the purposes of diverting the profits from the sale of Wynk Seltzer away from the Debtor.

88.    On November 25, 2020, Defendant Casey Parzych, as organizer, registered American Cannabis LLC as a Pennsylvania limited liability company for the purposes of diverting the profits from Wynk Seltzer away from the Debtor.

89.    On April 26, 2021, American Cannabis LLC filed a document with the Pennsylvania Department of State to change its name to AgTech PA LLC.  The document was signed by Defendant Casey Parzych as President and indicates that it should be returned to Defendant Festa via the email address kellyfesta@drinkwynk.com.

90.    The Wynk Seltzer business was facilitated using Debtor resources, including labor, material, office and warehouse space for operations, the purchase of additional canning/bottling

equipment utilized for the purposes of Wynk Seltzer, sales services and incentives, marketing services, graphic design services, digital marketing and advertising services, legal services, intellectual property, and canning services.  The following facts establish the point.

91.    While Defendants conspired to delete or steal all data on the Debtor's physical computers and cloud storage services (as described in greater detail below), forensic analysis of system files on a Debtor hard drive reveals that, as with CBDelight and Faber Hand Sanitizer, substantial Debtor resources were diverted for the ultimate benefit of the Wynk Entities.

92.    Debtor computers were used to access email addresses associated with Wynk Seltzer, including those belonging to Defendant Casey Parzych (casey@drinkwynk.com and casey@drinkcannabisusa.com), Defendant Rittenburg (angus@drinkwynk.com), Defendant Festa (kellyfesta@drinkwynk.com), Defendant Culbertson (rf@drinkwynk.com and rf@drinkcannabisusa.com), Sheehan Entities' employee Kelli Sheehan (kellisheehan@drinkwynk.com), and Debtor customer service representative Casey Coughlin (ccoughlin@drinkwynk.com).

93.    The Wynk Entities regularly used a copier and scanner belonging to the Debtor.

94.    On April 19, 2022[1], current Wynk Seltzer Brand Manager Casey Coughlin posted the following to her LinkedIn page, indicating that, on April 19, 2021 (while still a full-time

---

[1]    Historical LinkedIn posts do not publicly display the exact date on which a post was made, instead giving an approximation based off the date the post was viewed (in the case of this post, approximately "1 yr" from the June 6, 2023 date on which the screenshot was taken).  The exact posting date, however, is available within computer code used to display the LinkedIn website and a publicly available internet tool (https://ollie-boyd.github.io/Linkedin-post-timestamp-extractor/) can use the URL of a given LinkedIn post to display the exact date the post was made.  Utilizing this tool, the Trustee's special counsel determined that the LinkedIn post was made on April 19, 2022.

employee of the Debtor), she was "[w]rapping up Wynk's 1st mobile production run in Ohio":



95.    Debtor credit card records establish that the Debtor—not the Wynk Entities—paid

for Ms. Coughlin's travel to Ohio, including:

    a.    On April 18, 2021, a $200.45 charge at the Hampton Inn in Gallipolis, Ohio;

    b.    On April 18, 2021, an $18.46 charge to the United Dairy Farmers

convenience store in Columbus, Ohio;

    c.    On April 18, 2021, a $15.78 charge to a Bob Evans restaurant in Jackson,

Ohio;

    d.    On April 18, 2021, a $30.52 charge to a Target in Columbus, Ohio;

25

e. On April 19, 2021, a $2.95 charge to a Starbucks in Columbus, Ohio;

f. On April 20, 2021, a $23.00 charge to Jolly Pirate Donuts in Newark, Ohio;

g. On April 20, 2021, a $96.80 charge to Destination Donuts in Columbus, Ohio;

h. On April 23, 2021, a total of $41.43 in charges to a BP gas station in Columbus, Ohio;

i. On April 23, 2021, a $973.01 charge to Budget Rent-A-Car in Columbus Ohio for a vehicle which was rented from 4/19/21 until 4/23/21;

j. On April 23, 2021, a $719.10 charge to the Canopy by Hilton hotel in Columbus, Ohio;

k. On April 23, 2021, a $26.44 charge to Duck Donuts in Mason, Ohio; and

l. On April 23, 2021, a $313.40 charge to American Airlines for travel from Columbus, Ohio to Philadelphia.

96. Upon information and belief, the Debtor paid for many other purchases for the sole benefit of the Wynk Entities and the Wynk Seltzer product.

97. On May 11, 2021, the Wynk Entities arranged for the shipment of industrial equipment to 2600 Milford Square Pike, Quakertown PA 18591 ("2600 Milford"), a location which was paid for by the Debtor but which, upon information and belief, was used solely by the Pilfering Entities.

98. In the Summer of 2021, numerous other invoices were billed to the Debtor yet either explicitly stated that they were for purposes related to Wynk Seltzer or called for deliveries to 2512 Quakertown Road, Pennsburg, Pennsylvania ("2512 Quakertown Road"), an address never disclosed by the Debtor as part of its operations and which was used solely for the purposes of the

Polebridge Entities, the Wynk Entities, and the Best Bev Entities.

99.    The website of the Cannabis Beverage Association features a member page for
"WYNK ;)", listing its address as 2512 Quakertown Road and its telephone number as (215) 565-
5845, a phone number which is listed as belonging to the Debtor on vendor invoices.

100.    The Wynk Entities regularly ordered supplies for Wynk Seltzer using the Debtor's
computers, telephone lines, and vendor accounts.

101.    Numerous individuals used their Wynk Entities email accounts in
communications concerning the Debtor and its bankruptcy, many of which would have been
otherwise privileged communications with the Debtor's attorneys, including: Defendant Casey
Parzych (casey@drinkwynk.com and casey@drinkcannabisusa.com), Defendant Rittenburg
(angus@drinkwynk.com), Defendant Festa (kellyfesta@drinkwynk.com), Defendant Culbertson
(rf@drinkwynk.com and rf@drinkcannabisusa.com), and Defendant Sheehan
(shawn@drinkwynk.com).

102.    In an email dated June 15, 2021, a representative of Classic Staffing Services, Inc.
– a temp agency paid for by the Debtor – stated that she "was instructed to reach out for all
matters related to Faber to Jack Blobe from Drink Wynk.  I was told he would be the contact
going forward and that Drink Wynk, Theo and Opp, and Faber were one and the same."  Mr.
Blobe's LinkedIn profile states that he was a full-time employee of the Debtor from May 2020
through September 2021, a full-time employee of the Wynk Entities from May 2021 through
February 2022, and a full-time employee of the Best Bev Entities from May 2022 through May
2023.

103.    Despite being manufactured, marketed, and sold using the Debtor's resources and
personnel, all revenues from Wynk Seltzer flowed to the Wynk Entities, and ultimately the

Defendants.

### Defendants Conspire to Utilize the Bankruptcy Process to Defraud the Debtor's Creditors

104.    Defendants attempted to mask their wrongdoing by creating invoices, tax forms, and other documents to feign an arm's length relationship between Debtor, the Polebridge Entities, and the Wynk Entities.  The documents were phony and a sham—as they failed to fully and accurately describe and account for Debtor resources being devoted to the sole benefit of the Polebridge Entities, the Wynk Entities, and, ultimately, the individual Defendants.

105.    Defendants' scheme was designed to hide the fact that they were extracting millions of dollars of value out of the Debtor, to place it beyond the reach of Debtor's creditors.

106.    Due to Defendants' diversion of Debtor resources and profits to the Polebridge Entities, the Wynk Entities, and their principals and affiliates, the Debtor was unable to pay its debts and, on February 28, 2021, defaulted on the PNC loan.

107.    Under scrutiny but not wanting to abandon their profitable scheme, Defendants conspired to have Defendant Sheehan utilize his complex network of wholly-owned USVI entities to further defraud the Debtor and its creditors.

108.    Kelli Sheehan and Sheehan Entities CFO John Charette, despite being full-time employees of the Sheehan Entities, maintained accounts on the Debtor's computer system and had full access to the books, records, and online accounts belonging to the Debtor.

109.    Defendants first attempted to have certain of the Sheehan Entities either purchase PNC's debt or purchase the Debtor's business assets outside of bankruptcy.

110.    The contemplated transactions were not arm's length and were closely coordinated among the Defendants, with Defendants Casey Parzych and Sheehan leading the scheme.

111.    The coordination between the Debtor and the Sheehan Entities was so egregious

that the Debtor's outside counsel admonished Defendants Casey Parzych, Culbertson, Boyer, and

Festa in a January 18, 2021 email:

> [I]t's very unusual and inadvisable to be including [Sheehan
> Entities' attorney] Carey Drangula and [the Sheehan Entities
> referred to as] X/O on all of these emails [concerning the Sheehan
> Entities acquiring the Debtor or its assets].  There is no privilege.
> She and X/O are an adverse party in these negotiations, particularly
> now that another party . . . is in the mix.  You again must treat this
> as an arm's length transaction for the ultimate maximum benefit of
> the Company between two equal suitors or you are going to get
> yourselves in trouble.   I would not advise continuing to seek her
> legal counsel or X/O's approval on anything. I would also keep
> confidential communications within this team unless or until a deal
> is made.  Any indication that you have favored X/O or have been
> providing them access or information that you have not provided to
> [the other potential purchaser] or other suitors has the potential to
> become fodder for litigation.   X/O and [the other potential
> purchaser] are competitors and we must treat them as such.

112.    Defendants Casey Parzych, Culbertson, Boyer, and Festa did not follow counsel's

advice.  They continued to present the Debtor to other potential purchasers as unfavorable in the

hope of steering the business to the Sheehan Entities at less than fair value.

113.    That plan failed and Defendants pivoted to a bankruptcy alternative, which included

an effort to sell the business cheap to the Sheehan Entities through a Section 363 sale or, if that

failed – via a web of entities doing business as "Best Bev" and/or "Can Man" and referred to herein

as the "Best Bev Entities" – through outright theft of the Debtor's property and resources.

114.    Attorney time entries filed with this Court in support of certain of the Sheehan

Entities' attorneys' application for allowance of a purported "expense reimbursement" establish

the essential role of the Sheehan Entities in the scheme, indicating that, as of at least April 8, 2021,

the Sheehan Entities were conspiring with the Debtor Defendants to formulate the Debtor's

bankruptcy strategy.

115.    Indeed, Defendant Sheehan (using his Sheehan Entities email address,

29

ssheehan@xo-energy.com, and his Wynk Entities email address, shawn@drinkwynk.com) and

Sheehan Entities CFO John Charette (using his Wynk Entities email address,

johncharette@drinkwynk.com) were copied on otherwise privileged emails between the Debtor,

its bankruptcy counsel, and/or its accountants concerning the Debtor's bankruptcy strategy.

116.    Defendants Sheehan and Casey Parzych jointly retained Washington D.C.-based

public relations firm kglobal to direct marketing strategies in light of Debtor's bankruptcy and

Sheehan's anticipated takeover of Debtor's assets.

### The Debtor Diverted Assets to the Best Bev Entities

117.    On May 3, 2021, Can Man, LLC ("Can Man") was formed as a Pennsylvania

limited liability company with Debtor's outside counsel acting as organizer.  Can Man's registered

office was originally listed as 2600 Milford, but changed on September 30, 2021 to 2512

Quakertown Road, the same address used by the Wynk Entities.

118.    Upon information and belief, all activity taking place at 2600 Milford, 2512

Quakertown Road, and 300 Commerce Drive, Quakertown, PA ("300 Commerce") was for the

benefit of Can Man, the other Best Bev Entities, and the other Pilfering Entities.

119.    Upon information and belief, in May 2021, Defendants caused the Debtor to

transfer a Hamrick Recaser machine with an estimated value of $145,000 to 2512 Quakertown

Road for use by the Pilfering Entities.

120.    On May 6, 2021, Casey Coughlin – who identifies herself on her LinkedIn page as

an employee of the Debtor and Wynk – posted the following to her facebook page: "Hiring spree!

Beverage production in Quakertown (don't sleep on it) at Faber Distilling. . . . Signing bonus,

referral bonus, bonus for breathing.  Name your bonus."

121.    Upon information and belief, Ms. Coughlin's hiring efforts – while ostensibly made

on behalf of the Debtor – were intended to benefit the Pilfering Entities, as a company on the verge of a bankruptcy filing would likely not make such extraordinary hiring expenditures.

122.    On June 1, 2021, despite knowing that the Debtor's bankruptcy filing was imminent, Defendant Casey Parzych, acting on behalf of the Debtor, executed a Consulting Services Agreement with DPG Management, LLC ("DPG") under which DPG was to provide human resources consulting services more fully described in a proposal dated May 20, 2021.

123.    The May 20, 2021 DPG proposal, while addressed to the Debtor, is entitled "Wynk – Proposal," and provides for comprehensive human resources programs and assessments which would be of no use to a company about to file for bankruptcy.  Upon information and belief, the services provided by DPG, although contracted and paid for by the Debtor, were used by Defendants to benefit the Pilfering Entities.

124.    On June 14, 2021, Defendants Festa and Uszenski utilized the Debtor's computer equipment and email system to create and edit a Word document titled "Can Man Shadow Structure," which depicted a corporate structure under which Can Man would own Faber and all the Debtor's other brands and operate out of a headquarters located 2512 Quakertown Road.

125.    On June 13, 2022, Best Bev, LLC was formed as a United States Virgin Islands limited liability company.  Upon information and belief, Best Bev LLC is either the successor in interest to Can Man or was created by Defendants to avoid liability for misconduct on the part of Can Man, which at all times relevant hereto operated using the name "Best Bev."

126.    On June 24, 2022, Maho, LLC filed papers with the Pennsylvania Department of State to utilize "Best Bev" as a fictitious name.  The document was signed by John Pitts, the Best Bev Entities' Processing & Compliance Manager (and the Debtor's former production manager) and indicates that it should be returned to Defendant Festa at 2512 Quakertown Road.

**Defendants Interfered with the Debtor's Section 363 Sale**

127.    On June 3, 2021, Defendants Casey Parzych and Rittenburg signed a Joint Resolution of the Managers and Majority In Interest of Members of the Debtor declaring that the Debtor was insolvent and unable to pay its debts as they mature and authorizing the filing of a voluntary petition under chapter 11 of the Bankruptcy Code.

128.    On June 1, 2021, immediately before execution of the joint resolution, the Debtor, on the one hand, and EtOH Worldwide, LLC and AgTech VI, LLC, on the other, executed Equipment Lease Agreements.

129.    The Equipment Lease Agreements were sham documents designed to create false administrative claims that would accrue during the Chapter 11 Case but would never be paid. Indeed, based on the lease payments that were accruing, the Debtor over a two-year term would pay well more than double the original cost of the equipment.

130.    In a letter dated June 10, 2021, Defendant Sheehan, writing as President of Defendant EtOH Worldwide, LLC, sent a letter (the "Sheehan Letter") to coerce PNC into cooperating with a Section 363 sale of the Debtor's assets to the Best Bev Entities at a low-ball price. While signed only by Defendant Sheehan, the letter was drafted by Sheehan, counsel for Sheehan and the Best Bev Entities, and the Debtor's bankruptcy counsel. It states in pertinent part:

> EtOH has evaluated MMD, [i.e., the Debtor,] including the collateral pledged to PNC, and concluded that the remaining value of its business, however slight, is as an ongoing concern. As soon as MMD is reduced to its assets, the value of the business will plummet. The equipment that was pledged to PNC has significantly diminished in value and is almost inextricably integrated into the building in which it has housed. . . . EtOH's acquisition of MMD's assets will be the only viable path forward, and this path will require PNC to reset its expectations for several reasons.

\* \* \*

32

Without EtOH as a counterparty, MMD will shutter its operations in Trumbauersville, leaving 80 employees jobless in a small rural town in Pennsylvania. PNC will be left with virtually unsaleable equipment, and, in the face of Casey Parzych's personal bankruptcy, a meaningless guaranty. EtOH is aware of certain additional complicating factors that will only frustrate PNC's attempts to recoup value from MMD's assets . . . .

