**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

In re:

**MIDNIGHT MADNESS DISTILLING LLC,**

          Debtor.

 

**BONNIE B. FINKEL, in her capacity as Chapter 7
Trustee for Midnight Madness Distilling LLC,**

          **Plaintiff,**

      v.

**CASEY PARZYCH,** *et al.*,

          **Defendants.**

**Case No. 23-mc-136**

---

**PLAINTIFF'S OPPOSITION TO MOTION
FOR WITHDRAWAL OF REFERENCE**

Plaintiff Bonnie B. Finkel, in her capacity as Chapter 7 Trustee (the "Trustee" or "Plaintiff") for Midnight Madness Distilling LLC f/k/a Theobald and Oppenheimer, LLC d/b/a Faber Distilling (the "Debtor"), by and through her undersigned counsel, hereby files this Opposition to the *Moving Defendants' Motion for Withdrawal of Reference* [D.I. 1 at pp. 8-102[1]] (the "Withdrawal Motion").[2]

---

[1] Docket Entry 1 in the above-captioned case contains the underlying record in this case as transmitted to this Court by the Bankruptcy Court, which contains page numbering in the bottom right-hand corner.

[2] The Moving Defendants are: Casey Parzych; Shawn Sheehan; Angus Rittenburg; Kelly Festa; Ashleigh Baldwin; Michael Boyer; R.F. Culbertson; Polebridge LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; Etoh Worldwide, LLC; and Canvas 340, LLC.

## I.     INTRODUCTION

The Trustee filed this adversary proceeding in June 2023 against the Debtor's former insiders and various associated entities and individuals.  The proceeding is currently in a very early procedural stage, as the Moving Defendants have just recently (on September 15, 2023) filed a Motion to Dismiss.

The Moving Defendants seek withdrawal of the bankruptcy reference pursuant to 28 U.S.C. § 157(d) and FED. R. BANKR. P. 5011(a).  The Moving Defendants appear to concede that no basis for mandatory withdrawal of the reference exists, but argue that permissive withdrawal is warranted because the Trustee's claims include non-core state law claims, the Trustee has demanded a jury trial, and, according to the Moving Defendants, there may end up being discovery disputes.  None of these justify withdrawal of the reference at this early stage of the case.  Even in cases involving non-core claims or jury demands, it is standard practice for the case to proceed in bankruptcy court until it is trial-ready.  Granting the Withdrawal Motion at this stage would be premature and is not supported by the factors that inform the permissive withdrawal analysis — which include promoting uniformity and efficiency within the bankruptcy process, the economical use of debtor resources, and the reduction of forum shopping.  The Withdrawal Motion should be denied.

## II.    RELEVANT PROCEDURAL BACKGROUND

On June 15, 2023, the Trustee filed her Complaint commencing an adversary proceeding against the Moving Defendants as well as a group of Additional Defendants.[3]  *See* [D.I. 1 at pp. 23-97 ("Complaint")].  The Complaint asserts the following claims: (i) breach of fiduciary duty;

---

[3]      The Additional Defendants are: Gary Parzych; Ryan Uszenski; Can Man, LLC; Finland Leasing Co., Inc.; and Eugene T. Parzych, Inc.

(ii) aiding and abetting breach of fiduciary duty; (iii) corporate waste; (iv) declaratory relief – alter ego, piercing the corporate veil and/or successor liability; (v) unjust enrichment; (vi) an accounting; (vii) constructive trust; (viii) breach of contract, with respect to the Debtor's operating agreement; (ix) breach of contract, with respect to a certain real estate lease; (x) equitable subordination; (xi) turnover; (xii) avoidance and recovery of postpetition transfers; (xiii) avoidance and recovery of preferential transfers; and (xiv) avoidance and recovery of fraudulent transfers. *See id.* at ¶¶ 199-294.  The Trustee has demanded a jury trial on all claims that are triable to a jury. *See id.* at ¶ 5 and p. 75.