\* \* \*

The landlord of the leased premises[, i.e., 2300 Trumbauersville Road, which was leased by Defendant Finland Leasing to the Debtor,] is the father of MMD's majority Unit Holder; it is solely because of this relationship that the landlord has not pursued a default claim for nonpayment of rent under the lease. . . . [T]he landlord is unwilling to relet the premises to an unknown third party (including PNC or its eventual assignee) and nothing could compel him to do so. Without a lease at these premises, the distilled spirits production permits . . . will be immediately revoked.

131.    On the Petition Date, the Debtor filed a motion seeking approval of a sale under Section 363 of the Bankruptcy Code (the "Sale Motion"). The Sale Motion proposed to sell the Debtor's assets to Sheehan Entity EtOH Worldwide, LLC, and failed to disclose the extent of the relationship between the Sheehan Entities and Debtor insiders.

132.    In the run up to the Section 363 sale, Defendant Gary Parzych advised potential buyers that he would not allow anyone other than the Sheehan Entities to lease the 2300 Trumbauersville Road property, nor would he permit a transition period for a buyer to find a new location for the operations in that building. Gary Parzych further stated that he was only willing to allow the Sheehan Entities to occupy the building because his son, Defendant Casey Parzych, was part of their organization.

133.    On July 22, 2021, the Debtor caused a document to be posted to the Section 363 sale data room which stated that the 2300 Trumbauersville Road "lease is expired. All batching and bottling equipment that is currently stored in this building needs to be immediately removed

33

158

from the premises upon completion of the sale.  New distilled spirits plant license [sic] will then

have to be obtained as all current licenses are tied to 2300 Trumbauersville Road."

134.    The chilling impact of this sudden revelation was well-summarized in a July 22,

2021 email from PNC's counsel to the Debtor's bankruptcy counsel:

> This lease is identified in the Stalking Horse APA for assumption
> and assignment, so the sudden revelation that it is not available to
> other bidders is problematic.  The landlord – Finland Leasing – is
> owned by Casey's father.
>
> If the Stalking Horse is getting favored (undisclosed) treatment for
> this lease by virtue of this property being owned by Casey's father
> – and other potential bidders will not be afforded similar treatment
> or even told they can negotiate with Finland – this is highly
> inappropriate.  None of this has been disclosed but for a random
> paragraph uploaded for the first time today (that seems well
> designed to scare off potential bidders).  This document should be
> removed from the data room immediately since it is highly
> prejudicial.
>
> It's looking more and more like MMD is designing this sale to
> overwhelmingly favor ETOH (in a sale that no doubt will benefit
> Casey personally) – a clear violation of MMD's fiduciary
> obligations.

135.    On the same day, counsel for PNC expressed further concerns to counsel for the

United States Trustee, and highlighted how Defendants were depressing the value of the

Debtor's assets at the anticipated Section 363 sale:

> I am very concerned about the due diligence materials being
> presented to potential bidders and management's favoritism to
> ETOH (that an affiliate holds Casey and his wife's personal
> guaranty over their heads is a major red flag – I don't care what was
> proffered yesterday).  PNC got access to the data room yesterday
> and discovered that only 2020/2021 financials were uploaded (only
> COVID operations, nothing historic).  PNC requested that historical
> financials for the past 3 years be updated (and was told by [the
> Debtor's auctioneer] that they would be).  It just seems like
> management is doing everything it can to make this business look
> unattractive to third parties.  BET Investments has already dropped
> out – Kurtzman told me today.

34

136.    Other bidders informed PNC's counsel that they were dropping out because it was obvious that the Insider Defendants were attempting to rig the sale in favor of the Sheehan Entities.

137.    A July 23, 2021 email from PNC's counsel further describes the impact of the Debtor's failure to provide full disclosure as to the relationship between the Debtor, its principals, Finland Leasing, and the Sheehan Entities:

> What information was provided to PNC pre-petition has little bearing on the information being provided to third party bidders by MMD/Comly – nor is posturing by ETOH in connection with pre-petition sale negotiations pertinent to whether or not MMD is meeting its fiduciary obligations now that it is in bankruptcy. At best the information provided to third party bidders regarding this lease has been misleading and contradictory (with this lease reported as unexpired in the Schedules and disclosure schedules to the APA when allegedly it is not). At worst, the bidders are being given late information that is both inaccurate and designed to discourage participation. It's fair to alert bidders that the lease is expired and cannot be assumed or assigned under Section 365 (if that is the case). But it's another thing entirely for MMD to pre-emptively tell bidders that they will have no access to that building post-closing under any circumstances (which is the message sent by the document uploaded yesterday).

> Casey's father and his company, Finland Leasing, are statutory insiders of the Debtor. *See* Section 101(31)(B)(vi) and (E). If there is a side-agreement or any sort of understanding (even informal) between Finland Leasing and ETOH, it should have been disclosed at Wednesday's hearing (where it was reported that there are no agreements/understandings at all between ETOH and its affiliates/insiders and MMD and its affiliates/insiders other than the vague reference in the APA to possible retention of employees). The fact that the APA provides for assumption and assignment of this expired lease strongly suggests there is such a side-agreement. This should be disclosed in the notice you are preparing to interested parties.

> Most importantly, however, Casey and his father (both insiders of MMD) cannot collude with each other and ETOH to favor ETOH over other bidders. That is what this is if Finland would only agree to enter into a new lease with ETOH and no other potential buyers. It's deliberately and purposefully putting the other bidders at a

35

disadvantage to throw the auction to ETOH. That ETOH was aware of this advantage and previewed it for PNC is all the more troubling and suggestive of the collusion. But ETOH's posturing does not excuse MMD and Casey from meeting their fiduciary obligations to conduct a fair sale process designed to maximize the value of the assets. A fix in favor of ETOH hardly does that.

This can be corrected by MMD/Comly advising potential bidders that they too are free to reach out to Finland Leasing to negotiate terms of a new lease (or a short-term accommodation if they don't want to use that building). But any attempt by Finland Leasing (a debtor insider) to pre-emptively foreclose those discussions is a significant problem and clear violation of MMD's fiduciary obligations. All bidders need to be on equal footing with respect to potential negotiations with Finland (except for normal market issues such as ability to perform, etc.) – and that should be communicated clearly to the interested bidders.

138.    On July 26, 2021, counsel to the United States Trustee held a Section 341 meeting at which Defendant Casey Parzych testified under penalty of perjury, *inter alia*, that the Debtor had no relationship with Wynk Seltzer. This testimony was willfully false.

139.    That same day, a creditor which participated in the meeting emailed counsel for the United States Trustee. The creditor forwarded an email from a representative of Classic Staffing Services, Inc. (stating that a Debtor representative told her that "Drink Wynk, Theo and Opp, and Faber were one and the same"), and pointed out that it establishes the "opposite of what [Defendant Casey Parzych] testified [to] on today's call re: DrinkWynk's relationship to Midnight Madness."

140.    PNC's counsel confirmed that numerous Debtor employees were simultaneously working for the Wynk Entities:

A little shocking that MMD internally isn't even trying to hide it[, i.e., the fact that Debtor employees, vendors, and customers were being told that the Debtor and the Wynk Entities were one and the same].

I wonder if they would give you ownership/governance information for Wynk, ETOH, AgTech and XO Energy? [Millstone Spirits Group, LLC ("Millstone") principal] Robert Cassell thought Casey

had an ownership interest in one of the XO affiliates, but I was not able to find any governance information (these are Virgin Island entities). Even if Casey doesn't have an ownership interest in Wynk, I bet Angus Rittenburg does – and he's also a director of MMD. I would think at some point Harry/Bill would be a little concerned with how honest their client contact is being with them. My litany of e-mails to them is not just me crying wolf at this point. There are serious issues here.

I'm told by Cassell that Faber is a $10 million brand, so there's real value here (and that's just one of the several brands). The failed transaction with XO Energy that the other shareholder blew up pre-petition was for a purchase price of more than $2.5 million. Creditors are now at risk of ETOH taking the company for $1.5 million ($1,025,000 cash plus assumption of $450,000 in secured debt) and Casey getting the benefit of whatever side deals he's negotiated and this co-venture with Wynk. If you assume $2.5 million is the floor, fulsome marketing and a fair auction (overseen by a true fiduciary) could get unsecured creditors paid.

At one point pre-petition, PNC floated to Casey the idea of PNC funding a small DIP loan to allow for fulsome marketing and to neutralize the stalking horse bid. He wouldn't even discuss it with us. Not sure if PNC would be interested in that in connection with a trustee, but let me know if you want to discuss.

141.    On August 6, 2021, in response to questioning from counsel from the United

States Trustee, the Debtor represented that:

The debtor does not now and never has provided services to any companies for the purpose of unlawfully manufacturing, storing, distribution, or using a controlled substance as defined under federal law.

The debtor has no knowledge of a company called DrinkWynk. Wynk seltzer is a product.

Casey Parzych is the sole member of AgTech PA LLC ("AgTech"). Agtech contracts with different cannabis processors to produce Wynk seltzer. None of the debtor's assets (including but not limited to the collateral of the PNC Loans) are currently used by or in the business operations of AgTech nor have they ever been used by or in the business operations [sic] AgTech. AgTech lawfully provides services to cannabis companies using assets that are not and never were owned by the debtor.

142.    This statement, like Defendant Casey Parzych's testimony at the Section 341 meeting, is demonstrably false given the numerous instances described in this Complaint of the Wynk Entities using the Debtor's equipment, facilities, and employees.

143.    In an email string dated August 16 & 17, 2021, counsel for PNC complained to the Debtor's bankruptcy counsel that:

> Counsel for New Liberty[, a division of Millstone,] reached out to advise that she spoke with Casey's father (principal of the landlord for 2300 Trumbauersville Road) and was told in no uncertain terms that he will not accommodate anyone other than ETOH with respect to either a new lease or even transition time for a new buyer to find a new location for the operations in that building. He told her that he is only willing to allow ETOH occupy the building because his son is going to be involved with them going forward. All he will offer a new buyer is 30 days, which New Liberty's counsel tells me is not enough time to transition; they need at least 90 days. At the same time, he is offering ETOH (as the stalking horse) much more than that – because he knows that Casey will be involved with that enterprise.

> Needless to say, this is concerning and contrary to representations made by Casey and ETOH (including representations made by Casey under oath). Casey's recent declaration said that his father was willing to discuss arrangements with other bidders and that there is no formal or informal agreement between ETOH and Finland regarding the premises. Casey has also sworn (and your firm has represented) that there is no agreement – informal or otherwise – between Casey and ETOH regarding his ongoing involvement with the business. It's very obvious to anyone paying attention that that simply isn't true. Casey's father pretty much confirmed it today with New Liberty's counsel.

> This also reeks of continuing collusion among Casey, ETOH and his father. As estate fiduciaries, both Casey and your firm should welcome the participation of New Liberty. We therefore implore you and Harry to address this immediately with Casey and his father. Casey's father – as a debtor insider – cannot favor ETOH over other potential bidders because of his son's business relationship with ETOH (current or future). That is the very reason why relatives of debtor insiders are themselves considered debtor insiders.

38

163

* * *

> Casey has been less than forthcoming with everyone (including your firm) about the extent of his and his family's relationships with the stalking horse – disclosing things only when they're called out by others.  Given these prior issues, questions need to be asked and information verified – and it is not my practice to blindside opposing counsel by simply raising issues at a hearing.
>
> All PNC wants is a fair auction process that puts bidders on somewhat equal footing and does not give ETOH an inside advantage because of Shaun Sheehan's other business relationships with Casey.

144.    On or about August 25, 2021, Millstone placed a winning bid at the Section 363 auction for an approximate price of $1.4 million and agreements to assume certain contracts, and pay certain administrative expenses.

145.    Due to the Defendants' misconduct as alleged herein, the price paid by Millstone for the Debtor's assets was less than it would have been had the Section 363 sale been conducted on a level playing field.

146.    On September 17, 2021, this Court approved the sale of substantially all of the Debtor's assets to Millstone.

147.    Documents filed with this Court by Millstone for the purposes of objecting to the Sheehan Entities' requests for allowance of expense reimbursement aptly summarize the chilling effect of the Defendants' misconduct on the bidding at the Section 363 auction and the inextricable intertwinement of the Debtor, the Sheehan Entities, and the Wynk Entities:

> [t]he Stalking Horse bid[, i.e., the Sheehan Entities' collusive initial bid for the Debtor's assets,] did not serve as a catalyst for additional bids.  The mere fact that the Stalking Horse bidder was an insider of the Debtor with intimate and preexisting knowledge of the assets to be sold, and that Finland Leasing (the Debtor's landlord for 2300 Trumbauersville Road and Casey Parzych's father) made clear he would only lease to [Sheehan Entity] ETOH, certainly dissuaded true third party purchasers.  Millstone was the only bidder at the

39

auction other than ETOH and PNC, and even then, the Debtor
attempted to prevent Millstone from bidding by announcing, at the
auction with no advance warning, that the Debtor would not
consider the bids apples-to-apples unless Millstone agreed to pay
ETOH's administrative expense claim.  If ETOH's insider status
wasn't . . . enough to chill bidding, the Debtor's overwhelming
support of the Stalking Horse surely did. . . . ETOH had unfettered
access to information regarding the valuation of the Debtor's assets
and its business operations for months, if not longer, before the
bankruptcy was filed.

\* \* \*

The [Sheehan Entities'] and the Debtor's businesses and
management have been inextricably [i]ntertwined since well before
this bankruptcy case was filed[.] . . . The [Sheehan Entities] are
insiders of the Debtor, . . . [and] the transactions resulting in the
[Sheehan Entities'] request for an administrative claim were not
arms-length[.] . . . Millstone submits that the invoices for many of
the parts associated with [equipment which is the subject of the
aforementioned sham lease agreements between the Sheehan
Entities and the Debtor] demonstrates the [Sheehan Entities'] insider
relationship.  For example, several of the invoices that appear to be
for pieces of the Leased Equipment were billed to "Kelly Festa, Etoh
Worldwide." . . . Ms. Festa was, at all relevant times, the Debtor's
chief operating officer.  Other invoices reflect equipment that was
billed and shipped to a company called "American Cannabis"
located at the Debtor's business address and "ordered by Kelly
Festa." . . . While the Debtor was never in the business of cannabis
production, the venture formed by Debtor's members, Casey
Parzych and Angus Rittenburg, with the indirect owner of the
[Sheehan Entities], Shawn Sheehan, were in that business, through
their "Wynk" business.  Yet other invoices [pertaining to equipment
used by the Wynk Entities] were billed directly to "Theobald &
Oppenheimer," the dba used by the Debtor.

**Defendants Operated the Debtor in Possession As An Extension of
the Pilfering Entities, And Continued to Do So After the Section 363 Sale**

148.    While operating the Debtor in Possession (the "DIP"), Defendants caused the DIP

to make numerous transfers and incur debts from which the Debtor derived no benefit and which

went to the sole benefit of the Best Bev Entities and the other Pilfering Entities.

40

149.    Upon information and belief, Defendant Casey Parzych made the Debtor's
bankruptcy counsel aware of his plan to steal Debtor assets and divert business to the Best Bev
Entities, prompting counsel to send him the following email on August 31, 2021:

> Casey, as a follow up to our conversation, I want to reiterate that our
> strong advice is for you and MMD to at all times act in good faith to
> take all actions to preserve and protect the assets, business,
> customers, contracts, relationships, etc of MMD and to deliver to the
> winning bidder at the auction--- Millstone--- the assets that they
> contracted to purchase so that their expectations for the transaction
> that they bargained for will be consummated at the closing.  Doing
> anything less, would contradict our advice could subject you (and
> maybe others) to significant legal issues and concerns.    One
> particular issue of note is that you could be found personally liable
> for failure to uphold your fiduciary duty to MMD and its creditors
> and such personal liability could be deemed non-dischargeable
> (even if you filed a Chapter 7) see, for example Section 523(a)(4) of
> the Bankruptcy Code.