Defendants were served with the Complaint on June 16, 2023.  *See* [D.I. 1 at p. 5, Docket Entry No. 3].  Thereafter, the Trustee agreed to three extensions for the Defendants to answer or otherwise respond to the Complaint, which ultimately extended the answer date until September 15, 2023.  On September 5, 2023, the Moving Defendants filed the Withdrawal Motion.  The same day, they filed the *Emergency Motion of Moving Defendants For An Order To Stay Proceedings and/or For Other Related Relief* (the "Stay Motion") in the Bankruptcy Court, as well as an application seeking an expedited hearing in less than 48 hours on the Stay Motion.  *See* [D.I. 1 at pp. 105-09, 212-19]; *see also* [D.I. 1 at pp. 220-40 (Trustee's Objection to application for expedited hearing)].  On September 6, 2023, the Court denied the application for an expedited hearing on the Stay Motion.  *See* [D.I. 1 at pp. 241-42].  Thereafter, the Moving Defendants filed a Notice of Motion, noticing a telephonic hearing on the Stay Motion to be held on October 4, 2023.  *See* [D.I. 1 at pp. 243-45].  The Trustee opposes the Stay Motion and its opposition papers will be filed with the Bankruptcy Court at the appropriate time.

### III.    STANDARD OF REVIEW

Section 157(d) of the Bankruptcy Code defines the situations when a district court *may* withdraw the reference and when it *must* do so:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

The movant bears the burden of establishing cause.  *In re Am. Capital Equip.*, *LLC*, 325 B.R. 372, 375 (W.D. Pa. 2005).  In assessing whether that burden has been met, the district court "should employ withdrawal 'judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.'"  *In re Formica Corp.*, 305 B.R. 147, 151 (S.D.N.Y. 2004) (quoting *In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y. 1992)); *see also Seitz v. Rothermel*, 638 B.R. 846, 849 (E.D. Pa. 2022) ("[Section 157(d)] creates a presumption 'heavily weighted' against withdrawal.") (quoting *Feldman v. ABN AMBRO Mortg. Grp., Inc.*, 2020 WL 618604, at *7 (E.D. Pa. Feb. 10, 2020)).

For mandatory withdrawal, "[t]he party seeking withdrawal bears the burden of demonstrating that the action requires a substantial and material consideration of a federal statute outside the Bankruptcy Code."  *United States v. Delfasco, Inc.*, 409 B.R. 704, 707 (D. Del. 2009).  For permissive withdrawal, "[t]he 'cause shown' requirement in section 157(d) creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy.'"  *Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989) (quoting *In re DeLorean Motor Co.*, 49 B.R. 900, 912 (Bankr. E.D. Mich. 1985)).

4

In determining whether cause exists for permissive withdrawal, the Third Circuit directs district courts to consider five factors: (1) "promoting uniformity in bankruptcy administration"; (2) "reducing forum shopping and confusion"; (3) "fostering the economical use of the debtors' and creditors' resources"; (4) "expediting the bankruptcy process"; and (5) the timing of the withdrawal motion.  *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (citation omitted).  Two additional factors also inform the analysis: (i) whether the underlying proceeding involves "core" or "non-core" claims, and (ii) whether any party has asserted a right to a jury trial.  *Seitz*, 638 B.R. at 850.

## IV.   ARGUMENT

### A.   This Case Should Proceed In the Bankruptcy Court Until It Is Trial-Ready

While courts consider whether the underlying proceeding involves non-core claims and whether there has been a jury demand, it is well-established that these factors alone do not justify withdrawal of the reference at an early stage of the case.  *See, e.g.*, *In re Portnoy*, 2017 WL 3141186, at *3 (E.D. Pa. July 24, 2017) ("The district court . . . retains its discretion to withdraw or not to withdraw a reference regardless of a proceeding's characterization as core or non-core. . . . [T]he characterization of the claims as core or non-core is not a dispositive factor in the withdrawal analysis."); *Seitz*, 638 B.R. at 852 ("[D]istrict courts in this Circuit do not condone withdrawal of a proceeding at its inception on the basis of a defendant's right to a jury trial."); *In re Am. Classic Voyages Co.*, 337 B.R. 509, 511 (D. Del. 2006) ("[A]ssertion of a Seventh Amendment right to a jury trial, coupled with a refusal to consent to such trial before the Bankruptcy Court, is not of itself sufficient cause for discretionary withdrawal.").