150.    While the Trustee's effort to construct a full accounting of transfers made by the
Debtor for the benefit of Best Bev has been hampered by Defendants' intentional destruction of
Debtor records, such transfers include the following (the "Post Petition Best Bev Transfers"):

    a.    On or about July 6, 2021, Defendants caused an industrial shrink wrapper
machine (PMI Shrink Wrapper with Heat Tunnel, SI-TW30, Serial No. 02498) belonging to the
Debtor to be delivered to 2512 Quakertown Road for use by Best Bev.  Defendant Festa later
falsely informed Millstone that the machine was broken and scrapped before closing;

    b.    On or about July 14, 2021, Defendants used the Debtor's account to order
$700.40 worth of carbon dioxide from Roberts Oxygen Company, Inc., with the carbon dioxide
delivered to Best Bev at 2512 Quakertown Road;

    c.    On or about July 14, 2021, Defendants used the Debtor's account to order
25,872 750 ML glass bottles and 2,688 1.75 L glass bottles from O-I Packaging Solutions LLC at

a cost of $22,198.03, which were delivered to Best Bev at 2512 Quakertown Road, and which were paid for by check drawn on the Debtor's DIP account and signed by Defendant Festa;

   d. On or about July 19, 2021, Defendants used the Debtor's account to order 25,872 750 ML glass bottles, 1,344 1.75L glass bottles, and 3,072 750 ML tequila bottles from O-I Packaging Solutions LLC at a cost of $22,919.06, which were delivered to Best Bev at 2512 Quakertown Road, and which were paid for by check drawn on the Debtor's DIP account and signed by Defendant Festa;

   e. On or about August 5, 2021, a $400.00 check to Milford Township (in which 2512 Quakertown Road sits) for a "Fire Inspection" was drawn on the Debtor's DIP bank account and signed by Defendant Festa;

   f. On or about August 10, 2021, Defendants used the Debtor's account to arrange for SunTeck Transport Co., LLC to deliver a 2,000 LB shipment from Eastgate Graphics in Lebanon, OH to Best Bev at 2512 Quakertown Road at a cost of $2,795.00;

   g. On or about August 11, 2021, Defendants used the Debtor's account to order $1,244.30 worth of packaging material from Century Packing, Inc., for shipment to Best Bev at 2512 Quakertown Road;

   h. On or about August 12, 2021, Defendants used the Debtor's account to order 24,024 1L glass bottles from O-I Packaging Solutions LLC at a cost of $17,125.14, which were delivered to Best Bev at 2512 Quakertown Road;

   i. On or about August 18 and 19, 2021, Defendants used the Debtor's account to order a total of $1,236.64 worth of carbon dioxide from Roberts Oxygen Company, Inc., which was delivered to Best Bev at 2512 Quakertown Road;

       j.      On or about August 31, 2021, Defendants used the Debtor's account to order and ship 181,984 aluminum cans from Zuckerman Honickman at a total cost of $41,037.12, which were delivered to Best Bev at 2512 Quakertown Road;

       k.      On or about September 13, 2021, Defendants used the Debtor's account to order 722,000 aluminum can ends from Zuckerman Honickman at a cost of $23,465.00, which were delivered to Best Bev at 2512 Quakertown Road; and

       l.      A September 29, 2021 email from Millstone's counsel to Debtor's bankruptcy counsel reported that Defendants removed the following items from Debtor's facility (upon information and belief, for the benefit of the Best Bev Entities): a case shrink sealer, a nitrogen doser, and a bulk carbon dioxide system.

151.    Upon information and belief, the above represents a small fraction of the goods and services which were paid for by the Debtor, but which were used for the sole benefit of Best Bev or the other Pilfering Entities.

152.    Defendants have intentionally sabotaged the Trustee's efforts to determine the full extent of goods and services paid for by the Debtor but used for the sole benefit of Best Bev or the other Pilfering Entities.  For example, Defendant Festa instructed vendors to falsely state that Debtor orders were being delivered to the Debtor's facilities when they were actually being delivered to Best Bev at 2512 Quakertown Road.

153.    Shortly before the Millstone acquisition was set to close, the Insider Defendants falsely informed Debtor employees that they would be meeting with Millstone representatives, but instead arranged a meeting with agents of the Best Bev entities, who requested that Debtor employees sign a document stating their intention to work for Best Bev.  The employees were then told to take the week off, which allowed Defendants to remove several pieces of large equipment

43

from the Debtor for the benefit of the Best Bev entities.

154.    On or about September 21, 2021, prior to the Millstone deal closing, the Insider Defendants intentionally deleted, wiped, or stole all the Debtor's electronic data and cloud computing drives, both to hinder Millstone from competing with Defendants' Best Bev enterprise and to hinder any investigation into Defendants' misconduct.

155.    While Defendant Festa testified at a Section 341 meeting that she inadvertently deleted the Debtor's data while trying to transfer it to Millstone, this testimony is contradicted by numerous facts, including: a) due to standardized safeguards and warnings issued by the Debtor's cloud provider prior to mass deletion of data, and a thirty day hold period during which deleted data can be recovered, it is highly improbable that all of the Debtor's email and electronic data could be inadvertently destroyed; b) in addition to data stored on cloud services, the Debtor's computers were wiped of meaningful data prior to their transfer to Millstone; c) a forensic analysis conducted by Millstone indicated that the data was not destroyed, but instead transferred; and d) in discussions which occurred after the supposed deletion of data, Defendant Festa was able to retrieve specifically requested electronic documents belonging to the Debtor, but only after reporting that she had to ask for permission to do so.  Upon information and belief, Defendant Festa sought "permission" from Defendants Casey Parzych and Sheehan, who ordered the deletion/transfer of the Debtor's data in the first instance.

156.    On September 27, 2021, Millstone's counsel reported to the Debtor's counsel that Defendant Parzych told Debtor employees not to come to work, that the Debtor had not been fulfilling customer orders, that "Faber products are out of stock in basically every store," and that there was no backlog of inventory or glass bottles at the Debtor's premises.  Upon information and belief, this was because Defendants: a) encouraged the Debtor's former employees to work for the

44

Best Bev Entities instead of Millstone; b) were fulfilling the Debtor's customer orders for the benefit of the Best Bev Entities instead of the Debtor; and c) were using the Debtor's inventory and equipment to produce large amounts of product for use by Best Bev.

157.    The Debtor's large raw materials purchases and hiring spree in the months preceding the Millstone closing also support the inference that millions of dollars' worth of DIP property was improperly diverted to the Best Bev Entities.

158.    Defendants lied about the true nature of their supposedly new enterprise, informing customers that Best Bev was simply a continuation of the Debtor.

159.    For example an October 7, 2021 text message from Defendant Culbertson to a former customer of the Debtor stated that the Defendants had "re-formed" the Debtor "and quickly started [manufacturing] & co-packing 500,000 cans/bottles per day."

160.    Culbertson's text message further offered to "save you at least 14% OFF your current prices," with the "current prices" being a reference to the Debtor's prices, and with the discount made possible only because Defendants had been stealing the Debtor's personnel, equipment, and inventory for use by Best Bev.

161.    Upon information and belief, Defendants sent similar text messages to hundreds of the Debtor's former customers, using customer lists which Defendants stole from the Debtor.

162.    An October 11, 2021 email from counsel to Millstone to Debtor's bankruptcy attorneys reports:

> [b]ased on . . . conversations our sales guys are having with [former Debtor] customers, [Defendant] Casey [Parzych] and [Defendant] RF [Culbertson] are holding themselves out to customers as "Faber" and saying the[y] "re-formed" the business.
>
> I am also getting invoices from other [Debtor] vendors who say they haven't been paid in months, and that [Defendant] Kelly [Festa] recently asked them to make edits to invoices before they sent them

45

to us to make it look like the goods were shipping to [the Debtor] at
118 N. main Street (when the original invoice says they were
shipping to CanMan at 2512 Quakertown Road).

163.    On October 12, 2021, Defendants made their first post to the wellrebellion
Instagram account.  Well Rebellion was the new name for the liquor product Defendants
manufactured and bottled using Debtor resources and employees.

164.    Defendants subsequently began manufacturing, marketing, and selling the Well
Rebellion product using stolen Debtor equipment as well as the Debtor's supposedly deleted
internal data.

165.    Certain of the Defendants, including Defendants Festa and Culbertson, utilized
custom Well Rebellion flyers which included their cell phone numbers to market the product for
the benefit of Best Bev.  Upon information and belief, the flyers were created using the Debtor's
marketing files, but with the Faber brand name replaced with the Well Rebellion name.

166.    Prior to and after the closing of the sale of the Debtor's assets to Millstone, the
Defendants utilized the Debtor's phone.com account for the benefit of Best Bev, returning calls to
Debtor customers who placed orders for Faber products, and instead selling them the
corresponding Best Bev products.

167.    On October 18, 2021, Drifter Spirits emailed Millstone concerning a meeting that
Drifter Spirits had that day with "Midnight Madness," the Debtor; in reality, the Defendants had
set up a meeting between Drifter Spirits and Best Bev under the guise that Best Bev was a mere
continuation of the Debtor.

168.    In an October 20, 2021 report, a Millstone sales manager complained that
Defendants were using the Faber brand name in communications with the Debtor's former
customers and were causing the customers to think that Best Bev was simply a continuation of the

Debtor:

> All of our customers are still very confused and getting daily
> constant texts/calls/emails from BestBev claiming to be us and
> asking for their 'Faber well order'. . . . They hired a team of reps +
> call center with 5 people non stop calling our customers working
> phones + email off our old customer lists.  Many of our customer
> are telling me they call them, text them, and email them multiple
> times a day after they told them to please please stop.

169.    On November 1, 2021, a Millstone sales manager reported that the Best Bev

Entities "are continuing to spam all of our customers direct cell phones with texts and calls" and

that the customers were confused as to whether the Debtor and Best Bev were separate entities.

170.    In the fall of 2022, Defendants caused Best Bev to join the Upper Perkiomen Valley

Chamber of Commerce, stating that, "[a]fter years of dreaming up, canning and distributing our

own beverages, we have expanded our universe . . . [and] have the space to do it all at our new

100,000+ sf facility centrally located just outside Philadelphia," i.e., 2512 Quakertown Road.  The

reference to "years of dreaming up, canning and distributing our own beverages" is an obvious

reference to the Debtor, and yet another indication that Defendants treated the Debtor and Best

Bev as one and the same.

171.    To this day, Defendants and the Best Bev Entities benefit from their theft of Debtor

resources.  Accordingly, all profits and assets of the Best Bev Entities should be returned to the

Debtor's estate for the benefit of those creditors whose debts Defendants sought to avoid.

### The Insider Defendants' Utter Failure To Maintain Internal Controls

172.    At all times material hereto, the Insider Defendants caused the Debtor to fail to

comply with the most basic principles of corporate governance and internal controls.

173.    This failure was intentional, particularly with respect to the Debtor's accounting,

as it allowed Defendants to freely pilfer the Debtor for the benefit of the Pilfering Entities, with

47

substantial ill-gotten gains flowing to the individual Defendants.

174.    A May 10, 2021 letter from the Debtor's outside accounting firm addressed to the

Debtor's Board of Directors and Members of the Debtor and its related entities reported the

complete failure of the Debtor's accounting function:

> In planning and performing our review of the consolidated
> financial statements of [the Debtor] and related entities . . .
> as of and for the year ended December 2020 in accordance
> with Statements on Standards for Accounting and Review
> Services promulgated by the Accounting and Review
> Services Committee of the American Institute of Certified
> Public Accountants (AICPA) we considered the Company's
> internal control over financial reporting together with certain
> administrative and procedural aspects which the Company
> employs.
>
> During the course of the review engagement we encountered
> numerous issues that we believe need to be addressed. These
> matters lead to a prior period adjustment, numerous
> adjusting journal entries, and a significant amount of
> additional time to complete the review because of the need
> to perform additional review procedures. . . .
>
> Moreover, the issues noted cause for substantial concern
> because management cannot rely entirely on the accuracy of
> internally prepared financial statements.

175.    The Insider Defendants, with the active involvement and under the instruction of

Defendant Sheehan, grossly mismanaged the Debtor's Chapter 11 Case by, among other things,

providing false and inaccurate testimony and declarations, allowing the Debtor to produce and file

inaccurate documents, pilfering funds belonging to the DIP for the benefit of their affiliated

entities, providing the Sheehan Defendants full access and control of the Debtor's books and

records, allowing the Sheehan Defendants to assist in the preparation of the Debtor's filings with

this Court, intentionally attempting to rig the Section 363 sale for the benefit of the Sheehan

Defendants (resulting in an artificially low price for the Debtor's assets at auction) and causing the

Debtor to incur substantial unnecessary and avoidable fees, costs, and expenses.

176.    The Insider Defendants retained and utilized Defendant Boyer as the Debtor's non-bankruptcy General Counsel while knowing that Defendant Boyer was breaching fiduciary duties owed to the Debtor by simultaneously acting as counsel to the Polebridge Entities and the Wynk Entities to the considerable prejudice and detriment of the Debtor and its creditors.

177.    Defendant Boyer breached his fiduciary duties to the Debtor by simultaneously representing the Debtor, the Polebridge Entities, and the Wynk Entities, which, as set forth herein, existed for the purpose of defrauding the Debtor and its creditors.  Moreover, Defendant Boyer as general counsel to the Debtor knew or should have known of management's wrongdoing and failure to follow proper standards of corporate governance as set forth herein, had a duty to take corrective measures, and actively assisted Defendants' scheme instead of fulfilling his duty to correct the wrongdoing.

178.    Defendants Parzych and Rittenburg treated the Debtor as their piggy bank, making a number of personal purchases using the Debtor's funds, including the following (the "Parzych/Rittenburg Purchases"):

    a.    On May 22, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $287.60 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

    b.    On May 22, 2020, Defendant Angus Rittenburg used the Debtor's credit card to make a $114.42 purchase at Rich Air, a private aircraft services provider in Queensbury, NY;

    c.    On June 1, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $1,029.42 purchase at Elliott Aviation, a private aircraft service provider;

49

     d.      On June 2, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $698.75 purchase at AVFlight, a private aviation service provider in North Canton, OH;

     e.      On June 2, 2020, Defendant Angus Rittenburg used the Debtor's credit card to make a $438.76 purchase at Rich Air, a private aircraft services provider in Queensbury, NY;

     f.      On June 3, 2020, Defendant Casey Parzych used the Debtor's credit card to make an $81.76 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

     g.      On June 8, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $247.34 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

     h.      On June 12, 2020, Defendant Casey Parzych used the Debtor's credit card to make a total of $2,072.10 in purchases at Elite Flight Experience, a private flight school in Princeton, NJ;

     i.      On June 13, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $948.30 purchase at Elite Flight Experience, a private flight school in Princeton, NJ;

     j.      On June 13, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $173.97 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

     k.      On June 13, 2020, Defendant Rittenburg used the Debtor's credit card to make a $285.64 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

     l.      On June 14, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $1,657.10 purchase at Elite Flight Experience, a private flight school in Princeton, NJ;

     m.      On June 22, 2020, Defendant Rittenburg used the Debtor's credit card to make a $2,398.00 purchase at General Aviation Modifications, Inc., a supplier of private aircraft

engine parts in Ada, OK;

n.    On August 23, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $14,362.24 purchase at the Pink Sands Club, a luxury resort located on the Caribbean island of Canouan in St. Vincent and the Grenadines;

o.    On October 2, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $329.22 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

p.    On January 7, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $620.40 purchase with American Airlines for purposes of buying an airline ticket for his father, Defendant Gary Parzych;

q.    On February 13, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $205.14 purchase at the Margaritaville Beach hotel in Hollywood, Florida;

r.    On February 16, 2021, Defendant Casey Parzych used the Debtor's credit card to make a total of $274.89 in purchases from American Airlines for travel to St. Thomas;

s.    On March 2, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $4,551.93 purchase at Elite Flight Experience, a private flight school in Princeton, NJ;

t.    On March 29, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $940.00 purchase at Fare Share Ltd., a private flight school in Pottstown, PA; and

u.    On April 21, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $15,000.00 payment to his personal attorney at Rogers Counsel in Ardmore, PA.