Courts in this District, sister districts in the Third Circuit, and beyond have found that the interests of judicial economy and efficiency favor keeping such actions in bankruptcy court for

pretrial and discovery matters, and withdrawing the reference only once the case is trial-ready. *See, e.g.*, *Portnoy*, 2017 WL 3141186, at *5 ("Courts routinely permit the bankruptcy court to oversee pretrial matters, even in proceedings involving non-core claims to which a party has a jury trial right."); *Pennsylvania Acad. of Music v. Regitz*, 2010 WL 4909952, at *2 (E.D. Pa. Nov. 30, 2010) ("Courts have recognized that it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial.") (quoting *In re Techs. Liquidations Co.*, 2007 WL 1152518, at *1 (W.D. Pa. Apr. 17, 2007)); *Feldman*, 2020 WL 618604, at *5 ("[W]ithdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'") (quoting *In re Big V Holding Corp.*, 2002 WL 1482392, at *5 (D. Del. July 11, 2002)); *In re Lyondell Chem. Co.*, 467 B.R. 712, 724-26 (S.D.N.Y. 2012) (holding that there was no cause to withdraw the reference before the cases were ready for trial).

### 1.   The Inclusion of Non-Core Claims in the Complaint Does Not Require Withdrawal of the Reference At This Stage

The "core" or "non-core" nature of a claim is "crucial in bankruptcy cases because it defines both the extent of the Bankruptcy Court's jurisdiction, and the standard by which the District Court reviews its factual findings." *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). For purposes of resolving a withdrawal motion, however, the nature of the claims is a relevant— but not dispositive—factor. *See Portnoy*, 2017 WL 3141186, at *3 (holding that a final determination of the nature of each claim was not necessary to resolve withdrawal motion).

Claims are considered "core" if they "invoke[] a substantive right provided by the Bankruptcy Code or if the claim could arise only in the context of a bankruptcy case." *Halper*, 164 F.3d at 836; *see also* 28 U.S.C. § 157(b)(2) (setting forth a non-exhaustive list of core

proceedings).[4] "Non-core" claims are those which are in the "broader universe" of claims that are not core but are nevertheless "related to" a bankruptcy case. *Halper*, 164 F.3d at 837. Claims are "related to" the bankruptcy case if they "could conceivably have any effect on the estate being administered in bankruptcy." *Id.* "For core matters, the bankruptcy court may issue final orders and judgments, whereas for non-core matters, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court for *de novo* review." *Feldman*, 2020 WL 618604, at *3; *see also* 28 U.S.C. §§ 157(b)(1), (c)(1).

Here, the Trustee has asserted a mixture of core and non-core related claims. Claims to avoid and recover fraudulent, preferential, and post-petition transfers pursuant to Sections 547-550 of the Bankruptcy Code are considered "core" proceedings. *See* 28 U.S.C. § 157(b)(2)(F), (H); *In re DBSI, Inc.*, 2012 WL 1078079, at *2 (Bankr. D. Del. Mar. 30, 2012). As are claims for equitable subordination. *See In re USDigital, Inc.*, 461 B.R. 276, 285 (Bankr. D. Del. 2011). *However*, where claims to avoid and recover transfers are not "irreversibly intertwined" with resolution of a creditor's claim against the estate, they may be considered *Stern* claims for which the bankruptcy court can submit proposed findings of fact and conclusions of law. *See, e.g.*, *Feldman v. ABN AMRO Mortg. Group Inc.*, 515 B.R. 443, 448-51 (E.D. Pa. 2014) (holding that trustee's fraudulent transfer claims were *Stern* claims).[5]

---

[4]     Some claims which are statutorily defined as core still may not, as a constitutional matter, be finally adjudicated by the bankruptcy court—these are colloquially referred to as *Stern* claims. *See Portnoy*, 2017 WL 3141186, at *3 n.3; *Stern v. Marshall*, 564 U.S. 462, 482, 499 (2011). For *Stern* claims, the bankruptcy court treats them as if they were non-core claims and, absent consent of the parties, submits proposed findings of fact and conclusions of law for *de novo* review by the district court. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 36 (2014).

[5]     As asserted in the Complaint, the Trustee does not consent to the entry of final judgment or adjudication by the Bankruptcy Court, and she reserves her right to argue that some or all of her "core" claims are subject to *Stern*.