**The Insider Defendants Funneled Money To Defendant Gary Parzych's Entities**

179.    The Debtor was party to a lease with Defendant Finland Leasing dated January 1, 2016 for warehouse space at 2300 Trumbauersville Road, Quakertown, PA (the "2300

Trumbauersville Lease").

180.    Defendant Finland Leasing is owned and controlled by Defendant Gary Parzych,

Casey Parzych's father.

181.    The 2300 Trumbauersville Lease provides for a monthly rent payment of

$2,050.00.

182.    The 2300 Trumbauersville Lease provides that it "may be modified only by a

further writing that is duly executed by both parties."

183.    Despite only being obligated to pay Finland Leasing $2,050.00 per month in rent,

the Insider Defendants, for the purpose of funneling money out of the reach of the Debtor's

creditors, caused the Debtor to pay Finland Leasing well more than $2,050.00 per month in rent

as follows:

| Month | Payments Total | Excess Payment |
|---|---|---|
| August 2017 | $7,700.00 | $5,650.00 |
| October 2017 | $2,293.36 | $243.36 |
| January 2018 | $8,760.86 | $6,710.86 |
| February 2018 | $6,500.00 | $4,450.00 |
| April 2018 | $6,500.00 | $4,450.00 |
| May 2018 | $6,500.00 | $4,450.00 |
| June 2018 | $6,500.00 | $4,450.00 |
| July 2018 (payment made 6/29/18) | $6,500.00 | $4,450.00 |
| August 2018 | $14,994.40 | $12,944.40 |
| September 2018 | $9,000.00 | $6,950.00 |
| October 2018 | $6,500.00 | $4,450.00 |
| November 2018 | $9,700.00 | $7,650.00 |
| December 2018 | $12,800.00 | $10,750.00 |
| January 2019 (payment made 12/27/18) | $6,500.00 | $4,450.00 |
| February 2019 | $13,000.00 | $10,950.00 |
| March 2019 | $6,500.00 | $4,450.00 |
| April 2019 | $6,500.00 | $4,450.00 |
| May 2019 | $6,500.00 | $4,450.00 |
| June 2019 (payment made 7/3/2019) | $6,500.00 | $4,450.00 |
| July 2019 | $7,375.00 | $5,325.00 |

| | | |
|---|---|---|
| August 2019 | $7,375.00 | $5,325.00 |
| September 2019 | $7,375.00 | $5,325.00 |
| October 2019 | $7,443.00 | $5,393.00 |
| November 2019 | $7,375.00 | $5,325.00 |
| December 2019 | $7,375.00 | $5,325.00 |
| January 2020 | $7,448.00 | $5,398.00 |
| February 2020 | $7,375.00 | $5,325.00 |
| May 2020 | $6,500.00 | $4,450.00 |
| June 2020 (payment made 7/1/20) | $6,500.00 | $4,450.00 |
| July 2020 | $6,500.00 | $4,450.00 |
| August 2020 (payment made 9/4/2020) | $6,500.00 | $4,450.00 |
| September 2020 | $15,000.00 | $12,950.00 |
| October 2020 (payment made 9/29/2020) | $6,500.00 | $4,450.00 |
| November 2020 | $6,500.00 | $4,450.00 |
| December 2020 | $6,500.00 | $4,450.00 |
| January 2021 | $6,500.00 | $4,450.00 |
| February 2021 (payment made 1/28/2021) | $6,500.00 | $4,450.00 |
| March 2021 | $6,500.00 | $4,450.00 |
| April 2021 | $6,500.00 | $4,450.00 |
| May 2021 | $6,500.00 | $4,450.00 |
| June 2021 | $6,500.00 | $4,450.00 |
| **TOTAL** | **$308,389.62** | **$224,339.62** |

184.    As computed above, the Debtor made at least $308,389.62 in payments to Finland

Leasing from August 2017 through June 2021 (the "Total Finland Leasing Payments"), thereby

overpaying its rent obligations by at least $224,339.62 (the "Finland Lease Overpayments").

185.    The 2300 Trumbauersville Lease provides that "[i]n the event that any utility or

service provided to the Leased Premises is not separately metered, Landlord shall pay the amount

due and separately invoice Tenant for Tenant's pro rata share of the charges."

186.    Despite this unambiguous language, the Debtor made various payments for utilities

and services ostensibly provided to the leased premises not to Finland Leasing, but instead to

Defendant ETP.

187.    The unjustified and extracontractual payments made by the Debtor to ETP were ostensibly for not only utilities, but also a variety of clearly frivolous and non-Debtor charges, including dental insurance for Defendant Casey Parzych's uncle Larry Parzych and satellite radio for Defendant Casey Parzych.

188.    The Debtor made at least $355,778.05 in unjustified and extracontractual payments to ETP (the "ETP Payments") as follows:

| Date | Payment Total |
|---|---|
| May 2016 | $36,374.15 |
| December 2016 | $10,678.08 |
| January 2017 | $6,183.78 |
| March 2017 | $1,477.51 |
| May 2017 | $6,670.48 |
| June 2017 | $2,458.54 |
| July 2017 | $4,773.87 |
| August 2017 | $8,656.02 |
| September 2017 | $8,755.82 |
| November 2017 | $19,082.53 |
| January 2018 | $11,963.53 |
| March 2018 | $12,934.44 |
| April 2018 | $8,723.14 |
| June 2018 | $4,830.00 |
| August 2018 | $3,196.08 |
| September 2018 | $3,372.50 |
| October 2018 | $20,837.51 |
| December 2018 | $1,553.89 |
| February 2019 | $5,853.24 |
| May 2019 | $13,819.34 |
| July 2019 | $7,129.61 |
| August 2019 | $4,423.87 |
| September 2019 | $7,525.59 |
| October 2019 | $1,381.90 |
| December 2019 | $3,996.04 |
| May 2020 | $37,163.97 |
| July 2020 | $16,298.72 |
| August 2020 | $7,809.00 |
| September 2020 | $8,026.80 |
| October 2020 | $6,098.95 |
| November 2020 | $926.24 |
| December 2020 | $3,922.76 |

54

| January 2021 | $4,211.33 |
|---|---|
| February 2021 | $4,630.77 |
| March 2021 | $4,478.25 |
| May 2021 | $21,562.40 |
| June 2021 | $5,998.62 |
| August 2021 | $10,191.00 |
| September 2021 | $7,807.78 |
| **TOTAL** | **$355,778.05** |

### The Chapter 7 Case

189.    On August 25, 2021, the United States Trustee filed a Motion Pursuant to 11 U.S.C.

§ 1112 to Dismiss the Case or Convert to Chapter 7 (the "Conversion Motion").  In support of the

Conversion Motion, the United States Trustee averred, *inter alia*:

a.    "[P]rior to the petition date the Debtor caused to be made transfers of

substantial value";

b.    "The Debtor has failed to timely file its financial operating reports since the

petition date.  The UST, creditors, and parties in interest are unable to examine the Debtor's post-

petition operations and determine whether the Debtor has otherwise complied with its fiduciary

obligations.  Further, the failure to comply with this duty makes it impossible to determine the

administrative expenses of the estate since this case was filed."; and

c.    "The Debtor has failed to file the Notice of Officer Compensation as

required by LBR 4002-1 disclosing any payments made since the filing date or contemplated being

made to the Debtor's officers."

190.    On October 13, 2021 (the "Conversion Date"), the Bankruptcy Court entered an

Order converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code

and, on October 14, 2021, the Trustee was appointed as the permanent Chapter 7 Trustee of the

Estate.

191.    Since her appointment, the Trustee has undertaken an investigation of the Debtor's affairs.

192.    The Defendants have actively obstructed the Trustee's investigation.

193.    As discussed herein, Defendants intentionally destroyed or stole the Debtor's emails and electronic files.

194.    The night before Millstone was set to take over the Debtor, documents stored in a safe located at 118 North Main were removed.  A forensic analysis of the Debtor's Wi-Fi system disclosed that a device named "Casey's Phone" logged into the Debtor's network at a time contemporaneous with the removal.

195.    Defendants Casey Parzych, Rittenburg, Baldwin, Festa, Culbertson, Uszenski, Best Bev, LLC, Can Man, EtOH Worldwide, LLC and AgTech VI have failed to cooperate with requests for information issued pursuant to Bankr. E.D.Pa. Local Rule 2004-1.

196.    Defendants instructed former debtor employees to sign non-disclosure agreements to conceal information relating to the operation of the Debtor's business.

197.    Former Debtor employees who did not cooperate with Defendants were harassed and intimidated.  By way of example, a chocolate phallus was sent to the family home of a former Debtor employee who chose to work for Millstone rather than join Defendants at the Best Bev Entities.

198.    On March 7, 2022, Millstone filed a proof of claim which confirms many of the foregoing allegations and establishes that the Defendants' wrongdoing caused substantial harm to the Estate by incurring debts and making expenditures on behalf of the Pilfering Entities, transferring the Debtor's equipment to the Pilfering Entities, and ultimately diminishing the value of the Debtor in the eyes of potential Rule 363 purchasers.

56

181

V.      **CLAIMS**

### FIRST CLAIM – BREACH OF FIDCUIARY DUTY
### (Against the Insider Defendants)

199.    The allegations set forth above are incorporated herein by reference as if set forth
at length.

200.    The Insider Defendants, as officers (Defendants Casey Parzych, Rittenburg, Festa,
and Culbertson), members (Defendants Parzych, Rittenburg, and Culbertson), employees/agents
(all Insider Defendants), and/or legal counsel (Defendant Boyer) to the Debtor, owed fiduciary
duties of care, loyalty, and good faith to the Debtor.

201.    The duty of loyalty obligated the Insider Defendants to commit themselves to the
business of the Debtor for the purpose of promoting the interests of the Debtor and not themselves
or their other affiliated entities.

202.    The duty of loyalty is breached, *inter alia*: (a) when a fiduciary fails to act in the
face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities;
(b) when a fiduciary "abdicates" their fiduciary responsibilities; (c) when a fiduciary acts in bad
faith; and/or (d) when a fiduciary engages in self-dealing.

203.    The duty of care is breached, *inter alia*: (a) when a fiduciary engages in an irrational
decision-making process; and (b) when the conduct of a fiduciary rises to the level of gross
negligence.

204.    The Insider Defendants breached their fiduciary duties to the Debtor by, among
other things:

a.      Making, or allowing to be made, significant unauthorized or improper
transfers;

b.      Causing the Debtor to enter into transactions with affiliates and family

57

members of its managers and members without proper authorization;

        c.      Engaging in numerous acts of self-dealing and theft for the benefit of the Pilfering Entities;

        d.      Causing or allowing the Debtor's funds to be commingled with the funds of other persons or entities;

        e.      Using or allowing to be used the Debtor's funds for the use of the Pilfering Entities or the personal use of Defendants Casey Parzych and Rittenburg;

        f.      Failing to maintain and preserve the Debtor's assets and records, including, among other things, intentionally destroying or stealing Debtor emails and electronic records;

        g.      Failing to ensure that adequate internal controls and reporting systems were in place and property utilized to mitigate against the misappropriation of Debtor funds and resources;

        h.      Failing to maintain an adequate accounting system;

        i.      Failing to hold regular meetings of the Board of Managers;

        j.      Failing to conduct or maintain written records of meetings, votes, resolutions, or written consents;

        k.      Failing to keep, or cause to be kept, accurate, complete, and proper books, records, and accounts pertaining to Debtor's affairs;

        l.      Conspiring to attempt to sell Debtor or its assets to the Sheehan Entities at a fraction of its true value, and in so doing sabotaging offers from other interested purchasers;

        m.      Grossly mismanaging Debtor's Chapter 11 Case, including allowing representatives of the Sheehan Entities to manage the bankruptcy process to the detriment of the Debtor and its estate;

n.      Destroying Debtor's attorney-client privilege by including the Wynk

Entities and Sheehan Entities in numerous communications;

o.      Causing the Debtor to operate in an illegal fashion in violation of tax laws

and other regulatory obligations;

p.      Conspiring with the Sheehan Entities, Finland Leasing, and Gary Parzych

to chill bidding at the Debtor's Section 363 sale; and

q.      Engaging in other acts of fraud, gross negligence, or other material breaches

of their fiduciary duties as set forth herein.

205.    At all times relevant hereto, the Insider Defendants engaged in self-dealing,

prioritizing their own interests and the interests of their affiliates over the interests of the Debtor.

206.    The Insider Defendants and their affiliates received millions of dollars for their

roles in facilitating and implementing the breaches of fiduciary duty, and they should be required

to disgorge and repay those ill-gotten gains.

207.    The conduct of the Insider Defendants, as aforesaid, was intentional, reckless, and

sufficiently outrageous as to justify the imposition of punitive damages.

208.    As a result of the many breaches of fiduciary duties by the Insider Defendants as

set forth herein, the Debtor has suffered damages in an amount to be determined at trial, but which

exceeds the sum of $10 million.

### SECOND CLAIM – AIDING & ABETTING BREACH OF FIDCUIARY DUTY
**(Against All Defendants)**

209.    The allegations set forth above are incorporated herein by reference as if set forth

at length.

210.    As set forth in detail in this Complaint, at all times relevant hereto, the Insider

Defendants owed the Debtor fiduciary duties of care, loyalty, and good faith and repeatedly

breached these duties.

211.    Each of the Defendants aided and abetted these breaches of fiduciary duty.

212.    Each of the Defendants had knowledge that the Insider Defendants' conduct was a breach of their fiduciary duties owed to the Debtor.

213.    Each of the Defendants substantially assisted and/or encouraged the Insider Defendants to breach their fiduciary duties owed to the Debtor.

214.    To the extent that any Insider Defendant might be found not to have had a fiduciary duty to the Debtor at the time of the misconduct complained of herein, each such Insider Defendant is nevertheless liable for having aided and abetted the breach of fiduciary duties by one or more of the other Insider Defendants possessing such duties at the relevant times.

215.    The entity Defendants' substantial assistance and/or encouragement is demonstrated by, *inter alia*, their role as the entities through which the individual Defendants siphoned money away from the Debtor, and the improper benefits they received because of that misconduct.

216.    Defendants received millions of dollars for their roles in aiding and abetting the breaches of fiduciary duty, and they should be required to disgorge and repay those ill-gotten gains.

217.    The conduct of the Defendants, as aforesaid, was intentional, reckless, in bad faith, and sufficiently outrageous as to justify the imposition of punitive damages.

218.    As a result of each Defendant's aiding and abetting of the breaches of fiduciary duty by the Fiduciary Defendants as set forth herein, the Debtor has suffered damages in an amount to be determined at trial, but which exceeds the sum of $10 million.

### THIRD CLAIM – CORPORATE WASTE
**(Against the Insider Defendants)**

219.    The allegations set forth above are incorporated herein by reference as if set forth

at length.

220.    The funds generated by the Pilfering Entities' use of the Debtor's assets constituted valuable assets of the Debtor which, if properly handled and collected by the Debtor, would have generated significant revenue and profits for the Debtor.

221.    By using the Pilfering Entities to funnel revenues and profits away from the Debtor and its creditors and to the Defendants, the Insider Defendants deprived the Debtor of millions of dollars.

222.    The Insider Defendants' waste of the Debtor's assets was commercially unreasonable and served no rational business purpose.

223.    As a result of the waste of Debtor's assets, the Insider Defendants are liable for the damages associated with their misconduct.

### FOURTH CLAIM – DECLARATORY RELIEF
### (ALTER EGO, PIERCING THE CORPORATE VEIL
### AND/OR SUCCESSOR LIABILITY)
### (Against All Defendants)

224.    The allegations set forth above are incorporated herein by reference as if set forth at length.

225.    As set forth in detail in this Complaint, the corporate form should be disregarded as between the Pilfering Entities and the individual Defendants, on the one hand, and the Debtor, on the other, because Defendants ignored the corporate boundaries of the Debtor in favor of their own interests and over the interests of the Debtor and its creditors, as part of a scheme to enrich themselves at the expense of the Debtor and its creditors.