Courts have found that state law claims such as breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, alter ego/veil piercing, and unjust enrichment are non-core claims. *See, e.g.*, *In re Jamuna Real Est., LLC*, 357 B.R. 324, 331, 335-36 (Bankr. E.D. Pa. 2006); *In re W.J. Bradley Mortg. Cap., LLC*, 598 B.R. 150, 157 (Bankr. D. Del. 2019). Claims for pre-petition breach of contract are also typically considered non-core. *See In re AstroPower Liquidating Trust*, 335 B.R. 309, 323 (Bankr. D. Del. 2005); *In re Access Care, Inc.*, 333 B.R. 706, 713 n.11 (Bankr. E.D. Pa. 2005). Equitable remedies for constructive trust (when sought by a debtor or trustee) and accounting have also been found to be non-core. *See In re Drauschak*, 481 B.R. 330, 342 (Bankr. E.D. Pa. 2012) (constructive trust); *In re Providence Fin. Invs., Inc.*, 593 B.R. 884, 892 (Bankr. S.D. Fla. 2018) (accounting). Turnover claims can be core or non-core depending upon whether the claim involves disputed property—with claims involving disputed property considered non-core. *See Drauschak*, 481 B.R. at 342; *Jamuna*, 357 B.R. at 334.[6]

In cases such as this where there is a mix of core and non-core claims (or *Stern* claims), it is not necessary for the Court to make a final determination of the nature of each claim in order to resolve a motion for withdrawal of the reference, because the characterization of the claims "is not a dispositive factor in the withdrawal analysis." *Portnoy*, 2017 WL 3141186, at *3. The "mixed nature" of the Trustee's claims "does not weigh in favor of withdrawing the reference at this stage of the litigation," because "judicial efficiency and economy are best served by allowing all claims

---

[6]    Even to the extent certain of the Trustee's claims are non-core, they are clearly "related" to the Debtor's bankruptcy case because they are claims which belong to the Debtor and, if successful, will bring money into the estate, define the parties' respective rights as to Debtor property, or affect the administration of creditor claims—and thus "have the potential to affect this bankruptcy estate." *Jamuna*, 357 B.R. at 331. Furthermore, many of the Trustee's claims involve allegations of misconduct in connection with the Debtor's Section 363 sale, operation as a debtor-in-possession, and other aspects of the Debtor's bankruptcy case.

to proceed together before the bankruptcy court for pretrial and discovery purposes." *Id.* at \*4; *see also In re Rite Way Elec., Inc.*, 2017 WL 660856, at \* n.27 (E.D. Pa. Feb. 17, 2017) (holding rulings as to the nature of each claim were not necessary at early stage in case, because the mixed core and non-core claims were intertwined and should proceed together in the bankruptcy court for pre-trial and discovery purposes). "The bankruptcy court is authorized to enter final judgment on all (non-*Stern*) core claims and can address any dispositive motions on *Stern*/non-core claims through a report and recommendation that this Court would review *de novo*." *Portnoy*, 2017 WL 3141186, at \*4.

### 2. The Trustee's Jury Demand Does Not Require Withdrawal of the Reference At This Stage

The Trustee has demanded a jury trial.  *See* Complaint at ¶ 5.  The Moving Defendants indicate in their brief that they intend to demand a jury trial as well.  *See* [D.I. 1 at p. 19].  When a party has a Seventh Amendment right to a jury trial, the bankruptcy court can only conduct the trial with the express consent of all parties.  *See* 28 U.S.C. § 157(e).  However, "potential entitlement [to a jury trial] at some future date is not sufficient grounds to withdraw the reference" at an early stage of the case—doing so would be "premature." *Big V Holding*, 2002 WL 1482392, at \*5.  Instead, the case should typically remain in the bankruptcy court until it is "trial ready." *See Feldman*, 2020 WL 618604, at \*5 (according "no weight to the fact that a jury trial may eventually need to occur in the district court" for purposes of the withdrawal analysis); *Seitz*, 638 B.R. at 852 (holding party's jury trial right did not justify withdrawal of reference at inception of case).

**B.      The Moving Defendants Have Not Established Cause for Permissive Withdrawal**

The Court must further consider the 5 *Pruitt* factors in deciding whether to withdraw the bankruptcy reference.  *See Pruitt*, 910 F.2d at 1168.  "The applicable test here is not a weighing of factors on a scale in equipoise, but rather a determination of whether [Moving] Defendants can overcome a scale already heavily weighted against withdrawal."  *Feldman*, 2020 WL 618604, at *7.  They cannot do so.