226.    Defendants exercised control over the Debtor to such a degree that the Debtor operated as nothing more than their alter ego, tool, and business conduit.

227.    Defendants dominated the Debtor inequitably and to the detriment of the Debtor

and its creditors by, among other actions, preventing the Debtor from paying its legitimate debts while siphoning company funds for the benefit of the Pilfering Entities and their principals, the individual Defendants.

228.    Defendants operated the Pilfering Entities as if they were the alter ego and mere continuation of the Debtor, with Debtor management and employees making all decisions for and conducting the daily operation of the Pilfering Entities utilizing the physical plant and equipment of the Debtor.

229.    The Pilfering Entities utilized the same employees, telephone number and address as the Debtor.

230.    Any intercompany transactions between the Debtor and the Pilfering Entities were not at arm's length, were not properly documented, and operated to the severe disadvantage of the Debtor.

231.    Defendants intentionally failed to keep adequate books and records rendering it impossible to disentangle the affairs of the Debtor from those of the Pilfering Entities.

232.    Due to Defendant's blatant disregard of corporate formalities and Defendants' explicit statements as set forth herein, Debtor's employees, vendors, and customers understood Debtor and the Pilfering Entities to be one and the same, and injustice would result if the assets of the Pilfering Entities and the other Defendants were not available to satisfy the claims of Debtor's non-insider creditors.

233.    The Pilfering Entities were simply a façade for the individual Defendants and utilized for the sole purpose of siphoning funds and resources from the Debtor.

234.    The Pilfering Entities constitute a mere continuation of the Debtor and are thus liable for the Debtor's debts as the Debtor's successor.

235.    Accordingly, the interests of justice demand the entry of a judgment piercing the corporate veils, declaring that the Pilfering Entities and the individual Defendants are each the alter egos of the Debtor and holding them jointly and severally liable for all liabilities of the Debtor's Estate.

## FIFTH CLAIM – UNJUST ENRICHMENT
### (Against All Defendants)

236.    The allegations set forth above are incorporated herein by reference as if set forth at length.

237.    As set forth in detail in this Complaint, each of the Defendants was enriched and received economic and other benefits from the Debtor without justification, including, but not limited to, the following:

a.    The Pilfering Entities use of the Debtor's facilities, equipment, personnel, inventory, and intellectual property without payment of fair compensation therefor;

b.    The Pilfering Entities receipt of revenue from the sale of CBDelight, Faber Hand Sanitizer, Wynk Seltzer, and other products manufactured by the Debtor or with the use of the Debtor resources;

c.    Finland Leasing and ETP's receipt of extracontractual and unjustified payments from the Debtor (i.e., the Finland Lease Overpayments and the ETP Payments);

d.    Defendant Casey Parzych's and Rittenburg's receipt of the Parzych/Rittenburg Purchases; and

e.    Upon information and belief, each of the Defendants have received monetary payments from the Pilfering Entities which were derived with the benefit of the Debtor's resources.

238.    Defendants have unjustly retained benefits to the detriment of the Debtor's Estate

and its creditors.

239.     The Debtor was impoverished because of Defendants' misconduct, which resulted in a massive share of Debtor's assets and profits being siphoned off for the benefit of the Defendants and the Pilfering Entities, with the Estate being left with millions of dollars in unpaid debts.

240.     There is no justification for the Defendants' abuse of the Debtor for the purpose of self-dealing and other misconduct.

241.     Accordingly, the Trustee is entitled to a judgment against each of the Defendants compelling them to disgorge and return the amounts by which they were unjustly enriched.

## SIXTH CLAIM – AN ACCOUNTING
### (Against All Defendants)

242.     The allegations set forth above are incorporated herein by reference as if set forth at length.

243.     An accounting is an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due to as a result.

244.     As set forth in detail in this Complaint, the Insider Defendants failed to maintain complete and accurate books and records of the benefits conferred by the Debtor on the Pilfering Entities.

245.     Moreover, except for files inadvertently left on a Debtor hard drive, the Insider Defendants either destroyed or stole those Debtor books and records which do exist.

246.     Defendants took extraordinary and illegal steps to cover their tracks, including, for example, Defendant Festa's forgery of vendor invoices to conceal the shipment of goods to the Best Bev Entities and Defendant Casey Parzych's false testimony at a Section 341 meeting.

247.     Upon information and belief, Defendants possess certain books, records, and other

64

electronic data of the Debtor.

248.    The Trustee is entitled to an accounting setting forth the Debtor's transfers to and transactions with the Defendants.

249.    Accordingly, the Trustee seeks the entry of a judgment directing the Defendants to perform a full and accurate accounting of all Debtor resources which were diverted to or for the benefit of the Defendants, as well as revenues received using Debtor resources, and to remit to the Trustee all funds owed to the Estate as a result.

### SEVENTH CLAIM – CONSTRUCTIVE TRUST
**(Against All Defendants)**

250.    The allegations set forth above are incorporated herein by reference as if set forth at length.

251.    A constructive trust is an equitable remedy to redress a wrong.  When one party has obtained the property of another that in equity and good conscience it ought not to possess, a constructive trust will be imposed.

252.    As set forth in detail herein, the Pilfering Entities were formed, managed, and financed using the resources of the Debtor, with full knowledge of the Debtor's obligations to its creditors, and with the active participation of the Debtor's fiduciaries.

253.    The Pilfering Entities were directly and materially enriched by virtue of such unfair and unconscionable conduct, at the expense of the Debtor and its creditors.

254.    Accordingly, a constructive trust should be imposed on the assets of the Pilfering Entities for the benefit of the Debtor's bankruptcy estate.

## EIGHTH CLAIM – BREACH OF CONTRACT
**(Against Defendants Casey Parzych and Rittenburg, for Monetary Damages)**
**(Against the Pilfering Entities, for a Declaratory Judgment)**

255.    The allegations set forth above are incorporated herein by reference as if set forth

at length.

256.    Section 9.17 of Debtor's Amended and Restated Operating Agreement As

Amended and Restated as of April 16, 2019 and Debtor's Amended and Restated Operating

Agreement As Amended and Restated as of March 26, 2021 state as follows (the "Assignment"

provision):

> 9.17    <u>Assignment</u>.
>
> (a) The term "Work Product" means all patents and patent applications, all inventions, innovations, improvements, packaging improvements, alcohol/spirit/liqueur formulations, packaging inventions and/or improvements, packaging developments, technologies, similar technologies, developments, methods, designs, analyses, drawings, reports, creative works, discoveries, software, computer programs, modifications, enhancements, know-how, product, formula or formulations, marketing and sales information, concepts and ideas, and all similar or related information (in each case whether or not patentable), all copyrights and copyrightable works, all trade secrets, Information, and all other intellectual property and intellectual property rights that (in any case above) are conceived, reduced to practice, created, developed or made by a Member either alone or with others, in the course of providing the services to the Company.
>
> (b) Each Member hereby agrees that (and hereby assigns) all Work Product will be the exclusive property of the Company, and in consideration of this Agreement, without further compensation, hereby assigns, and (as necessary) agrees to assign, to the Company all right, title, and interest to all Work Product that: (i) relates to any and all current and future aspects of the Company's Business (defined as the selling, making, marketing, distributing or otherwise engaging in the liqueur, spirits, carbonated beverage, seltzer, general beverage, or alcoholic beverage business) or (ii) is conceived, created, reduced to practice, developed, or made entirely or in any part: (a) during the time any Member performs (or performed) services for the Company; or (b) using any equipment,

66

supplies, facilities, assets, materials, information (including, without limitation, Information) or resources of the Company (including, without limitation, any intellectual property rights of the Company);

(c) If for any reason the foregoing assignment is determined to be unenforceable, each Member grants to the Company a perpetual irrevocable, worldwide, royalty-free, exclusive, sub-licensable right and license to exploit and exercise all such Work Product; and

(d) Each Member shall promptly disclose Work Product to the CEO of the Company and perform all actions reasonably requested by the Company (whether during or after the service with the Company) to establish and confirm the ownership and proprietary interest of the Company in any Work Product (including, without limitation, the execution of assignments, consents, powers of attorney, applications and other instruments). Each Member agrees to assist the Company in obtaining any patent for, copyright on or other intellectual-property protection for the Work Product, and to execute and deliver or otherwise provide such documentation and provide such other assistance as is necessary to or reasonably requested by the Company or its agents or counsel to obtain such patent, copyright, or other protection. Each Member shall maintain adequate written records of the Work Product, in such format as may be specified by the Company, and make such records available to, as the sole property of, the Company at all times. Each Member shall not file any patent or copyright applications related to any Work Product except with the written consent of the Company's CEO.

257.    Defendants Casey Parzych and Rittenburg are "Members" of the Debtor as that term is defined in each pertinent document, and were bound by Debtor's operating agreement which contains the Assignment Provision.

258.    As set forth in detail above, Defendants Casey Parzych and Rittenburg generated Work Product for the benefit of the Pilfering Entities that: 1) related to the Debtor's Business (i.e., selling, making, marketing, distributing or otherwise engaging in the liqueur, spirits, carbonated beverage, seltzer, general beverage, or alcoholic beverage business); 2) was conceived, created, reduced to practice, developed, or made entirely or in any part during the time Parzych and

67

Rittenburg were performing services for the Debtor; and 3) was conceived, created, reduced to practice, developed, or made entirely or in any part using the equipment, supplies, facilities, assets, materials, information and resources of the Debtor.

259. Defendants Casey Parzych and Rittenburg have not disclosed or assigned Work Product to the Debtor, in breach of the Assignment Provision.

260. The Pilfering Entities, with knowledge of the Assignment Provision, possess Work Product which was generated entirely or partially by Defendants Casey Parzych and Rittenburg, including, but not limited to, the Work Product associated with the following:

    a.   The Wynk Seltzer and CBDelight products;

    b.   The Best Bev Entities' branding and brands;

    c.   United States Design Patent Nos. US D918,708 S, US D931,672 S;

    d.   United States Patent Application Publication No. US 2022/0264947 and Patent Cooperation Treaty Application No. PCT/US2020/043055;

    e.   United States Patent Application Publication No. US 2022/0232859 and Patent Cooperation Treaty Application No. PCT/US2020/043034;

    f.   Unites States Patent Application No. 63/174,233 and Patent Cooperation Treaty Application No. PCT/US2022/024394;

    g.   United States Patent Application No. 62/979,200 and Patent Cooperation Treaty Application No. PCT/US2021/018509;

    h.   United States Patent Application No. 62/903,260 and Patent Cooperation Treaty Application No. PCT/US2020/051783;

    i.   United States Patent Application No. 62/847,019 and Patent Cooperation Treaty Application No. PCT/US2020/032590;

    j.   United States Patent Application No. 62/979,233 and Patent Cooperation Treaty Application No. PCT/US2021/018532;

    k.   United States Patent Application No. 62/847,023 and Patent

Cooperation Treaty Application No. PCT/US2020/032593;

l.   United States Patent Application No. 62/903,293 and Patent
     Cooperation Treaty Application No. PCT/US2020/051803; and

m.  United States Trademark Serial Nos. 97263015, 90889744,
     90674624, 97883067, 97174708, 97184527, 97184492, 97600495,
     97600483, 88639939, 88840793, 88389825, 88421795, 88389949.

261.    Defendants Casey Parzych's and Rittenburg's failure to comply with the terms of
the Assignment Provision have caused damages to the Debtor.

262.    Accordingly, the Trustee seeks entry of a judgment against Defendants Casey
Parzych and Rittenburg for damages caused to the Debtor arising out of the breach of the
Assignment Provision, or Defendants' wrongful use of Debtor property.

263.    The Trustee also seeks entry of a declaratory judgment against the Pilfering Entities
assigning back to the Debtor all Work Product in the possession or control of the Pilfering Entities.

**NINTH CLAIM – BREACH OF CONTRACT**
**(Against Defendant Finland Leasing)**

264.    The allegations set forth above are incorporated herein by reference as if set forth
at length.

265.    As set forth in detail *supra*, the Finland Lease Overpayments and ETP Payments
were made in violation of the terms of the Finland Lease.

266.    Accordingly, judgment should be entered in favor of the Trustee and against
Finland Leasing for the full amount of the Finland Lease Overpayments and ETP Payments.

**TENTH CLAIM – EQUITABLE SUBORDINATION**
**(Against All Defendants)**

267.    The allegations above are incorporated herein by reference as if set forth at length.

268.    Defendants have engaged in inequitable conduct which has resulted in injury to
Debtor's creditors and conferred unfair advantages on Defendants and, as such, equitable

69

Case 23-02027-mdc Doc 1-1 Filed 08/05/23 Entered 09/12/23 05:33:29 Desc
Case 23-01047-mdc Doc 36-1 Filed 09/12/23 Page 29 of 249 Desc
Exhibit 1 - Motion for Withdrawal of Reference    Page 86 of 98

subordination of any/all claims of the Defendants would not be inconsistent with the provisions of the bankruptcy code.

269.    As a result of the wrongdoing of the Defendants, as aforesaid, any/all claims of the Defendants – including claims heretofore or hereinafter filed – against the Debtor should be equitably subordinated below the rights of all other creditors and innocent members of the Debtor, pursuant to 11 U.S.C. § 510(c).

### ELEVENTH CLAIM – TURNOVER
### Pursuant to 11 U.S.C. § 542
### (Against all Defendants)

270.    The allegations set forth above are incorporated herein by reference as if set forth at length.

271.    The following items in the possession of the Defendants are property of the Debtor's estate which the Trustee may use in her administration of this bankruptcy case, and have significant informational and/or monetary value to the estate:

a.    Debtor's electronic records, email, and other records which relate to the Debtor's property and financial affairs which, as discussed in detail above, were ostensibly deleted by Defendant Festa but which, upon information and belief, were instead transferred to and remain in the possession of Defendants;

b.    All Debtor emails and other documents which are being stored on or are otherwise in the possession of the Defendants;

c.    The extracontractual Finland Lease Overpayments and ETP Payments;

d.    The intellectual property and Work Product discussed in Claim Eight, *supra*; and

e.    All property otherwise set forth above which belonged to the Debtor but

was improperly transferred to the Pilfering Entities.

272.    Pursuant to 11 U.S.C. § 542, the above listed items should be immediately turned over to the estate.

### TWELFTH  CLAIM – AVOIDANCE AND RECOVERY OF POSTPETITION TRANSFERS
### Pursuant to 11 U.S.C. §§ 549 and 550
### (Against the Best Bev Defendants)

273.    The allegations set forth above are incorporated herein by reference as if set forth at length.

274.    Defendants caused the Debtor to make the Post Petition Best Bev Transfers after commencement of the Debtor's bankruptcy case and without authorization by the Court or under the Bankruptcy Code.

275.    The Post Petition Best Bev Transfers are thus avoidable by the Trustee pursuant to 11 U.S.C. § 549 and their value recoverable by the Trustee pursuant to 11 U.S.C. § 550.

### THIRTEENTH CLAIM – AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS
### Pursuant to 11 U.S.C. §§ 547(b) and 550
### (Against Defendants Finland Leasing, ETP, and Boyer)

276.    The allegations set forth above are incorporated herein by reference as if set forth at length.

277.    As further set forth herein, Defendants Finland Leasing, ETP, and Boyer are insiders of the Debtor by virtue of their close relationships with the Debtor and the fact that their dealings with the Debtor were not at arm's length.

278.    The Total Finland Leasing Payments and the ETP Payments were transfers of property, or of an interest in property, of the Debtor to and/or for the benefit of Finland Leasing and ETP.

279.    Some of the Total Finland Leasing Payments and the ETP Payments were made within one year of the Petition Date, as previously set forth.

280.    The Total Finland Leasing Payments and the ETP Payments made within the one-year preference period were made at a time while the Debtor was insolvent.

281.    The Total Finland Leasing Payments and the ETP Payments allowed Finland Leasing and ETP to receive more than they would have received if the payments had not been made and they received payment of those debts to the extent provided by filing a claim in this proceeding.