### 1.      Promoting Uniformity in Bankruptcy Administration

The Moving Defendants argue that this factor is met because many of the Trustee's claims are non-core, but that is not a sufficient basis to establish that withdrawal would promote uniformity in bankruptcy administration.  *See Seitz*, 638 B.R. at 851-52.  At best, it "suggests that withdrawal would not *disrupt* the uniformity of bankruptcy administration, but that argument could be advanced about all non-core proceedings."  *Id.* at 852 (emphasis in original).

The Bankruptcy Court has overseen the Debtor's underlying bankruptcy case, including the Section 363 sale that is described at length in the Trustee's Complaint.  Many of the allegations set forth in the Complaint concern misconduct in connection with the Section 363 sale, the operation of the Debtor as a debtor-in-possession, the destruction of Debtor records during the bankruptcy case, and other post-petition events.  *See, e.g.*, Complaint at ¶¶ 127-71, 175, 192-94, 198 (alleging, *inter alia*, gross mismanagement of the Debtor's Chapter 11 case by the Insider Defendants, interference with the 363 sale, and obstruction of the Trustee's investigative efforts).  The fact that the Bankruptcy Court is already familiar with the history of the Debtor's bankruptcy case weighs against withdrawal of the reference.  *See Portnoy*, 2017 WL 3141186, at *5

(bankruptcy court's familiarity with the facts, parties, and issues put it in "the better position to ensure uniformity" across the bankruptcy case and the adversary proceeding).[7]

### 2.    Reducing Forum Shopping and Confusion

The Trustee properly filed this adversary proceeding in the court where the Debtor's bankruptcy case is pending; there are no forum shopping concerns if the case remains in that forum. On the other hand, "[p]rematurely removing the case from the bankruptcy court would tend to encourage forum-shopping." *Seitz*, 638 B.R. at 851; *see also 400 Walnut Assocs., L.P. v. 4th Walnut Assocs., L.P.*, 2015 WL 390455, at *5 (E.D. Pa. Jan. 28, 2015) ("[B]y relaxing the legal standard for 28 U.S.C. § 157(d) cause to withdraw, widespread forum shopping would be encouraged.").

### 3.    Fostering the Economical Use of the Parties' Resources

For this factor, the Moving Defendants repeat their arguments that litigating pre-trial matters in the Bankruptcy Court is a waste of time because any eventual trial will be held in the District Court. For the reasons discussed above, this argument should be rejected. There would not be "two different courts" performing redundant work, as the Moving Defendants suggest. [D.I. 1 at p. 15]. The mechanisms for *de novo* review of proposed findings of fact and conclusions of law and for appeals to the District Court were set forth by Congress. *See* 11 U.S.C. §§ 157, 158. The fact that such mechanisms may be used at some point does not amount to "cause shown" for

---

[7]    The Moving Defendants rely on *In re Pelullo*, 1997 WL 535155 (E.D. Pa. 1997) for their argument that withdrawal of the reference at the inception of the case is warranted, but—as the numerous authorities cited by the Trustee herein demonstrate—*Pelullo* is at odds with the weight of authority in the Third Circuit that finds the *Pruitt* factors are better served by waiting until the case is trial ready before transferring it to District Court. It is also untrue, as the Moving Defendants argue, that the Bankruptcy Court is unfamiliar with the type of state law claims asserted by the Trustee. Claims such as breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, breach of contract, and alter ego are frequently asserted in adversary proceedings involving claims against a Debtor's former insiders.

departing from them.  *See, e.g.*, *In re DBSI, Inc.*, 467 B.R. 767, 775 (Bankr. D. Del. 2012) ("The recommendation system that Movants are disparaging is the exact mechanism that 28 U.S.C. § 157(c)(1)—and the court in *Stern*—contemplates and that has long been used by bankruptcy and district courts across the country.  These concerns about judicial economy were undoubtedly considered when § 157 was enacted."); *see also Feldman*, 2020 WL 618604, at *5.