282.    As discussed in detail *supra*, the Debtor was contractually obligated to pay Finland Leasing $2,050.00 per month in rent.  Accordingly, $2,050.00 of each month's Total Finland Leasing Payments within the year preceding the Petition Date were made on account of antecedent debt owed by the Debtor to Finland Leasing pursuant to the Finland Lease and constitute avoidable preferential transfers pursuant to Section 547 of the Bankruptcy Code.

283.    While the Trustee alleges that there is no contractual basis for any payment in excess of $2,050.00 per month to Finland Leasing (and thus that those amounts must be returned to the Debtor as damages for a breach of contract or unjust enrichment, or as a matter of statutory turnover), to the extent that the Court finds that any of the Finland Lease Overpayments made during the one year preference period were valid antecedent debts, then those payments were preferential as well.

284.    While the Trustee alleges that there is no valid contractual basis for any of the ETP Payments (and thus that those amounts must be returned to the Debtor as a matter of damages for unjust enrichment, or as a matter of statutory turnover), to the extent that the Court finds that any of the ETP Payments made during the one-year preference period were valid antecedent debts,

then those payments were preferential as well.

285.    On March 19, 2021, Defendant Boyer received a $75,000.00 wire transfer from the Debtor (the "Boyer Payment").  Upon information and belief, the Boyer Payment was on account of an antecedent debt for legal services ostensibly provided for the Debtor.

286.    The Trustee and her professionals have conducted reasonable due diligence into potential affirmative defenses and have concluded that those defenses are without merit given the nature of and circumstances surrounding the portion of the Total Finland Leasing Payments, the ETP Payments, and the Boyer Payment discussed in this Claim, including, but not limited to, the fact that the Debtor received no contemporaneous value in exchange for the payments and the payments were not made according to ordinary business terms, but instead to enrich insiders of the Debtor.

287.    Accordingly, the Boyer Payment as well as that portion of the Total Finland Leasing Payments and the ETP Payments subject to the aforementioned conditions are avoidable by the Trustee pursuant to 11 U.S.C. § 547 and their value recoverable by the Trustee pursuant to 11 U.S.C. § 550.

## FOURTHEENTH CLAIM – AVOIDANCE AND
## RECOVERY OF FRAUDULENT TRANSFERS
### Pursuant to 11 U.S.C. §§ 548 and 550
### (Against Defendants Finland Leasing and ETP)

288.    The allegations set forth above are incorporated herein by reference as if set forth at length.

289.    The Finland Lease Overpayments and ETP Payments were transfers of property, or of an interest in property, of the Debtor to and/or for the benefit of Defendants Finland Leasing and ETP.

73

290.    The Debtor made the contractually unjustified Finland Lease Overpayments and ETP Payments with the actual intent to hinder, delay and/or defraud the Debtor's creditors.

291.    Accordingly, to the extent they were made within two years of the Petition Date, the Finland Lease Overpayments and ETP Payments constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A).

292.    Due to the Defendants' misconduct as detailed herein, the Debtor was insolvent in the two years prior to the Petition Date.

293.    The Debtor did not receive reasonably equivalent value for the Finland Lease Overpayments and the ETP Payments.

294.    Accordingly, to the extent they were made within two years of the Petition Date, the Finland Lease Overpayments and ETP Payments constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

## VI.    RELIEF REQUESTED

WHEREFORE, Plaintiff Bonnie Finkel, Chapter 7 Trustee for the estate of Midnight Madness Distilling LLC, demands judgment in her favor and against Defendants, jointly and severally, for:

(a) Compensatory damages in excess of $10 million;

(b) Punitive damages in an amount to be determined by the jury;

(c) Avoidance and recovery of fraudulent, preferential, and unauthorized post-petition transfers as set forth herein;

(d) the return of estate property as set forth herein;

(e) Equitable subordination of any and all claims of any Defendant against the Debtor below the rights of all other creditors of the Debtor;

74

(f)  A constructive trust on the assets of the Pilfering Entities for the benefit of the

Debtor's bankruptcy estate;

(g) The entry of declaratory judgments as set forth above;

(h)  Pre-Judgment and Post-Judgment Interest, reasonable attorneys' fees, and costs;

and

(i)  Such additional relief as this Court deems just.

## VII.    **JURY DEMAND**

The Trustee demands a jury trial before an Article III Judge on all claims asserted in this

Complaint that are triable to a jury under the Constitution and applicable law.


Dated: June 15, 2023                        /s/ Steven M. Coren
                                            STEVEN M. COREN
                                            ANDREW J. BELLI
                                            **COREN & RESS, P.C.**
                                            Two Commerce Square, Suite 3900
                                            2001 Market Street
                                            Philadelphia, PA 19103
                                            Tel: (215) 735-8700
                                            Fax: (215) 735-5170
                                            scoren@kcr-law.com

                                            *Counsel for Plaintiff*
                                            *Bonnie Finkel, Chapter 7 Trustee*

**EXHIBIT 2**

**Email Exchange Between Trustee's Counsel and Counsel for Moving Defendants**

**Packman, Stephen M.**

| | |
|---|---|
| **From:** | Steven Coren <SCoren@kcr-law.com> |
| **Sent:** | Thursday, August 10, 2023 5:41 PM |
| **To:** | Jeffrey Kurtzman |
| **Cc:** | Packman, Stephen M.; Andrew Belli |
| **Subject:** | [EXT MAIL] RE: Finkel v. Parzych, et al. |

Jeff:

We have considered the venue issue and wish to keep the matter in the bankruptcy court until it is ready for a jury trial, which of course will take place in the District Court.

Regards,

STEVEN

STEVEN M. COREN
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Office: (215) 735-8700
Cell: (215) 498-8700
E-mail: scoren@kcr-law.com
Website: www.kcr-law.com

**COREN|RESS**
ATTORNEYS AT LAW

---

**From:** Jeffrey Kurtzman <kurtzman@kurtzmansteady.com>
**Sent:** Thursday, August 10, 2023 11:17 AM
**To:** Steven Coren <SCoren@kcr-law.com>
**Cc:** Packman, Stephen (spackman@archerlaw.com) <spackman@archerlaw.com>
**Subject:** Finkel v. Parzych, et al.

---

**EXTERNAL EMAIL.**

Steve, it was nice to speak with you this morning.  As related, my firm represents Gary Parzych, Ryan Uszenski, Can Man, LLC, Finland Leasing Co., Inc. and Eugene T. Parzuych, Inc. in the above-referenced adversary proceeding.

In reviewing the complaint, I note that, while the plaintiff alleges that the bankruptcy court has jurisdiction over the adversary proceeding, she demands a jury trial and does not consent to the entry of a final judgment by that court.  For this and other reasons, I suggested that efficiency may be served by transferring the case to the district court.  I have not discussed this issue with Steve Packman, who is copied here.

Secondly, I requested an extension of my clients' deadline to answer or move with respect to the complaint to September 15, as to which you graciously agreed.

If you and your partner wish to discuss the venue issue, please let Steve and me know.  Thanks.

Jeffrey Kurtzman, Esquire
KURTZMAN | STEADY, LLC
555 City Avenue | Suite 480 | Bala Cynwyd, PA 19004
Main: (215) 883-1600 | Direct: (215) 839-1222 | Mobile: (215) 715-2814
kurtzman@kurtzmansteady.com

101 N. Washington Avenue | Suite 4A | Margate, NJ 08402
Main: (856) 428-1060 | Fax: (609) 482-8011

2 Kings Highway West | Suite 102 | Haddonfield, NJ 08033
Main:  (856) 428-1060 | Fax: (609) 482-8011

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Miscellaneous Matter No._____

| | |
|---|---|
| **In re:** | |
| **MIDNIGHT MADNESS DISTILLING LLC,** | **CHAPTER 7** |
| **Debtor.** | **Case No. 21-11750-MDC** |
| | |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,** | **Adv. No. 23-00047-MDC** |
| **Plaintiff,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,** | |
| **Defendants.** | |

## ORDER

AND NOW, this _____ day of September, 2023, upon consideration of the Motion of Moving Defendants for Withdrawal of the Reference, it is hereby ORDERED that the Motion is GRANTED and that:

1.  Reference is withdrawn in connection with the above Adversary Proceeding; and

    2.   All matters in said Adversary Proceeding shall be transferred to the United States

District Court for the Eastern District of Pennsylvania, to be set down for trial as a civil action in

the ordinary course.


                              BY THE COURT:


_____
                                                     J.

227695611 v1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Miscellaneous Matter No._____

| | |
|---|---|
| **In re:** | |
| **MIDNIGHT MADNESS DISTILLING LLC,** | **CHAPTER 7** |
| **Debtor.** | **Case No. 21-11750-MDC** |

**BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**

        **Plaintiff,**

      **v.**

**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**

        **Defendants.**

**Adv. No. 23-00047-MDC**

**<u>JURY TRIAL DEMANDED</u>**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 5, 2023, he caused a true and correct copy of the foregoing Motion for withdrawal of the reference, upon Plaintiff's counsel and the Office of the United States Trustee, via email and overnight courier, and upon all parties in the bankruptcy case via the Court's CM/ECF electronic filing system.

227695611 v1

Dated: September 5, 2023

*/s/ Mariam Khoudari*
STEPHEN M. PACKMAN
MARIAM KHOUDARI
**ARCHER & GREINER, P.C.**
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
Tel: (215) 963-3300
Fax: (215) 963-9999
spackman@archerlaw.com
mkhoudari@archerlaw.com

*Counsel for Moving Defendants*

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>       **Debtor.** | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>      **Defendants.** | **Adv. No. 23-00047-MDC**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

**ORDER**

AND NOW, this \_\_\_\_\_ day of September, 2023, upon consideration of the Emergency

Motion of Moving Defendants for an Order to Stay Proceedings and/or for Other Related Relief

Procedural History and Parties, it is hereby ORDERED that the Motion is GRANTED and that:

1.      The subject adversary proceeding number 23-00047-MDC is hereby stayed un

further order of this Court.

_____
MAGDELINE D. COLEMAN,
CHIEF UNITED STATES BANKRUPTCY JUDGE

227696056 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>            **Debtor.** | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>            **Plaintiff,**<br><br>        **v.**<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>            **Defendants.** | **Adv. No. 23-00047-MDC**<br><br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2023, he caused a true and correct copy of the foregoing Emergency Motion to stay proceedings, upon Plaintiff's counsel and the Office of the United States Trustee, via email and overnight courier, and upon all parties in the bankruptcy case via the Court's CM/ECF electronic filing system.

227696056 v1

Dated: September 5, 2023

*/s/ Mariam Khoudari*
STEPHEN M. PACKMAN
MARIAM KHOUDARI
**ARCHER & GREINER, P.C.**
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
Tel: (215) 963-3300
Fax: (215) 963-9999
spackman@archerlaw.com
mkhoudari@archerlaw.com

*Counsel for Moving Defendants*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>Debtor. | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>Defendants. | **Adv. No. 23-00047-MDC**<br><br><br>**JURY TRIAL DEMANDED** |

**APPLICATION OF MOVING DEFENDANTS FOR AN
ORDER SCHEDULING EXPEDITED HEARING PURSUANT TO LOCAL
BANKRUPTCY RULE 5070-1 ON MOVING DEFENDANTS' EMERGENCY
MOTION FOR AN ORDER STAYING PROCEEDINGS
AND/OR FOR OTHER RELATED RELIEF**

TO:   HONORABLE MAGDELINE D. COLEMAN,
        CHIEF UNITED STATES BANKRUPTCY JUDGE:

Plaintiff, Bonnie B. Finkel (the "Plaintiff"), is the Chapter 7 Trustee for the debtor,

Midnight Madness Distilling LLC f/k/a Theobald and Oppenheimer, LLC d/b/a Faber Distilling

(the "Debtor"). Plaintiff filed an adversary proceeding (the "Adversary Proceeding" and the "Complaint") against Defendants on June 15, 2023. On September 5, 2023, moving defendants herein (the "Moving Defendants") filed a Motion with the United States District Court for the Eastern District of Pennsylvania (the "District Court") requesting that the District Court withdraw its reference with respect to the Complaint (the "Withdrawal Motion"). The Plaintiff has granted all defendants until September 15, 2023 to respond to the Complaint.

Moving Defendants are Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly Festa; Ashleigh Baldwin; Michael Boyer; R.F. Culbertson; Polebridge, LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; Etoh Worldwide, LLC; and Canvas 340, LLC.

Moving Defendants hereby respectfully submit an application (the "Application"), by and through their undersigned attorneys, for an order pursuant to Local Bankruptcy Rule 5070-1, scheduling an expedited hearing on their motion for an order to stay the subject "Adversary Proceeding" (the "Stay Motion"), until such time as the District Court determines the Withdrawal Motion.  In Support thereof, the Moving Defendants respectfully represent as follows:

## **BACKGROUND**

1.      On June 21, 2021, the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). [Dkt No. 1].

2.      On October 13, 2021, this Court entered an order (the "Conversion Order") converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. [Dkt. No. 191].

3.      Thereafter, the Plaintiff was appointed trustee of the Debtor's estate.

4.      The Withdrawal Motion asserts, inter alia, that (1) the Adversary Proceeding is in its infancy and raises substantially more non-core issues than bankruptcy issues; (2) venue is appropriate in this District pursuant to 28 U.S.C. § 1409(a), since Plaintiff has demanded a jury trial before an Article III judge in connection with all claims asserted that are triable to a jury under the Constitution and applicable law; and (3) Plaintiff has not consented to entry of final judgment or adjudication by this Honorable Court.

5.      Contemporaneously herewith, Moving Defendants have filed the Stay Motion, and are requesting an expedited hearing thereon for the reasons set forth herein.

## THE RELIEF REQUESTED AND THE REASONS THEREFOR

6.      Moving Defendants respectfully submit that expedited consideration of the Stay Motion is appropriate because there will be substantial prejudice to the Moving Defendants if they are forced to respond to the Complaint, by September 15, 2023, prior to a decision on the Withdrawal Motion. Judicial economy warrants a stay of the Adversary Proceeding pending the District Court determining which Court will litigate the matter. Moreover, there is no prejudice to Plaintiff as the case will proceed in District Court, should the Withdrawal Motion be granted, or here, but there is no immediate or compelling reason for it to proceed here until the District Court decides the Withdrawal Motion.

7.      Accordingly, Moving Defendants request that this Court schedule a hearing on the Stay Motion on Thursday, September 7, 2023, or such other date and time on which the Court is available.

8.      A proposed form of order has been submitted herewith for the Court's consideration.

227696028 v1

## CERTIFICATION REGARDING CONSULTATION

9.      Pursuant to L.B.R. 5070(f)(1), the undersigned counsel for Moving Defendants have consulted with Steven Coren, counsel for Plaintiff regarding expedited consideration of the Motion.

10.     Mr. Coren's colleague, Andrew Belli, has indicated that Plaintiff does not consent to the expedited consideration of the Motion.

11.     Moving Defendants propose to serve any order entered by this Court, granting the Application, together with the Stay Motion, upon counsel to the Plaintiff, by email and overnight courier and upon parties in the bankruptcy case by the Court's CM/ECF, within one business day after the entry of such order.