The Moving Defendants' arguments concerning potentially complex or lengthy discovery are also unavailing.  They argue that, once the reference is withdrawn, the case should be referred to a magistrate to handle discovery.  But courts have acknowledged that the process whereby the Bankruptcy Court handles the case until it is ready for trial is "similar to that of a magistrate presiding over discovery." *400 Walnut Assocs.*, 2015 WL 390455, at *4; *see also, e.g.*, *In re Nortel Networks, Inc.*, 539 B.R. 704, 710 (D. Del. 2015) ("[E]ven for non-core claims for which a jury trial is requested, a bankruptcy court is capable of functioning in a role similar to that of a magistrate.").  In light of the Bankruptcy Court's familiarity with the Debtor's bankruptcy case, it would be inefficient and a waste of judicial time and resources to withdraw the reference and then refer the case to a magistrate to handle matters which the Bankruptcy Court is already well-positioned to handle.

### 4.    Expediting the Bankruptcy Process

The Moving Defendants concede there is no basis to assert that litigation in one forum or the other would expedite the bankruptcy process, but argue that withdrawal is still warranted because the Trustee's claims are "severable" from the claims allowance process.  [D.I. 1 at p. 15].  The *Pruitt* factors are not focused on whether claims are "severable" from the claims allowance process but, in any event, adversary proceedings frequently raise claims and issues that are beyond the scope of the claims allowance process.  The Trustee's claims include claims under the

Bankruptcy Code to recover Debtor property, claims which belong to the Debtor and involve harms committed against it, and claims which affect the administration of the Debtor's estate such as equitable subordination (implicating the relative priority of creditors' claims) and alter ego (seeking to hold certain of the Defendants liable for claims against the estate).  While it is true that the Trustee's claims *could* be litigated in the District Court, the Moving Defendants have not established that it would be more expeditious to do so.  *See Seitz*, 638 B.R. at 852 (fourth *Pruitt* factor did not weigh in favor of withdrawal where there was no basis to believe litigation would be more expeditious in one forum over the other).

### 5.     Timing of the Request for Withdrawal

Motions under Section 157(d) are timely when they are filed at the first reasonable opportunity after the movant has notice of the grounds for removal, considering the circumstances of the proceeding.  *See Feldman*, 2020 WL 618604, at *6.  The Moving Defendants state that their motion is timely because it was their first filing in the case, so the District Court can "preside over the case from the very beginning."  [D.I. 1 at p. 16].  While their filing of this motion early in the case does establish its timeliness, this alone is an insufficient basis to grant withdrawal of the reference.  *See Seitz*, 638 B.R. at 852.  As discussed at length above, there are no unusual circumstances in this case that would warrant a departure from the standard practice for courts in the Third Circuit, where the Bankruptcy Court handles pre-trial and discovery matters and the case is only transferred to District Court, if necessary, once it is trial ready.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny the Moving Defendants' Withdrawal Motion.

Dated: September 19, 2023        /s/ Andrew J. Belli
                                               STEVEN M. COREN
                                             ANDREW J. BELLI
                                             **COREN & RESS, P.C.**
                                             Two Commerce Square, Suite 3900
                                             2001 Market Street
                                             Philadelphia, PA 19103
                                             Tel: (215) 735-8700
                                             Fax: (215) 735-5170
                                             scoren@kcr-law.com
                                             abelli@kcr-law.com

                                             *Counsel for Plaintiff*
                                             *Bonnie Finkel, Chapter 7 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on September 19, 2023, he caused a true and correct copy of the foregoing Opposition to Motion for Withdrawal of Reference hearing to counsel for all parties in the underlying adversary proceeding via first class mail and email as follows:

> STEPHEN M. PACKMAN, ESQUIRE
> MARIAM KHOUDARI, ESQUIRE
> Archer and Greiner
> Three Logan Square
> 1717 Arch Street
> Suite 3500
> Philadelphia, PA 19103
> *Counsel for Moving Defendants*
>
> JEFFREY KURTZMAN, ESQUIRE
> Kurtzman Steady LLC
> 555 City Avenue
> Ste 480
> Bala Cynwyd, PA 19004
> *Counsel for Additional Defendants*

Dated: September 19, 2023

/s/ Andrew J. Belli
ANDREW J. BELLI
**COREN & RESS, P.C.**
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
abelli@kcr-law.com

*Counsel for Plaintiff*
*Bonnie Finkel, Chapter 7 Trustee*