Dated: September 5, 2023        */s/ Mariam Khoudari*
                                STEPHEN M. PACKMAN
                                MARIAM KHOUDARI
                                **ARCHER & GREINER, P.C.**
                                Three Logan Square
                                1717 Arch Street, Suite 3500
                                Philadelphia, PA 19103
                                Tel: (215) 963-3300
                                Fax: (215) 963-9999
                                spackman@archerlaw.com
                                mkhoudari@archerlaw.com

                                *Counsel for Moving Defendants*

4

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>Debtor. | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>Defendants. | **Adv. No. 23-00047-MDC**<br><br><br>**JURY TRIAL DEMANDED** |

## ORDER SCHEDULING EXPEDITED HEARING ON EMERGENCY MOTION OF MOVING DEFENDANTS FOR AN ORDER STAYING PROCEEDINGS AND/OR FOR OTHER RELATED RELIEF

AND NOW, this _____ day of September, 2023, upon consideration of the

application (the "Application") of Moving Defendants,[1] for an order scheduling an expedited

---

[1] Moving Defendants are Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly Festa; Ashleigh Baldwin; Michael Boyer; R.F. Culbertson; Polebridge, LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; Etoh Worldwide, LLC; and Canvas 340, LLC.

hearing on Moving Defendants' emergency motion for an order to stay the proceedings, pursuant

to Federal Rule of Bankruptcy Procedure 7065 (the "Stay Motion"), and good cause appearing for

the relief requested in the Application, and notice having been due and proper under the

circumstances, and there having been no opposition by the Plaintiff,  the Office of the United States

Trustee ("OUST"), or other parties in interest, to the relief requested in the Application (or any

opposition thereto having been overruled), it is hereby

ORDERED, that pursuant to 11 U.S.C. §105(a) and Local Bankruptcy Rule 5070-1, the

Application be and hereby is granted; and it is further

ORDERED, that in accordance with the foregoing, a hearing to consider the relief

requested in the Stay Motion be and hereby is scheduled on Thursday, September 7, 2023; and it

is further

ORDERED, that counsel for the Applicant shall serve a copy of this Order, together with

the Stay Motion, upon counsel for the Plaintiff and the OUST, by email and overnight courier and

upon all parties in the bankruptcy case via the Court's CM/ECF and shall file proof of service with

the Court thereafter.

_____

MAGDELINE D. COLEMAN,
CHIEF UNITED STATES BANKRUPTCY JUDGE

227696028 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>        Debtor.<br><hr> | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>        Plaintiff,<br><br>    v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>        Defendants. | **Adv. No. 23-00047-MDC**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 5, 2023, he caused a true and correct copy of the foregoing Application of Moving Defendants, for an Order Scheduling Expedited Hearing Pursuant to Local Bankruptcy Rule 5070-1 and Moving Defendants' Emergency Motion for an Order staying proceedings, pursuant to <u>Federal Rule of Bankruptcy Procedure 7065</u>, by email and overnight mail, to Plaintiff's counsel and the Office of the U.S. Trustee and to all parties in the underlying bankruptcy case via the Court's CM/ECF.

227696028 v1

Dated: September 5, 2023

/s/ Mariam Khoudari
STEPHEN M. PACKMAN
MARIAM KHOUDARI
**ARCHER & GREINER, P.C.**
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
Tel: (215) 963-3300
Fax: (215) 963-9999
spackman@archerlaw.com
mkhoudari@archerlaw.com

*Counsel for Moving Defendants*

227696028 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>Debtor. | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>Defendants. | **Adv. No. 23-00047-MDC** |

## OBJECTION OF CHAPTER 7 TRUSTEE TO
## DEFENDANTS' MOTION FOR EXPEDITED HEARING

Plaintiff Bonnie B. Finkel, in her capacity as Chapter 7 Trustee (the "Trustee" or

"Plaintiff") for Midnight Madness Distilling LLC f/k/a Theobald and Oppenheimer, LLC d/b/a

Faber Distilling (the "Debtor"), by and through her undersigned counsel, hereby objects (the

"Objection") to the *Application of Moving Defendants for an Order Scheduling Expedited*

*Hearing Pursuant to Local Bankruptcy Rule 5070-1 on Moving Defendants' Emergency Motion*

1

*for an Order Staying Proceedings And/Or For Other Related Relief* [Adv. D.I. No. 7] (the

"Expedited Hearing Motion").  In support of her Objection, the Trustee states as follows.

1.      The Moving Defendants[1] seek to ambush the Trustee with a hearing with less than

two days' notice due to a so-called "emergency" of their own making.  As set forth in detail

herein, the Expedited Hearing Motion Should be denied.

2.      On June 15, 2023, the Trustee filed her complaint in the above-captioned

adversary proceeding [Adv. D.I. No. 1],  asserting claims against the Moving Defendants as well

as a group of Additional Defendants.[2]

3.      On June 16, 2023, the Court issued the Summons, which set a due date of July 17,

2023 for the filing of answers or motions (the "Answer Date").  *See* [Adv. D.I. No. 2].

4.      Plaintiff promptly served the Summons and Complaint on all defendants the very

same day.  *See* [Adv. D.I. No. 3] (Certificate of Service establishing service on all defendants via

"Regular, first class Unites States mail, postage pre-paid").

5.      On July 6, 2023, Plaintiff's counsel was contacted by Matthew A. Hamermesh,

Esquire, who represented that he would be representing some of the defendants and requested an

extension of 30 days for all defendants to respond to the Complaint.  Plaintiff responded that she

would be amenable to such an extension if defendants agreed, inter alia, that a commensurate

extension be granted to respond to any motions under Fed. R. Civ. P. 12.  Current counsel for the

Moving Defendants, Stephen M. Packman, Esquire, responded that Plaintiff's proposal was

---

[1]      The Moving Defendants are: Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly
Festa; Ashleigh Baldwin; Michael Boyer; R.F. Culbertson; Polebridge LLC; Good Design, Inc.;
AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev,
LLC; Etoh Worldwide, LLC; and Canvas 340, LLC.

[2]      The Additional Defendants are: Gary Parzych; Ryan Uszenski; Can Man, LLC; Finland
Leasing Co., Inc.; and Eugene T. Parzych, Inc.

acceptable, thus extending the Answer Date to August 16, 2023.  *See* <u>Exhibit A</u> (email exchange among counsel establishing terms of extension).

6.      On July 21, 2023, current counsel for the Moving Defendants contacted undersigned counsel and sought a further extension of the Answer Date on behalf of all defendants to August 30, 2023, which undersigned counsel agreed to.  *See* <u>Exhibit B</u> (email exchange establishing further extension).

7.      On August 10, 2023, Plaintiff's counsel was contacted by counsel for the Additional Defendants, who requested a further extension of the Answer Date to September 15, 2023, which was granted.  Counsel for the Moving Defendants requested a commensurate additional extension, which was also granted.  See <u>Exhibit C</u> (email exchange establishing additional extension).

8.      In the same August 10, 2023 email, counsel for the Additional Defendants suggested that the Trustee agree to transfer the case to the District Court, a suggestion which the Trustee declined.  *See* [Adv. D.I. No. 5-3] (August 10, 2023 email from Steven Coren, Esquire: "We have considered the venue issue and wish to keep the matter in bankruptcy court until it is ready for a jury trial").

9.      Nearly a full month later, the Moving Defendants filed the Expedited Hearing Motion at 10:46 PM on September 5, 2023, seeking a hearing in well under 48 hours on their so-called "emergency" *Motion to Stay* [Adv. D.I. No. 6] pending disposition of their *Motion for Withdrawal of Reference* [Adv. D.I. No. 5].

10.      Despite having their Answer Date extended three times, with Plaintiff providing all defendants with over ninety days to respond to the Complaint, the Moving Defendants characterize the Answer Date they negotiated as causing "substantial prejudice."

3

11.    The Court should not condone such gamesmanship and it is the Trustee that
would be prejudiced by being forced to respond in well under 48 hours to the *Motion to Stay*.  As
will be set forth in detail at the proper time, Plaintiff opposes the *Motion to Stay* because she has
granted all defendants ample time to respond, this Court is well suited to handle litigation of this
nature prior to a jury trial, and, should the District Court grant the Motion for Withdrawal of
Reference, all pleadings and discovery which occurred in this Court will not be wasted, but will
simply transfer to the District Court.


Dated: September 6, 2023          /s/ Andrew J. Belli
                                  STEVEN M. COREN
                                  ANDREW J. BELLI
                                  **COREN & RESS, P.C.**
                                  Two Commerce Square, Suite 3900
                                  2001 Market Street
                                  Philadelphia, PA 19103
                                  Tel: (215) 735-8700
                                  Fax: (215) 735-5170
                                  scoren@kcr-law.com

                                  *Counsel for Plaintiff*
                                  *Bonnie Finkel, Chapter 7 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on September 6, 2023, he caused a true and correct

copy of the foregoing Objection to Motion for Expedited hearing to all parties in the above-

captioned adversary proceeding via the Court's CM/ECF system.


Dated: September 6, 2023                    /s/ Andrew J. Belli
                                            STEVEN M. COREN
                                            ANDREW J. BELLI
                                            **COREN & RESS, P.C.**
                                            Two Commerce Square, Suite 3900
                                            2001 Market Street
                                            Philadelphia, PA 19103
                                            Tel: (215) 735-8700
                                            Fax: (215) 735-5170
                                            scoren@kcr-law.com

                                            *Counsel for Plaintiff*
                                            *Bonnie Finkel, Chapter 7 Trustee*

# Exhibit A

## Andrew Belli

| | |
|---|---|
| **From:** | Packman, Stephen M. <spackman@archerlaw.com> |
| **Sent:** | Friday, July 7, 2023 10:53 AM |
| **To:** | Andrew Belli |
| **Cc:** | Steven Coren;  (mah@hangley.com) |
| **Subject:** | RE: Midnight Madness, LLC [IWOV-HASP1.FID137704] |

**EXTERNAL EMAIL.**

Andrew, I hope you and Steve are doing well. The request for an extension to respond to the Complaint is made by Matthew on behalf of all defendants. We are currently working out the defense representations since you have joined so many parties as defendants and should be in a position to let you know the breakdown by next week.  We will send you a stipulation on the extension if you think that is necessary. As far as Plaintiff's conditions ("caveats") below, they are acceptable to the defendants.

**Stephen M. Packman, Esq.**
*Fellow of INSOL*

Archer & Greiner P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-246-3147
spackman@archerlaw.com
www.archerlaw.com



INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

> **From:** Andrew Belli <ABelli@kcr-law.com>
> **Sent:** Friday, July 7, 2023 8:54 AM
> **To:** Hamermesh, Matthew A. <mah@hangley.com>; Packman, Stephen M. <spackman@archerlaw.com>
> **Cc:** Steven Coren <SCoren@kcr-law.com>
> **Subject:** [EXT MAIL] RE: Midnight Madness, LLC [IWOV-HASP1.FID137704]
>
> Matt –
>
> Responding to your 7/6 email to Steve Coren.  Is the request to extend deadlines truly on behalf of all defendants?  Who is representing which defendant(s)?
>
> We are amenable to your extension request with the following caveats: 1) Plaintiff receives a commensurate extension to respond to any Rule 12 motions which may be filed (original deadline plus 30 days); 2) we will not agree to extend the deadline for any motions alleging insufficient service of process.
>
> Best,
>
> Andy

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

**From:** Andrew Belli
**Sent:** Friday, May 19, 2023 11:18 AM
**To:** Hamermesh, Matthew A. <mah@hangley.com>
**Subject:** RE: Midnight Madness, LLC [IWOV-HASP1.FID137704]

Following up here.

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

**From:** Andrew Belli
**Sent:** Monday, May 8, 2023 9:06 AM
**To:** Hamermesh, Matthew A. <mah@hangley.com>
**Subject:** RE: Midnight Madness, LLC [IWOV-HASP1.FID137704]

Matt following up on how the modified request is overbroad?  It is limited to two custodians, then further limited to specific recipients, for a time frame that is directly targeted to reveal information relevant to the Debtor.  It is incredibly limited and easy to effectuate.

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

**From:** Andrew Belli
**Sent:** Thursday, May 4, 2023 5:35 PM
**To:** Hamermesh, Matthew A. <mah@hangley.com>
**Subject:** Re: Midnight Madness, LLC [IWOV-HASP1.FID137704]

How is it overbroad?

On May 4, 2023, at 5:22 PM, Hamermesh, Matthew A. <mah@hangley.com> wrote:

> **EXTERNAL EMAIL.**

Andy:

My apologies for my delay in getting back to you. I have discussed this with my clients. While we appreciate your efforts to narrow the request, this is still covers vastly more territory than what the trustee might legitimately have an interest in reviewing. We cannot agree to this overbroad request.

Matt

Matthew A. Hamermesh
Hangley Aronchick Segal Pudlin & Schiller
(215) 496-7054 (office)
(267) 240-3893 (mobile)
mhamermesh@hangley.com

2

🌲 Please consider the environment before printing this email.
HASPS is a proud member of the ABA/EPA Law Office Climate challenge.

**From:** Andrew Belli <ABelli@kcr-law.com>
**Sent:** Tuesday, May 2, 2023 12:43 PM
**To:** Hamermesh, Matthew A. <mah@hangley.com>
**Subject:** RE: Midnight Madness, LLC [IWOV-HASP1.FID137704]

**[EXTERNAL EMAIL - This message originated outside Hangley Aronchick.]**

Matt, any word here?

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

**From:** Andrew Belli
**Sent:** Friday, April 28, 2023 11:36 AM
**To:** Hamermesh, Matthew A. <mah@hangley.com>
**Subject:** RE: Midnight Madness, LLC [IWOV-HASP1.FID137704]

Hi, Matt – hope all is well.  Following up here.

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

**From:** Andrew Belli
**Sent:** Tuesday, April 25, 2023 1:34 PM
**To:** Hamermesh, Matthew A. <mah@hangley.com>
**Subject:** RE: Midnight Madness, LLC [IWOV-HASP1.FID137704]

Matt, my apologies for the delay, I have been thinking about the best mutually agreeable way to simplify these requests for you.  What do you think about compromising by distilling things down to the following single request: all communications (in whatever form and regardless of what entity they purport to be on behalf of) between or among Shawn Sheehan and Ryan Uszenski, on the one hand, and Sheehan, Uszenski, Casey Parzych, Kelly Festa, Gary Parzych, Angus Rittenburg, Ashleigh Baldwin, and John Pitts, on the other hand, between 1/1/2021 and 12/31/2022.

Public records indicate that Mr. Sheehan owns and controls both your clients and is the President of XO Energy MA, Inc., the ultimate owner of Best Bev, LLC, an entity which is in the same exact business as, employs a large number of the same employees as, and appears to have improperly usurped the assets of the Debtor.  Best Bev is co-managed by your client EtOH Worldwide, LLC and Mr. Uszenski.

If this isn't acceptable we will proceed with the original requests as worded, with the following limitations to address the concerns you raised during our telephone conversation:
1. Timeframe on all requests limited to 1/1/2020 to the present;
2. Request 9 limited to communications relating to the subject matter of relating to the ethanol, copackaging and/or beverage industries, including, but not limited to, entity

formation, site leasing/construction, storage, formulation, production, canning, packaging, co-packing, labeling, sourcing, marketing, staffing, and/or sale of ethanol products (including, but not limited to liquor, alcoholic beverages, hand sanitizer, and raw ethanol) and/or beverages (including, but not limited to, alcoholic beverages and/or beverages containing CBD and/or THC).

Please let me know your thoughts.

Best,

Andy

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

---

**From:** Hamermesh, Matthew A. <mah@hangley.com>
**Sent:** Tuesday, April 18, 2023 10:25 AM
**To:** Andrew Belli <ABelli@kcr-law.com>
**Subject:** RE: Midnight Madness, LLC [IWOV-HASP1.FID137704]

**EXTERNAL EMAIL.**

Talk to you then.

Matt

Matthew A. Hamermesh
Hangley Aronchick Segal Pudlin & Schiller
(215) 496-7054 (office)
(267) 240-3893 (mobile)
mhamermesh@hangley.com

Please consider the environment before printing this email.
HASPS is a proud member of the ABA/EPA Law Office Climate challenge.

---

**From:** Andrew Belli <ABelli@kcr-law.com>
**Sent:** Tuesday, April 18, 2023 10:22 AM
**To:** Hamermesh, Matthew A. <mah@hangley.com>
**Subject:** RE: Midnight Madness, LLC [IWOV-HASP1.FID137704]

**[EXTERNAL EMAIL - This message originated outside Hangley Aronchick.]**

Yes.

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

---

**From:** Hamermesh, Matthew A. <mah@hangley.com>
**Sent:** Tuesday, April 18, 2023 10:11 AM

4

**To:** Andrew Belli <ABelli@kcr-law.com>
**Subject:** RE: Midnight Madness, LLC [IWOV-HASP1.FID137704]

---

**EXTERNAL EMAIL.**

Aaron:

I could talk at 3:30 on Wednesday. Does that work for you?

Matt

Matthew A. Hamermesh
Hangley Aronchick Segal Pudlin & Schiller
(215) 496-7054 (office)
(267) 240-3893 (mobile)
mhamermesh@hangley.com

Please consider the environment before printing this email.
HASPS is a proud member of the ABA/EPA Law Office Climate challenge.

---

**From:** Andrew Belli <ABelli@kcr-law.com>
**Sent:** Saturday, April 15, 2023 7:10 AM
**To:** Hamermesh, Matthew A. <mah@hangley.com>
**Subject:** Re: Midnight Madness, LLC [IWOV-HASP1.FID137704]

**[EXTERNAL EMAIL - This message originated outside Hangley Aronchick.]**

I can make anytime Wednesday work, thanks.

> On Apr 14, 2023, at 5:33 PM, Hamermesh, Matthew A. <mah@hangley.com>
> wrote:

---

**EXTERNAL EMAIL.**

Andrew:

I am tied up with several matters Monday and Tuesday next week. Is
there a good time we could talk later in the week?

Matt

Matthew A. Hamermesh
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, PA  19103
(215) 496-7054 (office)
(215) 568-0300 (facsimile)

5

mhamermesh@hangley.com
www.hangley.com

🌲  Please consider the environment before printing this email.
HASPS is a proud member of the ABA/EPA Law Office Climate challenge.

---

**From:** Andrew Belli <ABelli@kcr-law.com>
**Sent:** Wednesday, April 5, 2023 3:23 PM
**To:** Hamermesh, Matthew A. <mah@hangley.com>
**Subject:** Midnight Madness, LLC

**[EXTERNAL EMAIL - This message originated outside Hangley Aronchick.]**

Mr. Hamermesh –

Please see the attached correspondence.

Best,

Andy

Andrew J. Belli, Esquire
Coren & Ress, P.C.
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
(215) 735-8700 (Phone)
(215) 735-5170 (Fax)
email: ABelli@kcr-law.com

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# Exhibit B

## Andrew Belli

| | |
|---|---|
| **From:** | Packman, Stephen M. <spackman@archerlaw.com> |
| **Sent:** | Friday, July 21, 2023 2:42 PM |
| **To:** | Andrew Belli |
| **Subject:** | RE: Response Date to Complaint |

**EXTERNAL EMAIL.**

Yes, let's do August 30th. Still working on the defense side but expect to have it finalized next week. I don't think we need a formal stipulation. Have a good weekend.

**Stephen M. Packman, Esq.**
*Fellow of INSOL*

Archer & Greiner P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-246-3147
spackman@archerlaw.com
www.archerlaw.com



INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

> **From:** Andrew Belli <ABelli@kcr-law.com>
> **Sent:** Friday, July 21, 2023 1:36 PM
> **To:** Packman, Stephen M. <spackman@archerlaw.com>
> **Subject:** [EXT MAIL] RE: Response Date to Complaint
>
> Per the Summons, the answer date is 7/17; we're fine with August 30th if that is what you need.  Can you please let me know who is representing which defendant when you get a chance?  And if you think the extension needs to be documented with the Court we will of course cooperate.
>
>
> Best,
>
> Andy
>
> Andrew J. Belli, Esquire
> (215) 735-8700 (Phone)

> **From:** Packman, Stephen M. <spackman@archerlaw.com>
> **Sent:** Friday, July 21, 2023 12:39 PM
> **To:** Andrew Belli <ABelli@kcr-law.com>
> **Subject:** Response Date to Complaint

| EXTERNAL EMAIL. |
| --- |

Andrew:

I am trying to calendar the exact date for responses but I am not certain of the last effective date of service of the Complaint which was filed on June 15th. Should we pick a date such as August 30?
Let me know your thoughts please.

Thanks.

**Stephen M. Packman, Esq.**
*Fellow of INSOL*

Archer & Greiner P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-246-3147
spackman@archerlaw.com
www.archerlaw.com



INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

| **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe. |
| --- |

| **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe. |
| --- |

# Exhibit C

# Andrew Belli

| | |
|---|---|
| **From:** | Packman, Stephen M. <spackman@archerlaw.com> |
| **Sent:** | Thursday, August 10, 2023 3:36 PM |
| **To:** | Andrew Belli |
| **Cc:** | Steven Coren; kurtzman@kurtzmansteady.com |
| **Subject:** | Re: Finkel v. Parzych, et al. |

**EXTERNAL EMAIL.**

Thanks

**Stephen M. Packman, Esq.**
*Fellow of INSOL*

Archer & Greiner P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-246-3147
spackman@archerlaw.com
www.archerlaw.com

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED
RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU
HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

**From:** Andrew Belli <ABelli@kcr-law.com>
**Sent:** Thursday, August 10, 2023 3:35:27 PM
**To:** Packman, Stephen M. <spackman@archerlaw.com>
**Cc:** Steven Coren <SCoren@kcr-law.com>; kurtzman@kurtzmansteady.com <kurtzman@kurtzmansteady.com>
**Subject:** [EXT MAIL] RE: Finkel v. Parzych, et al.

OK, thanks for confirming – we are fine with you having the same extension as Jeff.

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

**From:** Packman, Stephen M. <spackman@archerlaw.com>
**Sent:** Thursday, August 10, 2023 3:34 PM
**To:** Andrew Belli <ABelli@kcr-law.com>
**Cc:** Steven Coren <SCoren@kcr-law.com>; kurtzman@kurtzmansteady.com
**Subject:** Re: Finkel v. Parzych, et al.

**EXTERNAL EMAIL.**

Yes

**Stephen M. Packman, Esq.**
*Fellow of INSOL*

Archer & Greiner P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-246-3147
spackman@archerlaw.com
www.archerlaw.com



INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

---

**From:** Andrew Belli <ABelli@kcr-law.com>
**Sent:** Thursday, August 10, 2023 3:32:47 PM
**To:** Packman, Stephen M. <spackman@archerlaw.com>
**Cc:** Steven Coren <SCoren@kcr-law.com>; kurtzman@kurtzmansteady.com <kurtzman@kurtzmansteady.com>
**Subject:** [EXT MAIL] RE: Finkel v. Parzych, et al.

Jeff says below that he represents: Gary Parzych, Ryan Uszenski, Can Man, LLC, Finland Leasing Co., Inc. and Eugene T. Parzuych, Inc.

Do you represent Casey Parzych, Shawn Sheehan, Angus Rittenburg, Kelly Festa, Ashleigh Baldwin, Michael Boyer, RF Culbertson, Polebridge LLC, Good Design Inc., AgTech PA LLC, AgTech VI LLC, XO Energy Worldwide LLLP, XO EW LLC, Best Bev LLC, EtOH Worldwide LLC, and Canvas 340 LLC?

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

---

**From:** Packman, Stephen M. <spackman@archerlaw.com>
**Sent:** Thursday, August 10, 2023 2:51 PM
**To:** Andrew Belli <ABelli@kcr-law.com>
**Cc:** Steven Coren <SCoren@kcr-law.com>; kurtzman@kurtzmansteady.com
**Subject:** Re: Finkel v. Parzych, et al.

---

**EXTERNAL EMAIL.**

---

No other attorneys, just me and Jeff

**Stephen M. Packman, Esq.**
*Fellow of INSOL*

Archer & Greiner P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-246-3147
spackman@archerlaw.com



www.archerlaw.com

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED
RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU
HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

---

**From:** Andrew Belli <ABelli@kcr-law.com>
**Sent:** Thursday, August 10, 2023 2:24:23 PM
**To:** Packman, Stephen M. <spackman@archerlaw.com>
**Cc:** Steven Coren <SCoren@kcr-law.com>; kurtzman@kurtzmansteady.com <kurtzman@kurtzmansteady.com>
**Subject:** [EXT MAIL] FW: Finkel v. Parzych, et al.

Stephen –

Before we grant a further extension can you please let us know which Defendants you represent and who is
representing any Defendants unrepresented by you and Attorney Kurtzman?  We granted two initial extensions on the
basis of you speaking for (if not representing) all Defendants and have yet to get clarification on this point.

Best,

Andy

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

---

**From:** Packman, Stephen M. <spackman@archerlaw.com>
**Sent:** Thursday, August 10, 2023 2:00 PM
**To:** Jeffrey Kurtzman <kurtzman@kurtzmansteady.com>; Steven Coren <SCoren@kcr-law.com>
**Subject:** Re: Finkel v. Parzych, et al.

**EXTERNAL EMAIL.**

Jeff, thanks. I would be happy to speak, if desired by Steve, about venue.

Steve, my firm will be representing those defendants which Jeff is not. Do you have any objection to our defendants'
reply date coinciding with those defendants represented by Jeff?

Thanks

**Stephen M. Packman, Esq.**
*Fellow of INSOL*

Archer & Greiner P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-246-3147
spackman@archerlaw.com



INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

**From:** Jeffrey Kurtzman <kurtzman@kurtzmansteady.com>
**Sent:** Thursday, August 10, 2023 11:17:08 AM
**To:** scoren@kcr-law.com <scoren@kcr-law.com>
**Cc:** Packman, Stephen M. <spackman@archerlaw.com>
**Subject:** [EXT MAIL] Finkel v. Parzych, et al.

Steve, it was nice to speak with you this morning.  As related, my firm represents Gary Parzych, Ryan Uszenski, Can Man, LLC, Finland Leasing Co., Inc. and Eugene T. Parzuych, Inc. in the above-referenced adversary proceeding.

In reviewing the complaint, I note that, while the plaintiff alleges that the bankruptcy court has jurisdiction over the adversary proceeding, she demands a jury trial and does not consent to the entry of a final judgment by that court.  For this and other reasons, I suggested that efficiency may be served by transferring the case to the district court.  I have not discussed this issue with Steve Packman, who is copied here.

Secondly, I requested an extension of my clients' deadline to answer or move with respect to the complaint to September 15, as to which you graciously agreed.

If you and your partner wish to discuss the venue issue, please let Steve and me know.  Thanks.

Jeffrey Kurtzman, Esquire
KURTZMAN | STEADY, LLC
555 City Avenue | Suite 480 | Bala Cynwyd, PA 19004
Main: (215) 883-1600 | Direct: (215) 839-1222 | Mobile: (215) 715-2814
kurtzman@kurtzmansteady.com

101 N.  Washington Avenue | Suite 4A | Margate, NJ 08402
Main: (856) 428-1060 | Fax: (609) 482-8011

2 Kings Highway West | Suite 102 | Haddonfield, NJ 08033
Main:  (856) 428-1060 | Fax: (609) 482-8011

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>Debtor. | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>Defendants. | **Adv. No. 23-00047-MDC**<br><br><br>**JURY TRIAL DEMANDED** |

## ORDER SCHEDULING EXPEDITED HEARING ON EMERGENCY MOTION OF MOVING DEFENDANTS FOR AN ORDER STAYING PROCEEDINGS AND/OR FOR OTHER RELATED RELIEF

AND NOW, this 6th day of September, 2023, upon consideration of the

application (the "Application") of Moving Defendants,[1] for an order scheduling an expedited

---

[1] Moving Defendants are Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly Festa; Ashleigh Baldwin; Michael Boyer; R.F. Culbertson; Polebridge, LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; Etoh Worldwide, LLC; and Canvas 340, LLC.

227696028 v1

hearing on Moving Defendants' emergency motion for an order to stay the proceedings, pursuant to Federal Rule of Bankruptcy Procedure 7065 (the "Stay Motion"),  and the Objection of the Chapter 7 Trustee,  is hereby

ORDERED that the  Application is DENIED.

MAGDELINE D. COLEMAN,
CHIEF UNITED STATES BANKRUPTCY JUDGE

227696028 v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>      **Debtor.** | **CHAPTER 7**<br>**Case No. 21-11750-MDC** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>      **Plaintiff,**<br><br>  **v.**<br><br>**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**<br><br>      **Defendants.** | **Adv. No. 23-00047-MDC**<br><br><br>**JURY TRIAL DEMANDED** |

## NOTICE OF EMERGENCY MOTION OF MOVING DEFENDANTS FOR AN ORDER TO STAY PROCEEDINGS AND/OR FOR OTHER RELATED RELIEF

   On September 5, 2023, Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly A. Festa; Ashleigh Baldwin; Michael Boyer; R.F. Culbertson; Polebridge, LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; Etoh Worldwide, LLC; and Canvas 340, LLC have filed the *Emergency Motion of Moving Defendants for an Order to Stay Proceedings and/or for Other Related Relief* [Adv. Proc. D.I. 6].

1.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult an attorney).**

2.   **If you do not want the court to grant the relief sought in the above-referenced Motion** or if you want the court to consider your view on the Motion, then on or before **September 21, 2023, you or your attorney must file a response to the Motion.** (*see Instructions on next page*).

3.   **A telephonic hearing on the Motion** is scheduled to be held on 10/4/2023 at 11:00 a.m. (ET) before Chief Judge Magdeline D. Coleman.  Unless the court orders otherwise, the hearing on this contested matter will be an **evidentiary hearing**.

4.   **If you do not file a response to the Motion**, the court may cancel the hearing and enter an order granting the relief requested in the Motion.

5.   You may contact the Bankruptcy Clerk's Office at (215) 408-2800 or undersigned counsel to the Debtor to find out whether a hearing has been scheduled.

6.   If a copy of the Motion is not enclosed, a copy of the Motion will be provided to you if you request a copy from the attorney whose name and address is listed on the next page of this Notice

### Filing Instructions

7.   **If you are required to file documents electronically by Local Bankruptcy Rule 5005-1**, you must file your response electronically.

8.   **If you are not required to file electronically**, you must file your response at:

United States Bankruptcy Court
Eastern District of Pennsylvania
Robert N.C. Nix, Sr. Federal Courthouse
900 Market Street, Suite 400
Philadelphia, PA 19107

9.   **If you mail your response** to the bankruptcy clerk's office for filing, you must mail it early enough so that it will be received on or before the date stated in Paragraph 2 on the previous page of this Notice.

10. On the same day that you file or mail your response to the Motion, you must also mail or deliver a copy of your response to Debtor's counsel at the addresses listed below.

Date:  September 7, 2023

**ARCHER & GREINER, P.C.**

*/s/ Stephen M. Packman*
Stephen M. Packman
Douglas G. Leney
Mariam Khoudari
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
Phone:  (215) 963-3300
Fax:  (215) 963-9999
spackman@archerlaw.com
dleney@archerlaw.com
mkhoudari@archerlaw.com

Bryan J. Hall
300 Delaware Avenue, Suite 1100
Wilmington, Delaware 19801
Phone: (302) 777-4350
Fax: (302) 777-4352
bjhall@archerlaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

**MIDNIGHT MADNESS DISTILLING LLC,**

        **Debtor.**

**CHAPTER 7**
**Case No. 21-11750-MDC**

---

**BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**

        **Plaintiff,**

        **v.**

**CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,**

        **Defendants.**

**Adv. No. 23-00047-MDC**

**JURY TRIAL DEMANDED**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 7, 2023, she caused a true and correct copy of the foregoing Notice of Emergency Motion of Moving Defendants for an Order to Stay Proceedings and/or for Other Related Relief, to be served upon Plaintiff's counsel and the Office of the United States Trustee, via email and overnight courier, and upon all parties in the bankruptcy case via the Court's CM/ECF electronic filing system.

246

Date:  September 7, 2023

**ARCHER & GREINER, P.C.**

_/s/ Stephen M. Packman_
Stephen M. Packman
Douglas G. Leney
Mariam Khoudari
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
Phone:  (215) 963-3300
Fax:  (215) 963-9999
spackman@archerlaw.com
dleney@archerlaw.com
mkhoudari@archerlaw.com

Bryan J. Hall
300 Delaware Avenue, Suite 1100
Wilmington, Delaware 19801
Phone: (302) 777-4350
Fax: (302) 777-4352
bjhall@archerlaw.com

2